1   WILLIAM L. STERN (CA SBN 96105)
    WStern@mofo.com
2   JANELLE J. SAHOURIA (CA SBN 253699)
    JSahouria@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California 94105-2482
    Telephone: 415.268.7000
5   Facsimile: 415.268.7522

6   Attorneys for Defendant

7

8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  CHANEE THURSTON, and TANASHA          Case No.   CV 10-04937-RS
    DENMON-CLARK, on behalf of themselves and
13  all others similarly situated,        **NOTICE OF MOTION AND
                                          MOTION AND MEMORANDUM
14              Plaintiffs,               OF POINTS AND AUTHORITIES
                                          IN SUPPORT OF DEFENDANT'S
15         v.                             MOTION TO DISMISS AMENDED
                                          COMPLAINT**
16  CONOPCO, INC. d/b/a UNILEVER (formerly
    d/b/a GOOD HUMOR-BREYERS) d/b/a       [Declaration of Sheila Wenke and
17  BREYERS,                              Janelle Sahouria (filed Dec. 6, 2010);
                                          [Proposed] Order; and Request for
18              Defendant.                Judicial Notice (filed Dec. 6, 2010)

19                                        Hearing Date:  February 17, 2011
                                          Time:          1:30 p.m.
20                                        Courtroom:     3
                                          Floor:         17th
21                                        Judge:         Hon. Richard Seeborg
                                          Action Filed:  November 1, 2010
22

23

24

25

26

27

28

## TABLE OF CONTENTS

MEMORANDUM OF POINTS & AUTHORITIES ................................................................ 1

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF THE ISSUES TO BE DECIDED ................................................ 2

III.    STATEMENT OF ALLEGED FACTS ...................................................................... 2

        A.    This Is A Copycat Case. ................................................................................. 2

        B.    Plaintiffs' Charging Allegations. .................................................................... 2

        C.    Plaintiffs' Counsel Forum-Shopped This Case To This Court To Avoid
              Judge Fairbank. .............................................................................................. 4

IV.     THE LEGAL STANDARD ........................................................................................ 5

V.      ARGUMENT .............................................................................................................. 6

        A.    Plaintiffs Fail To Allege A Plausible Legal Theory of Liability. ................... 6

        B.    The Court Should Dismiss Due To The Absence Of Cognizable Injury. ....... 9

              1.    Plaintiffs Lack Article III Standing. .................................................. 10

              2.    Plaintiffs Have Not Alleged The Elements of Injury or Deception
                    With Sufficient Particularity. ........................................................... 11

        C.    Plaintiffs' Claims Are Preempted. ............................................................... 13

        D.    The Court Should Abstain In Deference To The FDA. ................................. 15

        E.    Plaintiffs Have No Claim For Unjust Enrichment. ....................................... 15

        F.    Plaintiffs Have No Claim For Common Law Fraud. ..................................... 16

        G.    The Court Should Strike The Class Averments. ........................................... 17

VI.     CONCLUSION ........................................................................................................ 18

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ashcroft v. Iqbal*,
__ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .................................................... 5, 6, 9

*Astiana v. Ben & Jerry's Homemade, Inc.*,
N.D. Cal. Case No. 10-4387-PJH ............................................................................ 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .................................. 5, 6, 9, 12, 13

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) .................................................................................. 11

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir.1996) .................................................................................... 5

*Chacanaca v. The Quaker Oats Co.*,
No. C 10-0502 RS, 2010 WL 4055954 (N.D. Cal. Oct. 14, 2010) ........................ 14

*Cook County College Teachers Union v. Byrd*,
456 F.2d 882 (7th Cir. 1972) .................................................................................. 18

*DeBremaeker v. Short*,
433 F.2d 733 (5th Cir. 1970) .................................................................................. 17

*Deitz v. Comcast Corp.*,
No. C 06-06352 WHA, 2007 WL 2015440 (N.D. Cal. July 11, 2007).................... 18

*Denmon-Clark v. Conopco, Inc. dba Unilever*,
C.D. Cal., Case No. 10-7898 VBF (OPx) ............................................................ 4, 5

*Desert Healthcare Dist. v. PacifiCare FHP, Inc.*,
94 Cal. App. 4th 781 (2001).................................................................................. 15

*Farm Raised Salmon Cases*,
42 Cal. 4th 1077, 1086 (2008), *cert. denied sub nom.*
*Albertson's, Inc. v. Kanter*, 129 S. Ct. 896 (2009) ............................................... 14

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995)................................................................................... 12

*Gerlinger v. Amazon.com, Inc.*,
526 F.3d 1253 (9th Cir. 2008) ............................................................................... 10

*Gonzales Commc'ns, Inc. v. Titan Wireless, Inc.*,
No. 04-cv-147, 2007 WL 1994057 (S.D. Cal. Apr. 18, 2007)............................... 16

*Hall v. Time, Inc.*,
158 Cal. App. 4th 847 (2008)................................................................................ 11

*Hartman v. Summers*,
    120 F.3d 157 (9th Cir. 1997) .................................................................................. 10

*Herrington v. Johnson & Johnson Consumer Cos.*,
    No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ........................ 11

*Hoang v. Reunion.com, Inc.*,
    No. 08-CV-03518 MMC (N.D. Cal. December 23, 2008)...................................... 10

*Hodes v. Van's Int'l Foods*,
    No. CV09-01530, 2009 WL 2424214 (C.D. Cal., July 23, 2009)........................... 17

*In re Paxil Litig.*,
    218 F.R.D. 242 (C.D. Cal. 2003) ...................................................................... 15, 16

*In re PepsiCo, Inc. Bottled Water Marketing & Sales Practices Litig.*,
    588 F. Supp. 2d 527 (S.D.N.Y. 2008) ................................................................... 15

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116, 103 Cal. Rptr. 3d 83 (2009) ............................................. 12

*In re: Wal-Mart Stores, Inc. Wage and Hour Litig.*,
    No. C 06-2069 SBA, 2008 WL 413749 (N.D. Cal. Feb. 13, 2008) ........................ 18

*Johns v. Bayer Corp.*,
    No. 09-cv-1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) .................................. 15

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009).............................................................................. 11

*Korens v. R.W. Zukin Corp.*,
    212 Cal. App. 3d 1054 (1989).............................................................................. 15

*Lee v. Am. Express Travel Related Servs., Inc.*,
    No. 07-CV-04765 (N.D. Cal. Dec. 6, 2007) ........................................................ 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................... 10

*Mazur v. eBay Inc.*,
    257 F.R.D. 563 (N.D. Cal. 2009) ........................................................................ 17

*Melchior v. New Line Prods., Inc.*,
    106 Cal. App. 4th 779 (2003)............................................................................. 15

*Mills v. Giant of Md., LLC*,
    441 F. Supp. 2d 104 (D.D.C. 2006), *aff'd on other grounds*, 508 F.3d 11 (D.C. Cir.
    2007).................................................................................................................. 14

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ............................................................................ 5, 6

*Owens v. Wells Fargo Bank*,
    No. C 09-3354 PJH, 2010 WL 424473 (N.D. Cal. Jan. 27, 2010) ......................... 16

*Peviani v. Hostess Brands, Inc.*,
___ F. Supp. 2d ___, 2010 WL 4553510 (C.D. Cal. Nov. 3, 2010) ...................................... 14

