**United States District Court**
For the Northern District of California

1
2
3
4
5
6            UNITED STATES DISTRICT COURT
7            NORTHERN DISTRICT OF CALIFORNIA
8
9
10
11
12  SKYE ASTIANA,
                                              No. C 10-4387 PJH
13          Plaintiff,
14      v.                                    **ORDER DENYING MOTIONS TO**
                                              **DISMISS AND MOTIONS TO STRIKE**
15  BEN & JERRY'S HOMEMADE, INC.
16          Defendant.
    _____           RELATED CASES
17  CHANEE THURSTON, et al.,
18          Plaintiff,                         No. C 10-4937 PJH
19      v.
20  CONOPCO, INC.,
21          Defendant.
    _____/
22

23          Defendants' motions for an order dismissing the first amended complaint in each of

24  the above-entitled related actions, and motions to strike the class averments, came on for

25  hearing before this court on April 6, 2011.  Plaintiffs appeared by their counsel Janet Linder

26  Spielberg and Joseph Kravec, Jr., and defendants appeared by their counsel Janelle

27  Sahouria and William Stern.  Having read the parties' papers and carefully considered their

28  arguments and the relevant legal authority, the court hereby DENIES the motions.

**United States District Court**
For the Northern District of California

**BACKGROUND**

Plaintiffs allege that defendants Ben & Jerry's Homemade, Inc. ("Ben & Jerry's") and Conopco, Inc., d/b/a Unilever (formerly Good Humor-Breyers) d/b/a Breyers ("Breyers") misrepresented ice cream containing "Dutch" or "alkalized" cocoa as "all natural." Plaintiffs assert that the alkalized cocoa used in Ben & Jerry's and Breyers' ice cream is processed with potassium carbonate, a man-made ingredient that is "synthetic," not "natural."

The cocoa bean is a seed that grows on trees native to South America. The fermented and dried cocoa seed produces "chocolate," which is a product that is derived from cocoa mixed with some sort of fat (cocoa butter, oil) and finely powdered sugar. Cocoa powder is the end product from a pressing or extraction process that removes a significant portion of the fat or cocoa butter from the cocoa bean.

Unsweetened cocoa powder is typically rendered in two forms – unalkalized cocoa, or Dutch-process/alkalized cocoa. Unalkalized cocoa results from pressing cocoa beans with no additional modifications. The resulting natural cocoa powder is usually a light brown color. It is somewhat acidic, with a strong chocolate flavor.

Alkalized cocoa powders, sometimes referred to as "Dutched," come from cocoa nibs and/or chocolate liquor that has been treated with mild alkali solutions in order to raise the pH (to make it less acidic). This alkalizing or dutching process is considered a safe process for cocoa, used to modify the color, taste, and functionality of cocoa powder in food products.

Alkalization can be used to create a range of dark brown and red-brown colors that add desirable appearances to some food products that contain cocoa powders. While alkalization can improve taste by reducing some of the sourness and bitterness associated with natural cocoa powders, and can also improve the solubility of cocoa powder in certain beverage applications, it also destroys many of the flavonols (water-soluble pigments that are believed to contribute health benefits).

On August 12, 2010, the Center for Science in the Public Interest ("CSPI") sent a letter to Unilever, the parent company of Ben & Jerry's and Breyers, identifying

United States District Court

For the Northern District of California

1  approximately 50 products it claimed were improperly labeled.  One category of products

2  was chocolate ice cream and frozen yogurt containing alkalized cocoa, labeled "all natural."

3  In September 2010, Ben & Jerry's agreed to phase out the use of "all natural" on ice

4  creams and frozen yogurts containing "processed" or "artificial" ingredients – including

5  alkalized cocoa.[1]  CSPI issued a press release to that effect on September 27, 2010.

6      Plaintiffs filed the FACs in December 2010, on behalf of a nationwide class and a

7  California sub-class.  Each FAC alleges a claim of fraud; three claims under California

8  Business & Professions Code § 17200 (one under the "unlawful" prong – based on violation

9  of California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health &

10  Safety Code §§ 109875-111915, which incorporates all relevant regulations of the federal

11  Food and Drug Administration ("FDA"); one under the "unfair" prong; and one under the

12  "fraudulent" prong); a claim of false advertising under Business & Professions Code

13  § 17500; and a claim for restitution based on a theory of unjust enrichment.  Plaintiffs seek

14  compensatory and punitive damages, restitution of all amounts class members "paid to

15  purchase Ice Cream products," disgorgement of profits, an accounting, a constructive trust,

16  and declaratory and injunctive relief.

17      Defendants now seek an order dismissing the FACs pursuant to Federal Rule of

18  Civil Procedure 12(b)(6), for failure to state a claim; and an order pursuant to Federal Rule

19  of Civil Procedure 12(f), striking the class averments.

20                          **DISCUSSION**

21  A.    Motion to Dismiss for Failure to State a Claim

22        1.    Legal Standard

23      A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

24  alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

25  Review is limited to the contents of the complaint.  Allarcom Pay Television, Ltd. v. Gen.

26  Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for

27  

28      [1]  It appears that Breyers still uses the phrase "all natural" on its ice cream packaging.

United States District Court

For the Northern District of California

1    failure to state a claim, a complaint generally must satisfy only the minimal notice pleading

2    requirements of Federal Rule of Civil Procedure 8.

3         Rule 8(a)(2) requires only that the complaint include a "short and plain statement of

4    the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Specific

5    facts are unnecessary – the statement need only give the defendant "fair notice of the claim

6    and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing

7    Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

8         All allegations of material fact are taken as true.  Id. at 94.  However, legally

9    conclusory statements, not supported by actual factual allegations, need not be accepted.