*Red v. The Kroger Co.*,
No. 10-cv-01025-DMG-MAN, 2010 U.S. Dist. LEXIS 115238 (C.D. Cal. Sept. 2,
2010) (Gee, J.) ........................................................................................................................ 14

*Rosal v. First Fed. Bank of Cal.*,
671 F. Supp. 2d 1111 (N.D. Cal. 2009) ................................................................................. 12

*Rosen v. Unilever United States, Inc.*,
No. C 09-02563 JW, 2010 WL 4807100 (N.D. Cal., May 3, 2010) ....................................... 9

*Shepard v. DineEquity, Inc.*,
No. 08-2416-KHV, 2009 U.S. Dist. LEXIS 97245 (D. Kan. Sept. 25, 2009) ....................... 15

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ................................................................................................................. 10

*Snow v. Bank of America, N.A.*,
No. C 10-03226, 2010 WL 4608180 (N.D. Cal., Nov. 5, 2010) ........................................... 12

*SPG Inv. Ass'n v. Berry Petroleum Corp.*,
No. 4-84-159, 1987 U.S. Dist. LEXIS 12093 (D. Minn. Dec. 30, 1987) .............................. 18

*Stern v. Cingular Wireless Corp.*,
2009 U.S. Dist. LEXIS 17944 ............................................................................................ 17-18

*Troyk v. Farmers Group, Inc.*,
171 Cal. App. 4th 1305 (2009) .............................................................................................. 11

*Turek v. General Mills, Inc.*,
No. 09 C 7038, 2010 WL 3527553 (N.D. Ill. Sept. 1, 2010) ................................................ 15

*Walker v. Equity 1 Lenders Group*,
No. 09-cv-325, 2009 WL 1364430 (S.D. Cal. May 14, 2009) .............................................. 15

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ............................................................................................................... 11

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ............................................................................................... 6, 9

*Wolfe v. State Farm Fire & Cas. Ins. Co.*,
46 Cal. App. 4th 554 (1996) ............................................................................................. 15, 16

*Wolph v. Acer Am. Corp.*,
No. C 09-01314, 2009 WL 2969467 (N.D. Cal. Sep. 14, 2009) ........................................... 16

*Wright v. General Mills, Inc.*,
No. 08cv1532, 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) ........................................ 12, 13

*Zinser v. Accufix Research Institute, Inc.*,
253 F.3d 1180, 1190 (9th Cir. 2001) ..................................................................................... 18

**STATUTES**

21 U.S.C.
§ 301. .......................................................................................................................... 13
§ 341. .......................................................................................................................... 13
§ 343-1(a) ................................................................................................................... 14
§ 343(a)(1) .................................................................................................................. 14
§ 343(q) ...................................................................................................................... 14
§ 343(q)(1)(A)-(D) ..................................................................................................... 13
§ 343(r) ....................................................................................................................... 14

Cal. Bus. & Prof. Code
§ 17200 .................................................................................................................. 4, 10
§ 17500 .................................................................................................................... 2, 4

**REGULATYIONS AND RULES**

7 C.F.R.
§ 205.605(b) .................................................................................................................. 8

21 C.F.R.
§ 10.85 ........................................................................................................................ 14
§ 100.1(c)(4) ............................................................................................................... 14
§§ 101.1-101.18 .......................................................................................................... 14

58 Fed. Reg. 2302, 2407 (Jan. 6, 1993) ........................................................................ 6

Federal Rules of Civil Procedure
Rule 9(b) ............................................................................................................... 12, 16
Rule 12(b)(6) ........................................................................................................... 9, 12
Rule 23(b)(3) .............................................................................................................. 18
Rule 23(c)(1) .............................................................................................................. 18
Rule 23(d)(4) .............................................................................................................. 18

**Other Authorities**

7A Charles Alan Wright et al., *Federal Practice & Procedure* (2d ed. 1986)
§ 1760 ......................................................................................................................... 18
§ 1785 ......................................................................................................................... 18

FDA, Manual of Compliance Policy Guides § 515.800 ................................................... 8

Manual For Complex Litigation (Fourth), § 21.222 ...................................................... 17

1  **NOTICE OF MOTION AND MOTION TO DISMISS**

2  TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:

3  PLEASE TAKE NOTICE that on February 17, 2011, at 1:30 p.m., or as soon thereafter as

4  the matter may be heard in the courtroom of the Honorable Richard Seeborg, United States

5  District Judge, Northern District of California, located at 450 Golden Gate Avenue, San

6  Francisco, California 94102, Defendant Conopco, Inc. d/b/a/ Unilever ("Unilever"), will move,

7  and hereby does move, to dismiss the Complaint of Plaintiffs Chanee Thurston and Tanasha

8  Denmon-Clark pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that the Amended Complaint

9  fails to state a claim upon which relief can be granted, and to strike the class averments pursuant

10  to Fed. R. Civ. P. 12(f).

11  This Motion is based on this Notice of Motion and Motion, Defendant's supporting

12  Memorandum of Points and Authorities (attached), and two declarations that were filed in

13  connection with Defendant's earlier motion to dismiss, the Declaration of Janelle Sahouria and

14  the Declaration of Sheila Wenke.  Both were filed December 6, 2010 as Dkt Nos. 18 and 19,

15  respectively).  Defendant will also rely upon another earlier-filed pleading, Defendant's Request

16  for Judicial Notice in Support of Its Motion to Dismiss (filed on December 6, 2010 as Dkt. No.

17  20), as well as other court records and files in this action.

18  Dated: December 20, 2010          WILLIAM L. STERN
                                       JANELLE J. SAHOURIA
19                                     MORRISON & FOERSTER LLP

20                                     By: /s/ William L. Stern
                                            William L. Stern
21

22                                     Attorneys for Defendant
                                       CONOPCO, INC. d/b/a UNILEVER (formerly
23                                     d/b/a GOOD HUMOR-BREYERS) d/b/a
                                       BREYERS

24

25

26

27

28

1

**MEMORANDUM OF POINTS & AUTHORITIES**

2

## I.     INTRODUCTION

3

This is a "Private Surgeon General" action.  Plaintiffs allege that everyone in the U.S. who

4

bought chocolate-flavored ice cream made by Breyers since 2006 should get his or her money

5

back.  Not because the products tasted bad or were defective or harmful, but because Breyers

6

advertises its products as "All Natural" when, in fact, they contain "Dutch" cocoa in which the

7

alkali used to reduce the natural acidity in cocoa, potassium carbonate, is allegedly "synthetic."

8

Breyers moved to dismiss Plaintiffs' original complaint.  They amended, but their

9

Amended Complaint is no better than the original.

10

First, Plaintiffs' premise is wrong.  In their initial Complaint, Plaintiffs insisted that *all*

11

"Dutch" cocoa is not "natural" because alkalization changes cocoa's chemical structure.  But a

12

test of "no-molecular-change" would disqualify anything cooked, heated, roasted, frozen, boiled

13

fermented, or dried.  So, Plaintiffs changed direction.  Now, they tell us, a product cannot be

14

called "natural" if the alkali used is potassium carbonate.  But the FDA says that a food can be

15

"natural" even if it contains a minor synthetic ingredient if that ingredient is "normally expected

16

to be in food."  An alkalizing agent such as potassium carbonate is "expected" for an ingredient

17

described as "alkalized cocoa."  Indeed, Plaintiffs admit that potassium carbonate is "commonly

18

used" in "Dutch" cocoa.  Moreover, USDA regulations allow potassium carbonate to be used in

19

products labeled "Organic."  Neither Plaintiffs' earlier flip, nor their current flop, is plausible.