10   See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009).  A plaintiff's obligation to provide the

11   grounds of his entitlement to relief "requires more than labels and conclusions, and a

12   formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at

13   555 (citations and quotations omitted).  Rather, the allegations in the complaint "must be

14   enough to raise a right to relief above the speculative level."  Id.

15        A motion to dismiss should be granted if the complaint does not proffer enough facts

16   to state a claim for relief that is plausible on its face.  See id. at 558-59. "[W]here the

17   well-pleaded facts do not permit the court to infer more than the mere possibility of

18   misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is

19   entitled to relief.'"  Iqbal, 129 S.Ct. at 1950.

20        In addition, when resolving a motion to dismiss for failure to state a claim, the court

21   may not generally consider materials outside the pleadings, although the court may

22   consider a matter that is properly the subject of judicial notice.  Lee v. City of Los Angeles,

23   250 F.3d 668, 688-89 (9th Cir. 2001); see also Mack v. South Bay Beer Distributors, Inc.,

24   798 F.2d 1279, 1282 (9th Cir. 1986) (on a motion to dismiss, a court may properly look

25   beyond the complaint to matters of public record and doing so does not convert a Rule

26   12(b)(6) motion to one for summary judgment).  Additionally, the court may consider

27   exhibits attached to the complaint, see Hal Roach Studios, Inc. V. Richard Feiner & Co.,

28   Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced by the complaint

United States District Court

For the Northern District of California

1   and accepted by all parties as authentic.  See Van Buskirk v. Cable News Network, Inc.,

2   284 F.3d 977, 980 (9th Cir. 2002).

3         Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake

4   shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Under Rule 9(b), the complaint

5   must allege specific facts regarding the fraudulent activity, such as the time, date, place,

6   and content of the alleged fraudulent representation, how or why the representation was

7   false or misleading, and in some cases, the identity of the person engaged in the fraud.  In

8   re GlenFed Sec. Litig., 42 F.3d 1541, 1547-49 (9th Cir.1994).

9         2.    Defendants' Motions

10        Defendants argue that plaintiffs have not alleged a plausible legal theory of liability

11  or a cognizable injury; that plaintiffs' claims are preempted; and that the court should

12  abstain in deference to the FDA.  They also assert that plaintiffs have no claim for unjust

13  enrichment and have failed to adequately plead fraud.  In addition, with regard to the

14  Astiana case only, defendant contends that plaintiffs are not entitled to injunctive relief.

15        a.    Whether the FACs allege a plausible legal theory

16        First, defendants argue that plaintiffs have not alleged a plausible legal theory of

17  liability.  Defendants contend that plaintiffs' claims are entirely based on the premise that

18  the use of potassium carbonate renders the cocoa-making process "not natural," and that

19  the inclusion of this "not natural" ingredient means that defendants' representation that their

20  ice cream products are "all natural" is false and misleading.  Defendants assert, however,

21  that plaintiffs' definition of "natural" in the FACs differs from the definition they used in the

22  original complaints.  Defendants also contend that the FACs fail to establish a violation of

23  FDA policy.

24        In opposition, plaintiffs argue that the FACs are now the operative complaints in

25  each case, and that the fact that the original complaints defined "natural" one way, and that

26  the FACs define "natural" in a somewhat different way, is beside the point.  Moreover,

27  plaintiffs assert, they have pursued the same theory of liability since filing the cases – that

28  defendants' ice cream products are not "natural" because they contain synthetic

United States District Court

For the Northern District of California

1   substances, and that the label "all natural" is therefore misleading.

2       Plaintiffs also contend that defendants have willfully misread the FDA's policy; and

3   assert that their burden in this case is to prove that the use of "all natural" on the ice cream

4   labels was false and misleading in violation of state law – not to prove what FDA policy

5   might or might not say.

6       The court finds that the motion must be DENIED.  While defendants' argument

7   regarding the implausibility of the claim that plaintiffs (including the class) were deceived is

8   somewhat persuasive, the issue as to the named plaintiffs involves questions of fact, and is

9   therefore beyond the scope of this Rule 12(b)(6) motion.  Further, as to the members of the

10  proposed class, the issue involves questions that should be considered in a class

11  certification motion as part of the discussion of commonality and typicality.

12          b.      Whether the FACs adequately allege standing

13      Defendants contend that the court should dismiss the case for lack of Article III

14  standing, for failure to plead injury.  In addition, they assert that the § 17200 and § 17500

15  claims should be dismissed because those claims require proof of "injury in fact" and "loss

16  of money or property" and plaintiffs have alleged neither.

17      To establish standing under Article III, a plaintiff must allege facts showing an "injury

18  in fact," causation, and redressability.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61

19  (1992).  "Injury in fact" requires damage to "a legally protected interest which is both

20  concrete and particularized, and actual or imminent, not conjectural or hypothetical.  Id. at

21  560 (citations and quotations omitted).

22      Here, defendants assert that plaintiffs cannot satisfy these requirements.  They

23  argue that plaintiffs' claimed injury appears to be that they overpaid for certain flavors of ice

24  cream labeled "all natural," but that plaintiffs have not alleged that the products they

25  purchased used potassium carbonate, and they admit that sodium carbonate is another

26  "commonly used" alkali.  At best, defendants assert, plaintiffs have pled a contingent or

27  hypothetical injury.