20

Second, this is a no-injury case.  Plaintiffs do not allege any cognizable injury, aside from

21

having bought ice cream.  They do not allege the products are defective, tainted, or inedible.

22

They lack Article III standing.

23

Third, because Ben & Jerry's labels comply with the FDA's policy, Plaintiffs' claims are

24

preempted.  Alternatively, the Court should abstain.

25

Starting from an imagined wrong that only a lawyer could love, Plaintiffs seek massive

26

damages, punitive damages, and a nationwide injunction that asks the Court to redesign Defen-

27

dant's product label.  But the FDA has already spoken on what is "natural" and Plaintiffs are

28

1   asking the Court to adopt a different definition.  Plaintiffs want to become "private Surgeon

2   Generals" and are saying, in effect, "Forget the FDA, we get to do the mandating."

3        A "*Thurston* warning"—named in honor of this case—is both unnecessary and unwar-

4   ranted.  The Court should grant Defendant's motion to dismiss, with prejudice.

5   **II.     STATEMENT OF THE ISSUES TO BE DECIDED**

6        This motion raises the following issues:

7   1.  Can someone sue a food manufacturer over a product label that says "All
        Natural" if there is no plausible allegation that the label fails to comply with
8       FDA policy?  Must such a plaintiff plead his or her claim with particularity?

9   2.  If Plaintiffs bought and consumed a food product that is not alleged to be
        tainted or otherwise defective, and had no personal injury, have they suffered a
10      cognizable injury within the meaning of Article III or "lost money or property"
        within the meaning of Cal. Bus. & Prof. Code §§ 17200/17500?

11

12  3.  Are state-law claims expressly preempted by the Nutrition Labeling and
        Education Act if they seek to impose product label requirements that are "not
13      identical to" the FDA's policy?

14  4.  Should the court abstain in deference to the FDA?

15  5.  Is there a cause of action for unjust enrichment in California?

16  6.  Should a court strike class averments where the proposed class definition
        requires class members to self-select their membership in the class?

17  **III.    STATEMENT OF ALLEGED FACTS**

18       **A.     This Is A Copycat Case.**

19       This is a copycat case.  It was filed after a consumer group, the Center for Science in the

20  Public Interest ("CSPI"), wrote a letter with respect to a different Unilever ice cream brand (Ben

21  & Jerry's) regarding its use of the phrase "all natural" on its chocolate-flavored ice cream

22  products.  (Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief ("Am.

23  Compl.") ¶ 19.)  The Amended Complaint reuses the same arguments against Breyers that the

24  CSPI made in its Ben & Jerry's letter.  (*Id.*)

25       **B.     Plaintiffs' Charging Allegations.**

26       ***Plaintiffs.***  Plaintiff Thurston alleges she bought several Breyers' products, including

27  "Breyers All Natural Vanilla Fudge Twirl" and "Breyers All Natural Original Vanilla, Chocolate,

28  Strawberry Ice Creams" starting in October 2006.  (Am. Compl. ¶ 5.)  Plaintiff Denmon-Clark

1  alleges that she purchased "Breyers All Natural Chocolate Ice Cream" and other unspecified

2  flavors a minimum of four times a year since October 2006.  (*Id.* ¶ 6.)  Both Plaintiffs say they try

3  to buy all natural foods for their children.[1]  (*Id.* ¶¶ 5-6.)

4  **Alkalization.**  Plaintiffs' charging allegations track the CSPI's letter, to which they cite.

5  (Am. Compl. ¶ 21.)  In particular, Plaintiffs admit that unalkalized cocoa is "acidic" and, to offset

6  that acidic taste, Breyers uses "Dutch-process cocoa," which "neutralizes [cocoa's] acidity."  (*Id.*

7  ¶ 13.)  They also admit that "Dutch-process cocoa is *frequently used* when the product calls for

8  the blending of cacao with liquids."  (*Id.* [italics added])

9  Because cocoa is acidic (i.e., has a "pH" of less than seven), the process of "alkalization"

10  introduces a base to neutralize the natural acidity.  (*Id.*, ¶¶ 12-14.)  In this case, according to

11  Plaintiffs, the alkali used is either "sodium carbonate" or "potassium carbonate."  (*Id.* ¶ 17.)

12  Borrowing from the CSPI, they allege that Breyers makes a "false and misleading" statement by

13  labeling its ice cream products as "all natural" despite the use of alkalized cocoa processed with

14  potassium carbonate.  (*Id.* ¶ 24.)

15  **Plaintiffs' definition of "natural."**  Plaintiffs allege that "the FDA does not directly

16  regulate the term 'natural,' [but] the FDA has established a policy defining the outer boundaries

17  of the use of that term" and they cite the FDA's policy.  (*Id.* ¶ 14.)  Plaintiffs cite the FDA's test:

18  "[N]othing artificial or synthetic (including all color additives regardless of source) has been

19  included in, or has been added to, a food that would not normally be expected to be in the food."

20  (*Id.*)  They conclude that potassium carbonate is "synthetic" and, hence, that the "All Natural"

21  representation is "false and misleading."  (*Id.* ¶ 24.)  The premise is the foundation of the

22  Amended Complaint.  (*Id.,* ¶¶ 1, 2, 4, 5, 6, 17, 20, 24, 25, 35.)

23  **The claims for relief.**  The Amended Complaint alleges six claims:  (i) Fraud,

24  (ii) violations of California's unfair competition law (Cal. Bus. & Prof. Code § 17200) (UCL) as

---

25  [1] Because the Amended Complaint has put Breyers' product labels at issue but fails to
26  attach them, the Court may take judicial notice of the product labels.  We have attached as an
   exemplar the labels for the "Cookies & Cream" and "Chocolate" flavors.  (*See* Request for
27  Judicial Notice in Support of Defendant's Motion to Dismiss, filed on December 6, 2010 at Dkt.
   No. 20 ("RJN"), Exs A, B, and California [Dkt. Nos. 20-1 through 20-3].)

28

1   regards its "unlawful" prong, (iii) violations of the UCL's "unfair" prong, (iv) violations of the

2   UCL's "fraudulent" prong, (v) violations of California's false advertising law (Cal. Bus. & Prof.

3   Code § 17500), and (vi) unjust enrichment.  Plaintiffs seek relief on behalf of a nationwide class

4   as well as a California subclass.  (Am. Compl., ¶¶ 25, 26.)

5           **Prayer.**  Plaintiffs seek compensatory damages, punitive damages, restitution of all

6   amounts putative class members "paid to purchase Ice Cream products," disgorgement of profits,

7   an accounting, and a constructive trust.  In addition, they seek an injunction against misleading

8   product advertising.  (*Id*. 20:1-19 [prayer].)