28      Defendants contend that this is fatal to plaintiffs' case, as even named plaintiffs who

6

United States District Court

For the Northern District of California

represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.  Defendants assert further that plaintiffs do not allege that they got something different or that the products were defective or inedible.  Rather, they received the benefit of their bargain.

Defendants contend that claims of "economic injury" are especially suspect where, as here, the plaintiffs have already consumed the product.  Defendants note that the label says, "Your satisfaction guaranteed or your money back," and argue that if plaintiffs were unhappy, they could have availed themselves of this remedy.  However, they do not allege that they did, despite the multiple occasions on which they purchased defendants' ice cream.

In opposition, plaintiffs assert that they have sufficiently met the test for standing under existing case law.  They contend that they have adequately alleged that the ice cream products they purchased contained potassium carbonate, and have also adequately alleged "actual particularized injury" to themselves, by asserting that defendants sold numerous flavors of ice cream that were labeled "all natural," but which contained what plaintiffs assert were "undisclosed synthetic ingredients."  They contend that over the past several years, the named plaintiffs have purchased many pints of this ice cream each year, and that had they known that this ice cream contained cocoa that was not "natural," they would not have purchased it.  Plaintiffs argue that allegations that plaintiffs did not receive what was advertised and what they paid for have routinely been found to have established injury.

As for UCL standing, plaintiffs assert that under Kwikset Corp. v. Superior Court, 51 Cal. 4th 310 (2011), they have sufficiently alleged injury-in-fact under the UCL simply by asserting that they spent money on the allegedly mislabeled product.  With regard to the argument that they could simply have asked for their money back when they realized that the cocoa was alkalized, plaintiffs respond that they have clearly registered a complaint about the ice cream products by filing the present actions, and defendants have not offered

United States District Court

For the Northern District of California

1   to return their money to them and instead are defending the lawsuits.

2        The court finds that the motion must be DENIED.  Plaintiffs have adequately alleged

3   standing.  Assuming all facts alleged in the FACs to be true, the court must accept that at

4   least the named plaintiffs suffered a concrete and particularized injury because they bought

5   ice cream labeled "all natural" which contained some allegedly synthetic substance.  The

6   injury alleged is that they were deceived, and paid money they would not otherwise have

7   paid had they known about the potassium carbonate in the cocoa.

8        It may ultimately prove true, as defendants claim, that plaintiffs have no actionable

9   claims.  However, that is not the same as finding no standing.  If the plaintiffs did indeed

10  purchase the ice cream based on the representation that it was "all natural" and if that

11  representation proves to be false, then they arguably have suffered an injury in fact.

12            c.       Whether the FACs allege the UCL and fraud claims with particularity

13       Defendants assert further that plaintiffs have not alleged the elements of injury or

14  deception with sufficient particularity.  Under Rule 9(b), claims of fraud, as well as claims of

15  deceptive advertising brought under the UCL and the false advertising law must be pled

16  with particularity.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125-26 (9th Cir. 2009).

17  Thus, a plaintiff must "articulate the who, what, when, where, and how of the misconduct

18  alleged."  Id.

19       Defendants note that plaintiffs assert that they are "willing to and ha[ve] paid a

20  premium for foods that are all natural and ha[ve] refrained from buying their counterparts

21  that were not all natural," that they "relied" on the representation that Breyers ice cream

22  was "all natural," and that products using cocoa processed with potassium carbonate are

23  not "natural."

24       However, defendants argue, under this theory, the words "all natural" on the product

25  label constitute a term of art.  Thus, defendants contend, to be deceived, a consumer

26  would have to be someone who is (i) intimately familiar with the FDA's "natural" policy and

27  the USDA regulations about what constitutes a "synthetic," (ii) saw the words "all natural,"

28  (iii) concluded that those words amounted to a representation by the manufacturer that the

United States District Court

For the Northern District of California

1   alkali used in the Dutch cocoa process is "not synthetic" as defined by the USDA

2   regulations (i.e., it is sodium carbonate), and (iv) made his or her purchase decision in

3   reliance on that belief

4       Defendants note further that plaintiffs allege that all class members shared their

5   belief.  Defendants contend, however, that the law of false advertising focuses on a

6   reasonable consumer who is a member of the target population, which requires that

7   plaintiffs show that members of the public are "likely to be deceived." Defendants contend

8   that plaintiffs have failed to allege a plausible claim that a reasonable consumer would

9   assume the words "all natural" on the label meant "alkalized with sodium carbonate and not

10  potassium carbonate."

11      In opposition, plaintiffs argue that they have pled facts with sufficient particularity, as

12  they have alleged the "who, what, when, where, and how" of the alleged deception.  The

13  "who" is Ben & Jerry's, Breyers, and Unilever.  The "what" is the statement that ice cream

14  containing alkalized cocoa is "all natural."  The "when" is alleged as "since at least 2006,"

15  and "throughout the class period."  The "where" is on the ice cream package labels.  The

16  "how the statements were misleading" is the allegation that defendants did not disclose that

17  the alkalizing agent in the alkalized cocoa was potassium carbonate, which plaintiffs allege

18  is a "synthetic."

19      As for defendants' argument that the FACs fail to establish a plausible claim that

20  reasonable consumers would be deceived, plaintiffs respond that the FACs assert that the

21  effect of mislabeling the ice cream cartons would be to mislead consumers into believing

22  that they were getting something that they were not.

23      The court finds that the motion must be DENIED.  As with the arguments in subparts

24  (a) and (b), above, the presence of factual disputes does not render the claims

25  inadequately pled for purposes of the present motion.