9       **C.     Plaintiffs' Counsel Forum-Shopped This Case To This Court To Avoid Judge**
                **Fairbank.**
10

11          Ten days before filing this case, Plaintiffs' counsel filed the identical class action against

12  Breyers in the Central District of California.  (*See Denmon-Clark v. Conopco, Inc. dba Unilever*,

13  C.D. Cal., Case No. 10-7898 VBF (OPx) ("*Denmon-Clark*") (RJN Ex. E) [Dkt. No. 20-5].)

14  *Denmon-Clark* was assigned to Judge Fairbank, but Plaintiffs' counsel dismissed it and refiled it

15  here, presumably to avoid Judge Fairbank.  Here's how that happened:

16          Plaintiffs' counsel filed two "Dutch cocoa" cases.  The first was filed in this District on

17  September 29, 2010 by the same class counsel but against another ice cream brand owned by

18  Unilever—Ben & Jerry's.  (*See* Complaint, *Astiana v. Ben & Jerry's Homemade, Inc.*, N.D. Cal.

19  Case No. 10-4387-PJH ("*Astiana*") (RJN, Ex. D [Dkt. No. 20-4].)  *Denmon-Clark* was filed in the

20  Central District on October 20, 2010.  At that time, the clerk issued a "Notice" reminding counsel

21  of their "continuing obligation to promptly advise the Court whenever one or more civil actions

22  or proceedings previously commenced and one or more currently filed appear to be related."

23  (RJN, Ex. F [Dkt. No. 19-9].) [2]  But class counsel failed to file a related case notice in either case,

24  thereby violating both courts' rules.

25          [2] This is consistent with the local rules in both the Northern and Central Districts, which
    require notification to the court of other related actions.  N.D. Cal. Civ. L.R. 3-13(a); C.D. Cal.
26  Civ. L.R. 83-1.4.1.  The obligation to give notice applies where the action "involves all or a
    material part of the subject matter of an action then pending before…any other federal or state
27  court."  C.D. Cal. Civ. L.R. 83-1.4.1; N.D. Cal. Civ. L.R. 3-13(a).

28

1    Meanwhile, *Astiana* was assigned to Judge Hamilton (*Astiana*, Dkt. 14), and shortly

2    thereafter, class counsel refiled *Denmon-Clark* in this Court, now styled as *Thurston*.  But aside

3    from adding a new plaintiff (Ms. Thurston) and demoting Ms. Denmon-Clark to the second-

4    named plaintiff, this case is identical to *Denmon-Clark* (*cf.* Complaint [Dkt. No. 1] *with Thurston*

5    Complaint, RJN, Ex. E [Dkt. No. 20-5].)  On November 2, 2010, Plaintiffs' counsel dismissed

6    *Denmon-Clark*.  (RJN, Ex. G [Dkt. No. 20-7].)

7    In effect, class counsel filed this case twice.  And once they had two judges to pick from,

8    they dismissed the first case (*Denmon-Clark*) in an apparent attempt to avoid Judge Fairbank.[3]

9    **IV.    THE LEGAL STANDARD**

10    A court must accept all factual allegations pleaded in the complaint as true (*Cahill v.*

11    *Liberty Mut. Ins. Co*., 80 F.3d 336, 337-38 (9th Cir.1996)), but it need not accept unreasonable

12    inferences or legal conclusions cast in the form of factual allegations.  *See Ashcroft v. Iqbal*, __

13    U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("[B]are assertions ... amount[ing] to

14    nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination

15    claim" are not entitled to an assumption of truth (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

16    544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also Moss v. U.S. Secret Serv*., 572

17    F.3d 962, 969 (9th Cir. 2009).

18    The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to

19    relief that is plausible on its face.'"  "A claim has facial plausibility when the plaintiff pleads

20    factual content that allows the court to draw the reasonable inference that the defendant is liable

21    for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949; *see also Twombly*, 550 U.S. at 545

22    ("Factual allegations must be enough to raise a right to relief above the speculative level, on the

23    assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations

24    omitted); *Moss*, 572 F.3d at 969 ("[F]or a complaint to survive a motion to dismiss, the non-

25    [3] This violates another court rule:  "It is not permissible to dismiss and thereafter refile an
26    action for the purpose of obtaining a different judge."  C.D. Cal. Civ. L.R. 83-1.2.1.  This Court
has a similar rule.  N.D. Cal. Civ. L.R. 3-3(c).  That Plaintiffs' counsel did not violate the letter of
27    this rule was only because they reversed the sequence:  They filed here first *then* dismissed, as
opposed to dismissing first *then* re-filing here.

28

1    conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

2    suggestive of a claim entitling the plaintiff to relief." (citing *Iqbal* and *Twombly*); *see also*

3    *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008)

4    **V.    ARGUMENT**

5        **A.    Plaintiffs Fail To Allege A Plausible Legal Theory of Liability.**

6        Plaintiff's six claims for relief dangle from a wafer-thin thread:  If the alkali used in Dutch

7    cocoa is potassium carbonate, the process is not "natural," thereby rendering false and misleading

8    Breyers' representation that its ice cream products are "All Natural."  To parse this claim, we start

9    with Plaintiffs' definition of "natural," because that is where they go awry.

10            **1.    Plaintiffs' Flip-Flop Exposes The Flaw In Their Theory.**

11        Plaintiffs correctly note that the FDA has issued a "policy" defining "the outer bounda-

12    ries" of the term "natural."  (Am. Compl. ¶ 14.)  The FDA says that the term "natural" means

13    "nothing artificial or synthetic...has been included in, or has been added to, a food *that would not*

14    *normally be expected to be in the food*."  *Id*.; *see also* 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993)

15    (italics added), attached as RJN, Ex. H [Dkt. No. 20-8].)

16        In their original Complaint, Plaintiffs left out the italicized phrase.  (*Cf*., Compl. ¶ 13

17    [Dkt. No. 1].)  That omission alters the FDA's meaning.  To render an ingredient not "natural," it

18    is not enough that it is "synthetic."  The ingredient must also be "*not normally be expected*."

19        The initial wrong imagined in Plaintiffs' original Complaint was built upon their

20    misreading of the FDA policy.  That led to Plaintiffs' flawed "no-molecular-change" theory of

21    "natural."  (Compl., ¶ 18, Dkt. No. 1 ("natural" means the food cannot have undergone any

22    "changes" in "chemical structure").)  But as Breyers noted, that would disqualify from "natural"

23    anything heated, cooked, roasted, frozen, fermented, or dried.  (Dkt. No. 17, pp. 8-9.)  Even

24    boiled organic carrots couldn't be labeled "natural."  That makes no sense.

25        Plaintiffs must have agreed, because the Amended Complaint abandons that "no-molecu-

26    lar-change" definition in favor of a new definition:  "Natural" means not "synthetic."  But this,

27    too, carries consequences.  By Plaintiffs' old definition, regular cocoa was good whereas all

28

1   Dutch cocoa was bad (because it was alkalized).  Now, under the new regime, Dutch cocoa is

2   acceptable *unless the alkalization agent is potassium carbonate.*

3        Plaintiffs' flip-flop is revealing.  Their theory presupposes that "natural" has a fixed

4   meaning; after all, they want to hold Breyers liable for "knowingly" failing to disclose a material

5   fact.  But if the term is so elusive that even Plaintiffs can't keep it straight, can it really have the

6   meaning Plaintiffs ascribe?  If so, which is it:  Dutch cocoa or potassium carbonate?  By amend-

7   ing, Plaintiffs have impeached themselves.

8              **2.       The Amended Complaint Fails to Establish A Violation of FDA Policy.**

9        Plaintiffs' new theory also fails on substance.  As Plaintiffs admit, the FDA "policy" looks

10  to two things:  (i) how the substance is produced, and (ii) whether it is "normally expected."