26          d.      Whether plaintiffs' claims are preempted

27      Defendants argue that plaintiffs' claims are preempted by the Federal Food, Drug,

28  and Cosmetic Act, 21 U.S.C. § 301 ("FDCA").  The FDCA governs labeling and related

**United States District Court**

For the Northern District of California

1   claims that can be made with respect to food, drugs, cosmetic products, and medical

2   devices.  In enacting the FDCA, Congress established a comprehensive federal scheme of

3   food regulation to ensure that food is safe and is labeled in a manner that does not mislead

4   consumers.  21 U.S.C. § 341, et seq.

5        In 1990, Congress enacted the Nutrition Labeling and Education Act ("NLEA") to

6   amend the FDCA to require uniform food labeling and require the now familiar "Nutrition

7   Facts" box that appears on food labels.  See 21 U.S.C. § 343(q)(1)(A)-(D).[2]  Pursuant to

8   the NLEA, the Food and Drug Administration ("FDA") promulgated regulations with respect

9   to food labeling.  See, e.g., 21 C.F.R. § 101.1-101.18.

10       Generally, a food is misbranded if "its labeling is false or misleading in any

11  particular."  21 U.S.C. § 343(a)(1).  But the NLEA Amendments include a broad express

12  preemption provision that governs product labeling.  21 U.S.C. § 343-1(a)(3); see Mills v.

13  Giant of Md., LLC, 441 F. Supp. 2d 104, 106-09 (D.D.C. 2006) (noting the breadth of NLEA

14  preemption clause), aff'd on other grounds, 508 F.3d 11 (D.C. Cir. 2007).  The NLEA

15  provides that no state may "directly or indirectly establish . . . any requirement for the

16  labeling of food that is not identical to the requirement of section 403(q) [21 U.S.C.

17  § 343(q)]."  See 21 U.S.C. § 343-1(a)(4).  A similar provision applies to section 403(r), 21

18  U.S.C. § 343(r).  See 21 U.S.C. § 343-1(a)(5).

19       Defendants argue that the "not identical" provision (above) is plaintiffs' "undoing,"

20  because a court may impose labeling requirements only if "identical to" the FDA's

21  requirements.  Defendants contend that plaintiffs' claims here are "indistinguishable" from

22  the claims made in Chacanaca v. The Quaker Oats Co., 752 F.Supp. 2d 1111 (N.D. Cal.,

23  2010), where the court found that the plaintiffs' UCL and other state law claims sought to

24  ────────────────

25       [2]  Under 21 U.S.C. § 343(q), "[a] food shall be deemed to be misbranded . . . "if it is a
     food intended for human consumption and is offered for sale, unless its label or labeling bears
26   nutrition information that provides" the serving size or the common household unit of measure
     that expresses the serving size; the number of servings per container; the total number of
27   calories derived from any source and derived from total fat, in each serving size or other unit
     of measure of the food; and the amount of total fat, saturated fat, cholesterol, sodium, total
28   carbohydrates, complex carbohydrates, sugars, dietary fiber, and total protein contained in
     each serving size or other unit of measure.  21 U.S.C. § 343(q)(1)(A)-(D).

United States District Court

For the Northern District of California

1   impose labeling requirements that were "not identical" to FDA regulations regarding use of

2   the terms "cholesterol free" and "0g Trans Fat" and therefore were expressly preempted.

3   See id. at 1122.

4          Defendants argue that plaintiffs are seeking to impose disclosure requirements that

5   are different from and "not identical to" the FDA's policy on "natural" claims.  For example,

6   defendants assert, plaintiffs seek to hold defendants liable in fraud for not stating on the

7   label which alkali was used, although they admit that this goes beyond what the FDA

8   requires.

9          Defendants contend that the FDA's "policy" constitutes an "advisory opinion" under

10  21 C.F.R. § 10.85, and that the FDA is obligated to follow this opinion and may not

11  recommend legal action against a product that is labeled in conformity with it.  Defendants

12  assert that plaintiffs seek to impose liability for "natural" claims where the FDA may not

13  recommend legal action – or, put another way, plaintiffs seek to create a "natural" rule

14  where the FDA has not created one – and that as such, they are asking the court for

15  labeling requirements that are not "identical to" the FDA's requirements.

16         In opposition, plaintiffs argue that their claims are not expressly preempted by the

17  FDCA because the FDA has not regulated the terms "natural" or "all natural."  That is,

18  plaintiffs contend that because the terms are not defined anywhere in NLEA § 343(r) or

19  § 343(q), and are not regulated by the FDA, the court cannot find that the claims asserted

20  here are preempted.

21         Plaintiffs argue that FDCA § 403A(a), 21 U.S.C. § 343-1(a)) reflects the intent of

22  Congress to preempt only state law requirements for food and beverage labeling in specific

23  labeling categories, and even then, only when those state law requirements were "not

24  identical" to those established by Congress and the FDA.  They cite the Final Rule, at 60

25  Fed. Reg. 57076, 57120 (Nov. 13, 1995), which states that "[t]he only State requirements

26  that are subject to preemption are those that are affirmatively different from the Federal

27  requirements on matters that are covered by section 403A(a) of the act."  Plaintiffs contend

28  that this means that Congress drafted a limited provision that left ample room for state

United States District Court

For the Northern District of California

1  regulation.