11       As to the first prong, Plaintiffs allege on information and belief (Am. Compl., 2:3-4) that

12  Breyers uses potassium carbonate as the alkalizing agent, which is "synthetic."  (*Id.,* ¶¶ 1, 2, 4, 5,

13  6, 17, 20, 24, 25, 35.)  But Plaintiffs do not know whether the ice cream products *they*  bought

14  used potassium carbonate (the allegedly "bad alkali") versus sodium carbonate (the "good

15  alkali").  No class member would know this either.

16       As to the second prong, the Amended Complaint has but one averment:  "[B]ased on the

17  "All Natural" representation, *one would normally expect* the alkalized cocoa contained in the Ice

18  Cream products to be processed with the commonly used nonsynthetic, natural alternative—

19  sodium carbonate."  (Am. Compl., ¶ 20 [italics added].)  That cannot be right.

20       Plaintiffs admit that potassium carbonate is a "commonly used" alkali that is "approved

21  for use in processing cocoa…."  (Am. Compl., 8 n.2; *see also* ¶ 13 ("Dutch-process cocoa is

22  frequently used when the product calls for blending of cacao with liquids"); ¶ 15 ("usually potas-

23  sium carbonate or sodium carbonate…is used to neutralize acids and alter the pH level of the

24  beans.").)  But something "commonly used" *is* "normally expected."  And if it is "normally

25  expected"—as Plaintiffs admit—FDA policy permits an otherwise natural food to which it is

26  added to be labeled "natural."

27       This comports with common sense.  Alkalization operates much like adding baking soda

28  (another common alkali) to recipes that call for regular (i.e., non-Dutch) cocoa.  No one should be

surprised to learn that a recipe calling for cocoa would need the addition of a base to raise the pH of cocoa so as to reduce the natural acidity of cocoa.  In fact, as Plaintiffs concede, it says so right on the ice cream label.  (Am. Compl., ¶ 20; *see also* RJN, Exs. A-C [Dkt. No. 20-1 through -3].)[4]

Plaintiffs darkly suggest in a footnote that sodium carbonate is the only "'safe and suitable' nonsynthetic alkali substance approved for use in alkalizing cocoa."  (Am. Compl., 8 n.2.)  Yet, the same USDA regulation that they cite describes potassium carbonate as benign enough that it may be used "in processed products labeled as 'organic.'"  7 C.F.R. § 205.605(b).

If potassium carbonate were unsuitable, one would expect FDA policy to reflect this.  It does not.  In the first place, the FDA's only labeling requirement is that Dutch cocoa needs to say "processed with alkali."  (Am. Compl., ¶ 16 [citing 21 C.F.R. § 163.112(c) (1)].)  It does not require a manufacturer to disclose *which* alkali is used in making Dutch cocoa.

In the second place, the FDA's labeling policy permits cocoa processed with alkali to be described as a "natural flavor."  FDA, Manual of Compliance Policy Guides § 515.800 ("CPG") (RJN, Ex. I [Dkt. No. 20-9].)  The "cocoa" to which the CPG refers may be "cocoa," "cocoa processed with alkali," or any other form of cocoa falling within the cocoa standards.  The FDA's labeling policies permit cocoa processed with potassium carbonate and sodium carbonate to be described as a "natural flavor."  If potassium carbonate were dangerous or materially different, one would have expected the FDA to exclude it as a "natural flavor" or, at least, to have required food manufacturers to specify the use of potassium carbonate on the label.

For these reasons, cocoa processed with potassium carbonate is "normally expected" in a "natural" food as defined by FDA policy.  Plaintiffs disagree, but letting litigants make up their own definition of "natural" would lead to confusing and inconsistent obligations.  Worse, Plain-

---

[4] As one food commentator notes, "Potassium carbonate is the primary component of potash, which is itself a substance found in nature.  Indeed, a patent to refine potash into pearl ash, which is basically pure potassium carbonate, was Patent No. 1 issued by the U.S. Patent Office, signed by President George Washington and co-signed by Attorney General Edmund Randolph on July 31, 1790."  *See* http://www.foodliabilitylaw.com/2010/11/articles/uniform-commercial-code-1/sweet-and-natural-can-one-word-have-meaning-and-one-not, last visited on December 18, 2010.

1   tiffs wants to impose their theory retroactively through a game of "gotcha":  Use the wrong

2   alkali—as *we* define it—and we will sue you for fraud.

3          It is not Defendant's burden on this motion to affirmatively prove that alkalized cocoa

4   containing potassium carbonate *is* "natural."  Nor is the Court required to find what "natural"

5   means in this context.  Rather, it is Plaintiffs' burden to show as a matter of law that cocoa that

6   has been alkalized using potassium carbonate *cannot* be labeled "natural."  They cannot do so. [5]

7          Recently, Judge Ware dismissed with prejudice another, similar case challenging the

8   labeling of a vegetable oil spread called "I Can't Believe it's Not Butter!®."  In *Rosen v. Unilever*

9   *United States, Inc.*, No. C 09-02563 JW, 2010 WL 4807100 (N.D. Cal., May 3, 2010), plaintiffs

10  alleged that Unilever falsely advertised its products as "healthy" and "nutritious," when in fact

11  they contain trans fatty acids, a substance plaintiffs contended was "unhealthy" and "non-nutri-

12  tious."  Judge Ware dismissed the case with prejudice on the ground that plaintiff could not plead

13  a plausible cause of action under *Iqbal* and *Twombly*:

14          Plaintiff's allegation that partially hydrogenated oil is not nutritious
           is devoid of any allegations of facts to support that allegation.
15          Moreover, this unsupported conclusion is contrary to FFDCA
           regulations that define trans fat as a "nutrient" whose quantity is
16          required to appear on food labels.  *See* 21 C.F.R. § 101.9(c)(2)(ii).

17  *Rosen*, 2010 WL 4807100, at *5.

18          Under Rule 12(b)(6), dismissal of a case is warranted if the complaint lacks "enough facts

19  to state a claim to relief that is plausible on its face."  *Williams*, 552 F.3d at 938 (quoting

20  *Twombly*, 550 U.S. at 570).  Here, Plaintiffs have failed to state a plausible claim that Breyers'

21  "All Natural" label violates FDA policy.  The Court should dismiss with prejudice.

22          **B.      The Court Should Dismiss Due To The Absence Of Cognizable Injury.**

23          This is a no-injury case.  The Court could dismiss for lack of Article III standing, or for

24  failure to plead "injury" and all the essential elements of their "common law fraud" claim with

25  _____

26          [5] A court does not have to accept as true any legal conclusions.  *Iqbal*, 129 S. Ct. at 1949
    (facial plausibility requires a plaintiff to plead "factual content that allows the court to draw the
27  reasonable inference that the defendant is liable for the misconduct alleged," and "asks for more
    than a sheer possibility that a defendant has acted unlawfully").

28

1   particularity.  Likewise, because their second through fifth claims for relief are brought under

2   California's unfair competition law (Cal. Bus. & Prof. Code § 17200) ("UCL") and false advertis-

3   ing law (*id.*, § 17500), and because those claims require proof of "injury in fact" and "loss of

4   money or property," those should be dismissed for the same reason.

### 1.      Plaintiffs Lack Article III Standing.

6         To have Article III standing, a plaintiff must plead and prove (1) an "injury in fact,"

7   (2) causation, and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

8   "Injury in fact" requires damage to "a legally protected interest which is (a) concrete and particu-

9   larized, and (b) actual or imminent, not conjectural or hypothetical."  *Id.* at 560 (internal citations

10  and quotations omitted).  Plaintiffs cannot satisfy these requirements.