2       The court finds that the motion must be DENIED.  Federal law preempts state law

3  where any of the three forms of preemption are found:  (1) express preemption; (2) field

4  preemption; and (3) and implied preemption.  Hillsborough County, Florida v. Automated

5  Med. Labs. Inc., 471 U.S. 707, 713 (1985).  Put another way, federal preemption occurs

6  when Congress enacts a statute that explicitly preempts state law; when state law actually

7  conflicts with federal law; or when federal law occupies a legislative field to such an extent

8  that it is reasonable to conclude that Congress left no room for state regulation in the field.

9  Chae v. SLM Corp., 593 F.3d 936, 941 (9th Cir. 2010).

10      Consumer protection laws (such as the UCL) are preempted if they seek to impose

11  requirements that contravene the requirements set forth by federal law.  See Wyeth v.

12  Levine, 555 U.S. 555, 129 S.Ct. 1187, 1200 (2009); see also Chacanaca, 752 F.Supp. 2d

13  at 1118-19.  Even if a federal law contains an express preemption clause, it does not

14  immediately end the inquiry because the question of the substance and scope of Congress'

15  displacement of state law still remains.  Altria Group, Inc. v. Good, 555 U.S. 70, 129 S.Ct.

16  538, 543 (2008).

17      When determining the existence of preemption, courts are guided by two major

18  principles.  Wyeth, 129 S.Ct. at 1194.  First, the purpose of Congress "is the ultimate

19  touchstone" in every preemption case; second, in areas of traditional state regulation, the

20  court assumes that a federal law does not supplant state law unless Congress has made

21  such an intention clear and manifest.  Id. at 1194-95 (citations and quotations omitted).

22  Accordingly, defendants' preemption arguments must overcome the presumption against

23  preemption because food labeling has been an area historically governed by state law.

24  See Plumley v. Massachusetts, 155 U.S. 461, 472 (1894).

25      As noted above, the NLEA, which was enacted as an amendment to the FDCA,

26  provides that no state "may directly or indirectly establish under any authority . . . any

27  requirement for nutrition labeling of food that is not identical to the requirement of section

28  343(q) of this title," or "any requirement respecting any claim of the type described in

United States District Court

For the Northern District of California

1  section 343(r)(1) of this title, made in the label or labeling of food that is not identical to the

2  requirement of section 343(r) this title."  21 U.S.C. § 343-1(a)(4)-(5).

3      From this, it appears clear that Congress intended to preempt non-identical

4  requirements in the field of food labeling.  The purpose of the NLEA, however, is not to

5  preclude all state regulation of nutritional labeling, but to "prevent State and local

6  governments from adopting inconsistent requirements with respect to the labeling of

7  nutrients."  H. Rep. No. 101-538, at 10 (1990).  Moreover, Congress declared that the

8  NLEA "shall not be construed to preempt any provision of State law, unless such provision

9  is expressly preempted under section [343-1(a)] of the [FDCA]."  Pub.L. No. 101-535, 104

10  Stat. 2353, 2364 (Nov. 8, 1990).

11      In Wyeth, the Court addressed drug labeling under the FDCA and held that state

12  failure-to-warn claims against the manufacturer of an antihistamine were not preempted by

13  the FDCA.  Id., 129 S.Ct. at 1200.  The Court noted that Congress' purpose was not to

14  preempt state lawsuits with respect to drug labels.  Id.  The FDCA did not contain any

15  express preemption provisions until the 1976 enactment of an express preemption

16  provision relating to medical devices and the 1990 enactment of the NLEA relating to food

17  labels.  Id.; Holk, 575 F.3d at 337.  Here, unlike the drug labeling at issue in Wyeth, there is

18  an express preemption provision regarding the subject of the present action, food labeling.

19      The NLEA prohibits non-identical "requirements."  21 U.S.C. § 343-1(a)(4)-(5).  In

20  Holk v. Snapple Beverage Co., 575 F.3d 329, 341-42 (3rd Cir. 2009), the court held that

21  the NLEA did not preempt the state consumer fraud claims challenging the use of the word

22  "natural" on defendant's drink products, as neither the statute nor the regulations contained

23  any requirement regarding the word "natural," and the FDA had stated that it was

24  disinclined to define "natural" because there were "still many facets of the issue that the

25  agency will have to carefully consider if it undertakes a rulemaking to define the term

26  'natural.'"

27      In a number of recent cases, federal district courts in California have ruled that

28  claims brought under state consumer protection laws involving labels stating that the food

United States District Court

For the Northern District of California

1   in the package contained "0 Grams of Trans Fat" were preempted by the FDA's "express

2   nutrient content" regulations, which contain a definition of "trans fat."  In other words, where

3   manufacturers are in compliance with FDA requirements regarding express nutrient content

4   labeling – such as those for trans fats – requiring those manufacturers to add or change

5   something on the label regarding that trans fat content would necessarily impose a state-

6   law requirement for disclosure of trans fats.  See, e.g., Chacanaca, 752 F.Supp. 2d at

7   1118-23; Peviani v. Hostess Brands, Inc., 750 F. Supp. 2d 1111, 1119-20 (C.D. Cal.,

8   2010); Red v. The Kroger Co., 2010 WL 4262037 at *4-7 (C.D. Cal., Sept. 2, 2010).

9       By contrast, in Red v. Kraft Foods, Inc., 754 F.Supp. 2d 1137 (C.D. Cal., 2010), the

10  court held that state law claims regarding the use of the phrases "made with real

11  vegetables" and "made with real ginger and molasses" on the defendants' packages of

12  crackers and cookies were not preempted because they did not suggest that a specific

13  nutrient was absent or present in certain amounts.  Id. at 1142.