11        <u>First</u>, Plaintiffs' claimed injury is that they overpaid for certain flavors of ice cream

12  labeled "All Natural" *if, but only if, the cartons they purchased used cocoa alkalized with potas-*

13  *sium carbonate*.  (Am. Compl., ¶¶ 5-6.)  The problem is, they have not alleged that the products

14  *they* purchased used potassium carbonate (*id.*) and they admit that sodium carbonate is another

15  "commonly used" alkali.  (*Id.*, ¶ 15.)  At best, they have pled a contingent or hypothetical injury.

16        This is fatal.  "[E]ven named plaintiffs who represent a class 'must allege and show that

17  they personally have been injured, not that injury has been suffered by other, unidentified

18  members of the class to which they belong and which they purport to represent.'"  *Simon v. E. Ky.*

19  *Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976), quoting *Warth v. Seldin*, 422 U.S. 490, 502

20  (1975); *Hartman v. Summers*, 120 F.3d 157, 160 (9th Cir. 1997).[6]  "A threatened injury must be

21  'certainly impending' to constitute injury in fact."  *Whitmore v. Arkansas*, 495 U.S. 149, 158

22  (1990).

23  ───────────────

24        [6] *See also Gerlinger v. Amazon.com, Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008) (affirming dismissal for lack of Article III standing where plaintiff did not show that he ever purchased an item for a higher price than he would have paid had there been no marketing agreement); *Lee v.*
25  *Am. Express Travel Related Servs., Inc.*, No. 07-CV-04765 (N.D. Cal. Dec. 6, 2007) (plaintiff lacked standing to "challenge an unconstitutional term in a contract which has not, and may never, come into play"); *Hoang v. Reunion.com, Inc.*, No. 08-CV-03518 MMC (N.D. Cal. Dec.
26  23, 2008) (dismissing first amended complaint for failure to state a claim and lack of standing where plaintiffs failed to allege they incurred any actual injury as a result of receiving SPAM).

27

28

In *Birdsong v. Apple, Inc.*, 590 F.3d 955, 956, 961 (9th Cir. 2009), people who bought iPods but *didn't* experience hearing loss (even though others did) suffered no "injury in fact." This case is indistinguishable from *Birdsong*.

<u>Second</u>, Plaintiffs do not allege that they got something different or that the products were defective or inedible. They received the benefit of their bargain. *See Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 857 (2008) (no UCL standing where plaintiff "did not allege he did not want the book or Time's alleged acts of unfair competition induced him to keep a book he otherwise would have returned"); *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1349 (2009) (standing requires allegation that plaintiff would not have paid, or agreed to pay, service fee if it had been properly disclosed).

<u>Third</u>, claims of "economic injury" are especially suspect where, as here, the plaintiff has already consumed the product. In *Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010), the plaintiffs brought claims arising from their purchase of children's bath products that allegedly "contain probable carcinogens and other unsafe substances." *Id.*, at *1. Judge Wilken dismissed for lack of Article III standing. *Id.*, at *4.

<u>Fourth</u>, the label says "Your satisfaction guaranteed or your money back." (RJN, Exs. B-F [Dkt. No. 19-2 through -6].) If Plaintiffs were unhappy, they could have availed themselves of this remedy. They do not allege that they did, despite the multiple occasions on which they purchased Breyers ice cream. They lack Article III standing.

## 2.   Plaintiffs Have Not Alleged The Elements of Injury or Deception With Sufficient Particularity.

In *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009), the Ninth Circuit held that, in addition to claims for fraud, claims brought under the UCL and false advertising law must be pled with particularity under Rule 9(b). This applies also to omissions. *Id*. at 1126. Thus, a claimant who sues over advertising must "articulate the who, what, when, where, and how of the misconduct alleged." *Id.* Moreover, a complaint must meet the minimum standards of Rule 12(b)(6) by going beyond just recitation of elements and legal conclusions. *See Twombly*, 550 U.S. at 555; *accord Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1126-29 (N.D. Cal.

1   2009) (Hamilton, J.); *Snow v. Bank of America, N.A.*, No. C 10-03226, 2010 WL 4608180 *1

2   (N.D. Cal., Nov. 5, 2010) (Seeborg, J.).

3          Plaintiffs' Amended Complaint adds to the word count, but it still misses the mark.  It

4   alleges that Plaintiffs are "willing to and ha[ve] paid a premium for foods that are all natural and

5   ha[ve] refrained from buying their counterparts that were not all natural," that they "relied" on the

6   representation that Breyers ice cream was "all natural," and that products using cocoa processed

7   with potassium carbonate are not "natural."  (Am. Compl. ¶¶ 5-6.)

8          Let us examine more closely what Plaintiffs have just said.

9          By Plaintiffs' theory, the words "All Natural" on the product label constitute a term of art.

10  Thus, to be deceived, a consumer would have to be someone who is (i) intimately familiar with

11  the FDA's "natural" policy *and* the USDA regulations about what constitutes a "synthetic,"

12  (ii) saw the words "All Natural," (iii) concluded that those words amounted to a representation by

13  the manufacturer that the alkali used in the Dutch cocoa process is "not synthetic" as defined by

14  the USDA regulations (i.e., it *is* sodium carbonate), and (iv) made his or her purchase decision in

15  reliance on that eccentric belief.

16         There is more.  All class members, they tell us, shared their idiosyncratic belief.  (*See* Am.

17  Compl., ¶¶ 2-4, 23, 30, 39.)  The law of false advertising, however, "focuses on a reasonable

18  consumer who is a member of the target population."  *In re Vioxx Class Cases*, 180 Cal. App. 4th

19  116, 130, 103 Cal. Rptr. 3d 83 (2009).  This requires that plaintiffs show that "members of the

20  public are likely to be deceived."  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).

21  Plaintiffs have failed to allege a plausible claim that a reasonable consumer would assume the

22  words "All Natural" on the label meant "alkalized with sodium carbonate *and not potassium*

23  *carbonate.*"

24         Plaintiffs' bare allegations are indistinguishable from those in *Wright v. General Mills,*

25  *Inc.*, No. 08cv1532 L(NLS), 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009), another "Private

26  Surgeon General" case in which the district court found that plaintiff failed to meet the *Twombly*

27  and *Iqbal* pleading standards.  There, the plaintiff sued General Mills for advertising "Nature

28  Valley" products as "100% Natural" even though the products contained high-fructose corn

syrup.  As here, plaintiff alleged that "[a]s a direct result of its misleading, deceptive, untrue advertising ... Defendant caused Plaintiff and other members of the Class to purchase, purchase more of, or pay more for, these Nature Valley products."  2009 WL 3247148, at *5 (citation omitted).  That was not enough:  "Factual allegations must provide more than 'labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do' in order to 'raise a right to relief above the speculative level.'"  *Id.* (citing *Twombly*, 550 U.S. at 555).

*Wright* is particularly apt, because Plaintiffs here makes similar allegations about the same adjective "natural" with respect to the Breyers brand.  But like the plaintiffs in *Wright*, they have provided nothing more than "labels and conclusions."

The Court should dismiss the Amended Complaint for failure to allege a plausible claim of injury or deception.