14      Similarly, in Lockwood v. ConAgra Foods, 597 F.Supp.2d 1028 (N.D. Cal. 2009), the

15  plaintiffs asserted that the defendant had violated the UCL by labeling its pasta sauce as

16  "all natural" when in fact it included high fructose corn syrup as an ingredient.  The court

17  held that the plaintiffs' state law claims were not expressly preempted under the NLEA,

18  because the NLEA preempted only state labeling requirements for artificial flavors, colors,

19  or preservatives that were different from the FDCA requirements; and also held that the

20  NLEA's preemption provision did not indicate an intent by Congress to occupy the field.

21  The court also noted that the FDA's articulation of the "policy" regarding the use of "natural"

22  suggested an intent not to occupy the field of food labeling, as did its subsequent refusal to

23  issue regulations regarding the definition of "natural."  Id. at 1031-34.

24      In the present case, plaintiff's claims of misleading and deceptive labeling would

25  require defendants to label their products in a particular way.  Plaintiffs do not allege that

26  defendants violated the labeling requirements of the NLEA or that they failed to disclose the

27  presence or amount of a particular ingredient.  Rather, plaintiffs allege that defendants

28  violated the UCL and engaged in fraud by describing their ice cream as "all natural" and

United States District Court

For the Northern District of California

1   failing to disclose that the alkalized cocoa in some of their flavors of ice cream is not

2   "natural."  Plaintiffs seek (among other things) a declaration and order enjoining defendants

3   from advertising their products "misleadingly."  This request for relief as to the labeling

4   suggests a requirement relating to the labeling of food.

5          Consequently, the court must consider whether the requirements plaintiffs seek to

6   impose by the present action are identical to the requirements in the NLEA.  The

7   subsection of 21 U.S.C. § 343 that governs nutrition levels and health-related claims does

8   not specify what "nutrient" content and health claims can and cannot be made on labels,

9   either expressly or by implication.  <u>See</u> 21 U.S.C. § 343(r)(1).  Moreover, while the

10  provisions in this subsection apply to representations about nutrients such as fiber and fat,

11  and to representations such as "diet" as applied to soft drinks, there is no indication of any

12  regulation of the use of an adjective such as "natural" on a food label.  Accordingly, the

13  court finds that the claims are not preempted.

14               e.      Whether the court should abstain in deference to the FDA

15         Defendants contend that the court "could also" abstain in deference to FDA.  They

16  assert that courts typically decline equitable relief if adjudicating the claim would entangle

17  them in a complex area that is already subject to oversight by an agency having day-to-day

18  supervisory responsibilities.

19         In opposition, plaintiffs argue that abstention is a "red herring."  They assert that

20  abstention does not apply between a federal court and a federal agency, and that even if it

21  did, there is nothing here to abstain from, as the FDA has made it clear that it does not

22  intend to regulate the meaning of "natural."

23         The court finds that the motion must be DENIED.  Generally, the United States

24  Supreme Court recognizes four federal abstention doctrines – <u>Pullman</u>, <u>Burford</u>, <u>Colorado</u>

25  <u>River</u>, and <u>Younger</u>.  <u>See</u> <u>U.S. v. Morros</u>, 268 F.3d 695, 703-09 (9th Cir. 2004).  None of

26  these involve "abstention" by a federal court in favor of deferring to a federal agency.

27  Moreover, none of the state court cases cited by plaintiffs concern abstention by a federal

28  court, and the only federal case plaintiffs do cite – <u>In re Paxil Litig.</u>, 218 F.R.D. 242, 248

United States District Court

For the Northern District of California

1   (C.D. Cal. 2003) – does not discuss abstention.

2          f.      Whether plaintiffs have a valid claim for unjust enrichment

3        Defendants argue there is no such thing in California as a cause of action for unjust

4   enrichment.  They assert that unjust enrichment is simply a basis for obtaining restitution,

5   and does not lie where an enforceable, binding agreement exists that governs the rights of

6   the parties.

7        In opposition, plaintiffs accuse defendants of trying to "confuse the court."  They

8   contend that irrespective of whether there is a stand-alone cause of action for unjust

9   enrichment (apparently conceding that there is not), under California law a plaintiff may

10  plead in the alternative claims for restitution based on quasi-contract and unjust

11  enrichment.

12       Plaintiffs argue that they have pled in the alternative a claim in quasi-contract for

13  restitution on a theory of unjust enrichment.  The 6th cause of action in the FACs is labeled

14  "Restitution Based on Quasi-Contract/Unjust Enrichment."  Plaintiffs concede that this claim

15  may ultimately be incompatible with a tort recovery, or superfluous to a UCL recovery, but

16  assert that since the claim is pled in the alternative, it would be premature to dismiss it at

17  this stage, as plaintiffs in federal court are permitted to plead inconsistent causes of action.

18       The court finds that the motion must be DENIED.  Unjust enrichment is "not a cause

19  of action . . . or even a remedy, but rather a principle, underlying various legal doctrines

20  and remedies.  It is synonymous with restitution."  McBride v. Boughton, 123 Cal. App. 4th

21  379, 387 (2004) (citing Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793

22  (2003)).  Thus, unjust enrichment is not a stand-alone claim under California law; it is a

23  fall-back theory that would come into play only in the event of a finding of liability on some

24  other non-contractual claim.