### C.    Plaintiffs' Claims Are Preempted.

Plaintiffs' claims are expressly preempted.  The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 ("FFDCA") establishes a comprehensive federal scheme of food regulation to ensure that food is safe and is labeled in a manner that does not mislead consumers.  21 U.S.C. § 341 *et seq*.  In 1990, Congress enacted the Nutrition Labeling and Education Act ("NLEA") to amend the FFDCA to require uniform food labeling and require the now-familiar "Nutrition Facts" box that appears on food product labels.  *See* 21 U.S.C. § 343(q)(1)(A)-(D).

In accordance with the NLEA, the FDA promulgated regulations with respect to food labels.  *See, e.g.*, 21 C.F.R. §§ 101.1-101.18.  Generally, a food is misbranded if "its labeling is false or misleading in any particular."  21 U.S.C. § 343(a)(1).  But the NLEA Amendments include a broad express preemption provision that governs product labeling.  21 U.S.C. § 343-1(a); *see Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 106-09 (D.D.C. 2006) (noting the breadth of NLEA preemption clause), *aff'd on other grounds*, 508 F.3d 11 (D.C. Cir. 2007).  The NLEA provides that no state may "directly or indirectly establish ... any requirement for the labeling of food that is *not identical to* the requirement of section 403(q) [21 U.S.C. § 343(q)]" (emphasis added).  A similar provision applies to section 403(r), 21 U.S.C. § 343(r).

1    "Not identical to" is Plaintiffs' undoing.  It forecloses any "State requirement [that]

2    directly or indirectly imposes obligations or contains provisions concerning the composition or

3    labeling of food" that are "not imposed by or contained in the applicable provision" or "differ

4    from those specifically imposed by or contained in the applicable provision."  21 C.F.R.

5    § 100.1(c)(4).  Thus, a court may impose labeling requirements *only if* "identical to" the FDA's

6    requirements.  *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086 (2008), *cert. denied sub nom.*

7    *Albertson's, Inc. v. Kanter*, 129 S. Ct. 896 (2009).

8        Plaintiffs' claims are indistinguishable from the claims made in *Chacanaca v. The Quaker*

9    *Oats Co.*, No. C 10-0502 RS, 2010 WL 4055954, at *8 (N.D. Cal. Oct. 14, 2010) (Seeborg, J.),

10   where this Court found that the plaintiffs' UCL and other state law claims sought to impose

11   labeling requirements that were not identical to FDA regulations regarding use of the terms "0g

12   Trans Fat" and therefore were expressly preempted.  *Accord Red v. The Kroger Co.*, No. 10-cv-

13   01025-DMG-MAN, 2010 U.S. Dist. LEXIS 115238 (C.D. Cal. Sept. 2, 2010) (Gee, J.) (finding

14   preempted UCL claim alleging failure to disclose partially hydrogenated vegetable oil on food

15   label); *Peviani v. Hostess Brands, Inc.*, ___ F. Supp. 2d ___, 2010 WL 4553510 (C.D. Cal. Nov.

16   3, 2010) (Marshall, J.) (same).

17       Plaintiffs seek to impose disclosure requirements that are different from and "not identical

18   to" the FDA's policy on "natural" claims.  For example, they seek to hold Breyers liable in fraud

19   for not stating on the label *which* alkali was used (*see* Am. Compl. ¶ 35), though they admit that

20   this goes beyond what the FDA requires.  (*Cf.*, Am. Compl. ¶ 16.)

21       The FDA's "policy" constitutes an "advisory opinion" under 21 C.F.R. § 10.85.  The FDA

22   is obligated to follow this opinion and may not recommend legal action against a product that is

23   labeled in conformity with it.  Plaintiffs seek to impose liability for "natural" claims where the

24   FDA may not recommend legal action.  Or, put another way, Plaintiffs seek to create a "natural"

25   rule where the FDA has not created one.  As such, they are asking the court for labeling require-

26   ments that are not "identical to" the FDA's requirements.

27

28

1    Because Plaintiffs seek to impose disclosure requirements "not identical to" the FDA's

2    regulations, their claims are preempted.[7]  The Court should dismiss.

3    **D.    The Court Should Abstain In Deference To The FDA.**

4    The Court could also abstain.  Courts typically decline equitable relief if it would entangle

5    them in a complex area that is already subject to oversight by an agency having day-to-day super-

6    vision responsibilities.  *See Desert Healthcare Dist. v. PacifiCare FHP, Inc.*, 94 Cal. App. 4th

7    781, 794-96 (2001); *see also Korens v. R.W. Zukin Corp.*, 212 Cal. App. 3d 1054, 1059 (1989);

8    *Wolfe v. State Farm Fire & Cas. Ins. Co.*, 46 Cal. App. 4th 554, 568 (1996).

9    In a class action case arising on similar facts, Judge Pfaelzer declined to certify state-law

10    claims under the UCL in which plaintiffs sought an injunction against a defendant drug manu-

11    facturer's allegedly false advertising of its drug Paxil.  *In re Paxil Litig.*, 218 F.R.D. 242 (C.D.

12    Cal. 2003).  Said the court:  "Plaintiffs would use the Court as a forum to challenge and to

13    second-guess the FDA's prior approval of Paxil's safety and efficacy, with the significant claim

14    that a jury must be the final arbiter of Paxil's safety."  *Id.* at 248.  Transpose "safety and efficacy"

15    to "all natural" food labeling and the *Paxil* court could have been speaking of this case.

16    **E.    Plaintiffs Have No Claim For Unjust Enrichment.**

17    Plaintiffs' sixth claim for relief is unjust enrichment.  But there is no such thing as a cause

18    of action for unjust enrichment under California law.  *Melchior v. New Line Prods., Inc.*, 106 Cal.

19    App. 4th 779, 793 (2003); *Johns v. Bayer Corp.*, No. 09-cv-1935, 2010 WL 476688, at *6 (S.D.

20    Cal. Feb. 9, 2010) ("unjust enrichment . . . is not an independent cause of action"); *Walker v.*

21    *Equity 1 Lenders Group*, No. 09-cv-325, 2009 WL 1364430, at *9 (S.D. Cal. May 14, 2009) ("a

22    cause of action for unjust enrichment is not cognizable under California law"); *Wolph v. Acer Am.*

23    ―――――――――――――

[7] *See, e.g., Turek v. General Mills, Inc.*, No. 09 C 7038, 2010 WL 3527553, at *6 (N.D.
Ill. Sept. 1, 2010) (finding express preemption of state law claims seeking to require disclosure
that fiber content of product was from "non-natural" fiber that wasn't proven to have identical
health benefits of natural fiber); *see also In re PepsiCo, Inc. Bottled Water Marketing & Sales*
*Practices Litig.*, 588 F. Supp. 2d 527, 537 (S.D.N.Y. 2008) (finding FDA's regulation of labeling
requirements for purified water preempted plaintiffs' state law claims); *Shepard v. DineEquity*,
*Inc.*, No. 08-2416-KHV, 2009 U.S. Dist. LEXIS 97245, at *15-17 (D. Kan. Sept. 25, 2009)
(finding preemption of plaintiff's claims related to nutrition content statements by Applebee's and
Weight Watchers).