25       Here, however, plaintiffs assert the "claim" of unjust enrichment as part of a claim of

26  restitution based on quasi-contract.  In California, unjust enrichment is typically alleged in

27  connection with a "quasi-contractual" claim in order to avoid unjustly conferring a benefit

28  upon a defendant where there is no valid contract.  McBride, 123 Cal. App. 4th at 388; see

United States District Court

For the Northern District of California

also Paracor Finance, Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996) (under California law, "unjust enrichment is an action in quasi-contract"); McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1490 (2006) ("unjust enrichment is a basis for obtaining restitution based on quasi-contract").

g.   Whether plaintiffs have a valid claim for common law fraud

Defendants argue that the FACs do not plead facts sufficient to support a claim of fraud.  To state a claim for common law fraud, plaintiffs must allege a misrepresentation, knowledge of falsity, intent to defraud, justifiable reliance, and resulting damages.  Gil v. Bank of Am., Nat'l Ass'n, 138 Cal. App. 4th 1371, 1381 (2006).  In addition, under Rule 9(b), the facts supporting the claim must be alleged with particularity.  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003) (plaintiff must include "the who, what, when, where, and how" of the alleged fraud).

Here, defendants assert, plaintiffs have failed to adequately plead the required misrepresentation, and have also failed to plead facts showing knowledge of falsity (scienter), or facts sufficient to show reasonable reliance by themselves – let alone class members.

Defendants' primary argument is that plaintiffs' claim that they acted knowingly and with intent to deceive is implausible.  They contend that to accept this theory, the court would have to assume that defendants used the words "all natural" on the label, that they complied with FDA labeling regulations by disclosing that the cocoa was alkalized cocoa, but deliberately did not disclose that the alkali used was potassium carbonate (if it was), because it intended to dupe consumers into believing that they were getting cocoa alkalized with sodium carbonate, in order to exact a premium price.

In opposition, plaintiffs argue that they have adequately alleged facts supporting their claim of common law fraud.  Plaintiffs contend that the claim that they failed to allege the elements of fraud was also addressed in the section in which defendants argued that plaintiffs had failed to allege a cognizable injury (subsection (b), above).

Plaintiffs assert that the argument that they have not pled sufficient facts to make the

United States District Court

For the Northern District of California

1  element of "knowledge of falsity" plausible is without merit, as they have alleged that

2  defendants "knew or recklessly disregarded" the fact that their ice cream was not "all

3  natural," and that they knew that the products were misleadingly labeled.

4      Plaintiffs contend that the argument that they have not pled facts sufficient to show

5  reliance is also without merit, as they have alleged that the named plaintiffs relied on the

6  representation that the ice cream was "all natural," and paid "premium prices" for the

7  product because they believed it was "all natural," and would not have purchased it if they

8  had known it was filled with synthetic ingredients.

9      The court finds that the motion must be DENIED.  Plaintiffs have alleged facts

10  sufficient to withstand a 12(b)(6) motion on the fraud claim.  Moreover, there are a number

11  of factual disputes here, which cannot be resolved at this stage of the case.  In particular,

12  the issues of reliance and materiality are too fact-dependent to be resolved on the present

13  12(b)(6) motion.

14      Moreover, the fundamental dispute – what is a "natural" product – will likely present

15  some factual disputes.  The only FDA guidance appears to be a distinction between

16  "natural" and "synthetic" in the "policy," but that definition in the Federal Register is qualified

17  as meaning something that would "not normally be expected to be in food."  Surely, that

18  characterization raises multiple linguistic and philosophical questions, not to mention factual

19  questions.

20          h.      Whether the Astiana plaintiffs are entitled to injunctive relief

21      Defendants contend that the Astiana plaintiffs cannot show any entitlement to

22  injunctive relief, because defendants discontinued the use of "all natural" before plaintiffs

23  filed the complaints in the present action.

24      Defendants note that after Ben & Jerry's filed its motion to dismiss, plaintiffs

25  amended the complaint to allege that Ben & Jerry's did not recall all ice cream products

26  containing the "all natural" label, and that an injunction is necessary to prevent Ben & Jerry

27  from putting the "all natural" label back on the ice cream packages any time it decides to.

28  Defendants claim that the burden is on plaintiffs to show that the alleged wrongful conduct

**United States District Court**
For the Northern District of California

1    is likely to recur, not that it might or conceivably could recur.

2        In opposition, plaintiffs assert that they are still entitled to injunctive relief because

3    there is no knowing when they might put the label back on the ice cream.  Plaintiffs also

4    object to the "evidence" submitted by Ben & Jerry, in the form of the ice cream labels

5    attached as exhibits to defendants' Request for Judicial Notice.

6        The motion is DENIED.  While it is true that if Ben & Jerry's is no longer using the

7    term "all natural" on its labels, there will be nothing to enjoin, the availability of injunctive

8    relief cannot be determined until the parties have developed the factual record.

9    B.    Motion to Strike

10        1.    Legal Standard

11        Under Federal Rule of Civil Procedure 12(f), the court "may order stricken from any

12   pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

13   matter."  Fed. R. Civ. P. 12(f).  The function of a motion to strike under Rule 12(f) is to

14   "avoid the expenditure of time and money that must arise from litigating spurious issues by

15   dispensing with those issues prior to trial."  Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d

16   970, 973 (9th Cir. 2010) (quotation and citation omitted).  To determine whether to grant a

17   motion to strike under Rule 12(f), the court must determine whether the matter the moving

18   party seeks to have stricken is (1) an insufficient defense; (2) redundant; (3) immaterial; (4)

19   impertinent; or (5) scandalous.  Id. at 973-74.

20        Motions to strike are not favored and "should not be granted unless it is clear that

21   the matter to be stricken could have no possible bearing on the subject matter of the

22   litigation."  Colaprico v. Sun Microsystem, Inc., 758 F.Supp. 1335, 1339 (N.D. Cal. 1991).