28

1   *Corp.*, No. C 09-01314, 2009 WL 2969467, at *5 (N.D. Cal. Sep. 14, 2009) ("unjust enrichment

2   does not constitute a stand-alone cause of action").  Rather, unjust enrichment is a basis for

3   obtaining restitution and "does not lie" where, as here, an "'enforceable, binding agreement exists

4   defining the rights of the parties.'"  *Gonzales Commc'ns, Inc. v. Titan Wireless, Inc.*, No. 04-cv-

5   147, 2007 WL 1994057, at *3 (S.D. Cal. Apr. 18, 2007) (quoting *Paracor Fin., Inc. v. Gen. Elec.*

6   *Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)).

7          The Court should dismiss the sixth cause of action.

8          **F.      Plaintiffs Have No Claim For Common Law Fraud.**

9          To state a claim for common law fraud, Plaintiffs must allege the following elements:  (1)

10   a misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5)

11   resulting damages.  *Owens v. Wells Fargo Bank*, No. C 09-3354 PJH, 2010 WL 424473, at *2

12   (N.D. Cal. Jan. 27, 2010).  Under Rule 9(b), Plaintiffs must also plead the "who, what, when,

13   where and how of the alleged misconduct."  (*Id.* (citation omitted).)  Plaintiffs fail to plead any of

14   the required elements.

15          First, Plaintiffs failed to plead the requisite misrepresentation.  As discussed above, their

16   claim of deception cannot withstand scrutiny.

17          Second, also as noted, Plaintiffs do not satisfy the "knowledge of falsity" element.

18   Indeed, having flip-flopped themselves on what "natural" means in this context, Plaintiffs' claim

19   that Breyers acted knowingly and with intent to deceive is simply implausible.  Indeed, to accept

20   these averments the Court would have to suspend its disbelief, i.e., assume that Breyers (i) used

21   the words "All Natural" on the label (ii) complied with the FDA labeling regulations by disclos-

22   ing that the cocoa has been alkalized, (iii) but did not specifically disclose that the alkali used was

23   "potassium carbonate" (*if* it was) (iv) with the intent to dupe consumers into thinking they were

24   getting cocoa alkalized *with sodium carbonate*, (v) in order to exact a premium price.

25          Third, Plaintiffs do not allege facts sufficient to show reasonable reliance by themselves

26   let alone class members, and there is no basis on which this Court could presume classwide

27   reliance.

28

### G.     The Court Should Strike The Class Averments.

An elementary prerequisite to certification is that the class sought to be represented must be "adequately defined and clearly ascertainable."  *See DeBremaeker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).  Here, the class averments fail to allege an ascertainable class.

The Amended Complaint says that the alkali is *either* potassium carbonate or sodium carbonate.  (Am. Compl., ¶ 15.)  Plaintiffs do not allege that they know which alkali was used in the ice cream products *they* bought.  Yet, the class is defined as only those class members who bought "Ice Cream products that were labeled 'all natural' but contained alkalized cocoa *processed with a synthetic ingredient*."  (Am. Compl., ¶ 25 [italics added].)  This definition asks consumers to self-identify themselves in order to be part of the class.  That is impermissible.  As the Manual for Complex Litigation states:

> Although the identity of individual class members need not be
> ascertained before class certification, *the membership of the class
> must be ascertainable.*  Because individual class members must
> receive the best notice practicable and have an opportunity to opt
> out, and because individual damage claims are likely, Rule 23(b)(3)
> actions require a class definition that will permit identification of
> individual class members, while Rule 23(b)(1) or (b)(2) actions
> may not.  *An identifiable class exists if its members can be ascer-
> tained by reference to objective criteria.*

Manual For Complex Litigation (Fourth), § 21.222 [italics added].

In *Mazur v. eBay Inc.*, 257 F.R.D. 563 (N.D. Cal. 2009), Judge Patel rejected a class definition arising from alleged misrepresentations by eBay that certain online auctions were "live," when, in fact, other "live" bidders were eBay employees.  In denying certification of the "would-be winner" class on grounds of non-ascertainability, the Court expressly "disavow[ed] any reliance on self-identification" by putative class members.  257 F.R.D. at 567-68.  Other cases are to the same effect.[8]

---

[8] In *Hodes v. Van's Int'l Foods*, No. CV09-01530, 2009 WL 2424214 (C.D. Cal., July 23, 2009), plaintiffs asserted claims for fraud and violation of the UCL arising from their purchase of frozen waffles with allegedly fraudulent nutritional information.  The putative class encompassed "all persons or entities who purchased Van's deceptively-labeled waffles."  *Id*. at 2.  Judge Klausner denied class certification due to "concerns about how plaintiffs will identify each class member and prove which brand of Van's frozen waffles each member purchased, in what quantity, and for what purpose."  *Id*. at 4-5.  *See also Stern v. Cingular Wireless Corp.*, 2009 U.S.

(Footnote continues on next page.)

1    Under Rule 23(c)(1) of the Federal Rules of Civil Procedure, this Court is empowered to

2    determine "at an early practicable time" whether an action is to be maintained as a class action.

3    Additionally, Rule 23(d)(4) expressly authorizes the Court to issue orders "requiring that the

4    pleadings be amended to eliminate therefrom allegations as to representation of absent persons,

5    and that the action proceed accordingly."   Consistent with these rules, motions to strike are a

6    well-recognized means of attacking inadequate class allegations such as these.   *See* 7A Charles

7    Alan Wright et al., *Federal Practice & Procedure* § 1760, at 131 (2d ed. 1986);   *Cook County*

8    *College Teachers Union v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972) ("One opposing a class action

9    may move for an order determining that the action may not be maintained as a class suit");   *SPG*

10   *Inv. Ass'n v. Berry Petroleum Corp.*, No. 4-84-159, 1987 U.S. Dist. LEXIS 12093 (D. Minn. Dec.

11   30, 1987) (granting defendants' motion for denial of class certification); 7A Wright et al., *supra*,

12   § 1785, at 89 ("Either plaintiff or defendant may move for a determination under Rule 23(c)(1)").

13   **VI.    CONCLUSION**

14       For the reasons set forth above, Defendant respectfully requests that this Court dismiss all

15   claims asserted against it, with prejudice.

16

17

18

19

20

21

---

22   (Footnote continued from previous page.)

23   Dist. LEXIS 17944, **16-22 (C.D. Cal. Feb. 23, 2009) (class of cell phone users alleging that they were unwittingly misled into oral authorization of additional cell phone charges was not ascertainable); *Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2007 WL 2015440 *8 (N.D. Cal.

24   July 11, 2007) (Alsup, J.) (holding as non-ascertainable a putative class consisting of customers who owned cable-ready television sets because "[t]here would be no easy way to determine

25   which subscribers owned a cable-ready television during the relevant class period."); *In re: Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. C 06-2069 SBA, 2008 WL 413749 *9 (N.D. Cal.

26   Feb. 13, 2008) (Armstrong, J.) (declining to certify a class, in part, on grounds of non-ascertain-ability, where Wal-Mart's employment records did not provide enough information to determine

27   class membership, and Wal-Mart was under no statutory obligation to maintain such records).

28

1   Dated: December 20, 2010                WILLIAM L. STERN
                                            JANELLE J. SAHOURIA
2                                           MORRISON & FOERSTER LLP

3                                           By:  /s/ William L. Stern
                                                    William L. Stern
4
                                            Attorneys for Defendant
5                                           CONOPCO, INC. d/b/a UNILEVER (formerly
                                            d/b/a GOOD HUMOR-BREYERS) d/b/a
6                                           BREYERS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28