23   When a court considers a motion to strike, it "must view the pleading in a light most

24   favorable to the pleading party."  In re 2TheMart.com, Inc. Sec Lit., 114 F Supp. 2d 955,

25   965 (C.D. Cal. 2000).  A court must deny the motion to strike if there is any doubt whether

26   the allegations in the pleadings might be relevant in the action.  Id.

27        2.    Defendants' Motion

28        Defendants seek an order striking the class averments.  They argue that under

United States District Court

For the Northern District of California

1   Federal Rule of Civil Procedure 23(c)(1), the district court is empowered to determine "at an

2   early practicable time" whether an action is to be maintained as a class action.  They

3   contend that motions to strike are a well-recognized means of attacking inadequate class

4   allegations such as those alleged here.

5        Defendants contend that the class averments fail for two reasons.  First, they assert

6   that the class, as alleged, is not ascertainable, because the FACs do not plead facts

7   showing that any member of the proposed class knows which alkali (potassium carbonate,

8   or sodium carbonate) would have been used in the ice creams that they actually bought.

9   The class is defined as those class members who bought "Ice Cream products that were

10  labeled 'all natural' but contained alkalized cocoa processed with a synthetic ingredient."

11  Defendants assert that this definition asks consumers to self-identify themselves in order to

12  be part of the class, which means that the membership of the class is not ascertainable.

13       Second, defendants argue that this class action is not superior to other proceedings.

14  The label on the ice cream package states, "Your satisfaction guaranteed, or your money

15  back."  Defendants contend that if plaintiffs were unhappy, they could have easily returned

16  the package and asked for a refund.  There is no allegation in the FACs that plaintiffs did

17  so, or that the remedy of seeking a refund was not adequate or was superior to the class

18  action device.

19       In opposition, plaintiffs argue that the class definition is precise, objective, and

20  presently ascertainable, and that there is no basis in the pleadings to conclude that it would

21  not be administratively feasible for the court to determine whether an individual is a

22  member of this class.  Thus, they argue, there is no basis to strike the class allegations.

23  They also contend that the defendants' ascertainability argument is based on a dispute of

24  fact, and as such, should be denied until a more developed record is available.

25       The court finds that the motion must be DENIED.  Determining whether to certify the

26  class is normally done through a motion for class certification under Rule 23.  While it is

27  true that a few courts have held that Rule 12(f) provides a means of striking class

28  allegations, such a motion appears to allow a determination of the suitability of proceeding

United States District Court

For the Northern District of California

1    as a class action without actually considering a motion for class certification.

2        In Kamm v. California City Development Co., 509 F.2d 205, 212 (9th Cir. 1975), the

3    court affirmed the district court's dismissal of the complaint and "striking" of the class

4    allegations, based on a finding that the class action was not a superior method of resolving

5    the dispute, but the motion to strike appears to have been part of the 12(b)(6) motion to

6    dismiss – not a separate 12(f) motion.

7        District courts within the Ninth Circuit have cited Kamm as authority for striking class

8    averments, and a third has held that the court can do so under Rule 23(c)(1)(A).  As one

9    court put it,

10       The parties here do not dispute that the Court may consider this motion at
         [this] time, even though a motion for class certification has not been filed.
11       Given that the issues involved are pure questions of law, and the record
         before the Court is undisputed, the Court sees no reason why it cannot
12       consider the merits of the motion, and concludes that it is appropriate now to
         address the issues raised in the motion.
13
14   Sheppard v. Capital One Bank, 2007 WL 6894541 at *1-2 (C.D. Cal., July 11, 2007)

15   (finding that both individual and class claims were time-barred); see also Montoya v.

16   Creditors Interchange Receivable Mgmt., LLC, 2011 WL 971341 at *1 (C.D. Cal., Mar. 16,

17   2011) (citing Kamm and Sheppard for the above-stated proposition).

18       However, the court in a more recent decision – Beal v. Lifetouch, Inc., 2011 WL

19   995884 (C.D. Cal., Mar. 15, 2011) – adopted what this court finds to be the preferable

20   approach.  Beal was a wage-and-hour case, and the defendant moved to dismiss the

21   complaint for failure to state a claim, and also moved to strike the class allegations.  In the

22   motion to strike, the defendants argued that the plaintiff had failed to allege facts sufficient

23   to satisfy the relevant factors under Rule 23(a).  The court found defendants' arguments to

24   be "premature at the pleadings stage, as the issue of class certification is not yet before the

25   Court."  Id., 2011 WL 995884 at *7 (citing Clark v. State Farm Mut. Auto. Ins. Co., 231

26   F.R.D. 405, 407 (C.D. Cal. 2005)).  The court also found that "the class allegations are

27   clearly relevant to the subject matter of the litigation, and do not amount to redundant,

28   immaterial, impertinent, or scandalous matters."  Id.

1    In this court's view, the questions whether the class is ascertainable and whether a

2   class action is superior should be resolved in connection with a class certification motion.

3   Moreover, under Whittlestone, a party seeking an order under Rule 12(f) must show that

4   the allegations they seek to have stricken are either part of an insufficient defense, or are

5   redundant, immaterial, impertinent, or scandalous.  Id., 618 F.3d at 973-74.  Defendants

6   have not met this standard.

**CONCLUSION**

8    In accordance with the foregoing, defendants' motions to dismiss are DENIED, and

9   the motion to strike class averments is DENIED.

11  **IT IS SO ORDERED.**

12  Dated:  May 26, 2011

_____

13  PHYLLIS J. HAMILTON
United States District Judge

22