1   Michael D. Braun  (167416)
    BRAUN LAW GROUP, P.C.
2   10680 West Pico Blvd., Suite 280
    Los Angeles, CA  90064
3   Telephone: (310) 836-6000
    Facsmile: (310) 836-6010
4
    Joseph N. Kravec, Jr. (admitted *pro hac vice*)
5   Wyatt A. Lison (admitted *pro hac vice*)
    STEMBER FEINSTEIN DOYLE
6     PAYNE & KRAVEC, LLC
    429 Forbes Avenue 17th Floor
7   Pittsburgh, PA  15219
    Telephone: (412) 281-8400
8   Facsimile: (412) 281-1007

9   Janet Lindner Spielberg (221926)
    LAW OFFICES OF JANET
10    LINDER SPIELBERG
    12400 Wilshire Blvd., Suite 400
11  Los Angeles, CA  90025
    Telephone: (310) 392-8801
12  Facsimile: (310) 278-5938

13  ***Attorneys for Plaintiffs***
    ***Thurston, Denmon-Clark, and Astiana***
14

    James S. Notis (admitted *pro hac vice*)
    Jennifer Sarnelli (242510)
    Kelly A. Noto (admitted *pro hac vice*)
    GARDY & NOTIS, LLP
    560 Sylvan Avenue
    Englewood Cliffs, NJ  07632
    Telephone: (201) 567-7377
    Facsimile: (201) 567-7337

    ***Attorneys for Plaintiffs***
    ***Corriette and Waldron***

15

16              IN THE UNITED STATES DISTRICT COURT

17          FOR THE NORTHERN DISTRICT OF CALIFORNIA

18

19  CHANEE THURSTON, and TANASHA
    DENMON-CLARK on behalf of themselves and
    all others similarly situated,
20
                              Plaintiffs,
21          v.

22  CONOPCO, INC. d/b/a UNILEVER (formerly
    d/b/a GOOD HUMOR-BREYERS) d/b/a
23  BREYERS,

24                            Defendant.

25

    Case No. 10-cv-04937-PJH

    **NOTICE OF MOTION, PLAINTIFFS'
    UNOPPOSED MOTION FOR
    PRELIMINARY APPROVAL OF
    SETTLEMENTS, AND SUPPORTING
    MEMORANDUM**

    Hon. Phyllis J. Hamilton

    Date:       March 28, 2012
    Time:       9:00 a.m.
    Location:   Courtroom 3, Oakland Courthouse

26

27

28

---

| | |
|---|---|
| ROSS CORRIETTE and JAMES WALDRON on behalf of themselves and all others similarly situated,<br><br>                 Plaintiffs,<br>     v.<br><br>UNILEVER d/b/a BREYERS,<br><br>               Defendant. | **RELATED CASE**<br><br>Case No. 11-cv-01811-PJH |
| SKYE ASTIANA on behalf of herself and all others similarly situated,<br><br>               Plaintiff,<br>     v.<br><br>BEN & JERRY'S HOMEMADE, INC.,<br><br>               Defendant. | **RELATED CASE**<br><br>Case No. 10-cv-04387-PJH |

# TABLE OF CONTENTS

MOTION.................................................................................................................................1

SUMMARY OF THE ARGUMENT .....................................................................................3

ARGUMENT ..........................................................................................................................5

    I.   FACTUAL BACKGROUND .................................................................................5

        A.  Nature Of The Actions...............................................................................5

        B.  Litigation And Discovery ..........................................................................6

        C.  Settlement Discussions ..............................................................................7

    II.  THE SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED ..........................8

        A.  The Settlement Classes Should Be Conditionally Certified ........................................8

            1.   The Settlement Classes Satisfy The Numerosity Requirement .............................10

            2.   The Settlement Classes Satisfy The Commonality Requirement .........................10

            3.   The Settlement Classes Satisfy The Typicality Requirement...............................11

            4.   The Settlement Class Satisfies The Adequacy Requirement ...............................12

            5.   The Settlement Class Satisfies The Necessary Criteria Of Rule 23(b).................12

                 a.   Common Questions of Law and Fact Predominate ........................................13

                 b.   Differences in State Law Do Not Defeat Predominance ...............................15

                 c.   A Class Action Is Superior To Other Methods Of Adjudication....................19

        B.  The Substantive Terms Of The Settlements Are Fair, And Should Be Granted
            Preliminary Approval................................................................................20

            1.   The Proposed Settlements Are Within The Range Of Possible Approval
               As Fair, Reasonable, And Adequate ..................................................20

            2.   The Settlement Was A Product Of Adversarial Arms'-Length Negotiation ........22

            3.   The Proposed Settlement Is Recommended By Class Counsel ............................23

            4.   Summary ....................................................................................23

        C.  The Notice Plan Should Be Approved........................................................23

CONCLUSION........................................................................................................................25

i

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Alabama v. Blue Bird Body Co., Inc.*,

4
  573 F.2d 309 (5th Cir. 1978) ..............................................................................14

5

*Amchem Prods. Inc. v. Windsor* ("*Amchem*"),

6
  521 U.S. 591 (1997).............................................................................17, 18, 19

7

*Arenson v. Whitehall Convalescent & Nursing Home, Inc.*,

8
  164 F.R.D. 659 (N.D.Ill. 1996).............................................................16

9

*Astiana v. Ben & Jerry Homemade Inc.*,

10
  Case No. 10-4387-PJH.................................................................. *passim*

11

*Baghdasarian v. Amazon.com, Inc.*,

12
  2009 WL 2263581 (C.D. Cal., Jul. 7, 2009) ........................................19

13

*Bellows v. NCO Fin. Sys.*,

14
  2008 U.S. Dist. LEXIS 114451 (S.D. Cal. Sept. 5, 2008).....................................25

15

*Boyd v. Bechtel Corp.*,

16
  485 F. Supp. 610 (N.D.Cal. 1979) ............................................................. 23

17

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,

18
  917 F.2d 1171 (9th Cir. 1990) ............................................................. 11

19

*Carder Buick-Olds Co., Inc. v. Reynolds & Reynolds, Inc.*,

20
  148 Ohio App.3d 635 N.E.2d 531 (Ohio App. 2 Dist., 2002) ................................. 15

21

*Castro v. Zenith Acquisition Corp.*,

22
  2007 WL 81905 (N.D. Cal.  Jan. 9, 2007) ........................................................... 20

23

*Chavez v. Blue Sky Natural Beverage Co.*,

24
  268 F.R.D. 365 (N.D. Cal. 2010)................................................................. 15, 16

25

*Class Plaintiffs v. Seattle*,

26
  955 F.2d 1268 (9th Cir. 1992) ............................................................. 21

27

28

ii

*Collins v. Gamestop Corp.*,
　2010 WL 3077671 (N.D. Cal. Aug. 6, 2010) ........................................................... 15

*Corriette, et al. v. Unilever*,
　Case No. 11-1811-PJH............................................................................... *passim*

*Friedman v. 24 Hour Fitness USA Inc.*,
　2009 WL 2711956 (C.D. Cal. Aug. 6, 2009)............................................................. 13

*Gattreaux v. Pierce*,
　690 F.2d 616 (7th Cir. 1982) ........................................................................ 21

*Gribble v. Cool Transports, Inc.*,
　2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) .............................................................. 8

*Gruber v. Price Waterhouse*,
　117 F.R.D. 75 (E.D.Pa.1987).......................................................................... 16

*Hanlon v. Chrysler Corp.*,
　150 F.3d 1011 (9th Cir. 1998) ....................................................................... *passim*

*Hanrahan v. Britt*,
　174 F.R.D. 356 (E.D.Pa. 1997)......................................................................... 14

*Ikonen v. Hartz Mountain Corp.*,
　122 F.R.D. 258 (S.D. Cal. 1998) ....................................................................... 10

*In re Badger Mountain Irr. Dist. Sec. Litig.*,
　143 F.R.D. 693 (W.D. Wash. 7 1992) .................................................................... 10

*In re Connecticut General Life Ins. Co.*,
　1997 WL 910387 (C.D. Cal. Feb. 13, 1997)................................................................ 9

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*,
　1993 WL 39306 (C.D. Cal. Jan. 12, 1993) ................................................................. 9

*In re Domestic Air Transp Antitrust Litig*,
　141 FRD 534 (N.D. Ga. 1992)........................................................................... 24

iii

*In re Portal Software Sec. Litig.*,
    2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007) ...................................................... 24

*In re Tableware Antitrust Litig.*,
    484 F.Supp. 2d 1078 (N.D. Cal. 2007) ........................................................................... 23, 25

*In re Tobacco II Cases*,
    46 Cal.4th at 327, 93 Cal.Rptr.3d 559, 207 P.3d 20 (Cal. 2009) ......................................... 16

*Jenson v. First Trust Corp.*,
    2008 U.S. Dist. LEXIS 45078 (C.D. Cal. June 9, 2008) ...................................................... 24

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ........................................................................................ 13

*Liberty Lending Serv. v. Canada*,
    293 Ga.App. 731 (Ga. Ct. App. 2008) ............................................................................... 16

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ......................................................................................... 13

*Mazza v. American Honda Motor Co., Inc.*,
    --- F.3d ---, 2012 WL 89176 (9th Cir. Jan 12, 2012) .............................................. 16, 17, 18

*Mullane v. Central Hanover Trust*,
    339 U.S. 306 (1950) ....................................................................................................... 23

*Officers for Justice v. Civil Service Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................................... 21

*Parra v. Bashas, Inc.*,
    536 F.3d 975 (9th Cir. 2008) ........................................................................................... 10

*Plascencia v. Lending 1st Mortgage*,
    259 F.R.D. 437 (N.D. Cal. 2009) ...................................................................................... 15

*Ross v. Trex Co., Inc.*,
    2009 WL 2365865 (N.D. Cal. July 30, 2009) .................................................................... 23

iv

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
    211 F.3d 1228 (11th Cir. 2000) ................................................................. 14

*Staton v. Boeing*,
    327 F.3d 938 (9th Cir. 2003) .................................................................. 23

*Sullivan v. DB Investments, Inc.*,
    --- F.3d ---, 2011 WL 6367740 (3d Cir. Dec. 20, 2011)................................ 17, 18

*Tchoboian v. Parking Concepts, Inc.*,
    2009 WL 2169883 (C.D. Cal. Jul. 16, 2009) ......................................... 19

*Thurston et al v. Conopco, Inc.*,
    Case No. 10-04937-PJH.............................................................. *passim*

*Torrisi v. Tucson Elec. Power*,
    8 F.3d 1370 (9th Cir. 1993) .................................................................. 20

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ................................................................. 19

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ................................................................. 20

*Vasquez v. Superior Court of San Joaquin County*,
    94 Cal.Rptr. 796, 484 P.2d 964 (1971)............................................... 16

*Wolin v. Jaguar Land Rover North America, LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................ 19

*Zeisel v. Diamond Foods, Inc.*,
    Case No. 3:10-cv-01192 (N.D.Cal.) ............................................... 18, 24

**Other Authorities**

1 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 3-13 (3d ed. 1992)................ 11, 13

7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, §
    1779 (3d ed.2005) ..................................................................................................... 19

Manual for Complex Litigation (4th Ed. 2004) § 21.311 ................................................... 25

Williston on Contracts s 1515 (3d ed. 1970) .................................................................... 16

**Rules**

Fed. R. Civ. P. 23(a)(1) ..................................................................................................... 10

Fed. R. Civ. P. 23(a)(2) ..................................................................................................... 10

Fed. R. Civ. P. 23(a)(3) ..................................................................................................... 11

Fed. R. Civ. P. 23(a)(4) ..................................................................................................... 12

Fed. R. Civ. P. 23(b) ......................................................................................................... 12

Fed. R. Civ. P. 23(b)(3) ............................................................................................ 13, 14, 18, 19

Fed. R. Civ. P. 23(b)(3)(a)-(d) .......................................................................................... 19

Fed. R. Civ. P. 23(c)(2) ..................................................................................................... 23

Fed. R. Civ. P. 23(e)(2) ....................................................................................................... 3

Fed.R.Civ.P. 30(b)(6) .......................................................................................................... 7

1

## **MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that, at the date, time, and location as set forth above, Plaintiffs

4

Thurston, Denmon-Clark, Corriette, and Waldron (the "*Thurston/Corriette* Plaintiffs") and Plaintiff

5

Skye Astiana (collectively, "Plaintiffs") will and hereby do, move the Court to grant preliminary

6

approval of two class action settlements as set forth in the Settlement Agreements and exhibits

7

attached herewith.[1]

8

For the reasons set forth in the accompanying memoranda of law filed in support of this

9

Motion, Plaintiffs move this Court to preliminarily approve the two class action settlements (the

10

"Settlements") set forth in the accompanying Settlement Agreements, to conditionally certify two

11

classes for settlement purposes, to appoint counsel for the *Thurston/Corriette* Plaintiffs as class

12

counsel for the Breyer's settlement class and counsel for Plaintiff Astiana as class counsel for the

13

Ben & Jerry's settlement class, respectively, and to approve the proposed form and manner of giving

14

notice to settlement class members of the settlements and advising them of their rights to participate

15

and receive settlement benefits, to exclude themselves, or object.

16

Plaintiffs also move the Court to enter the following schedule regarding approval of the

17

proposed settlement:

18

19

| Hearing on Motion for Preliminary Approval of the Settlement | *March 28, 2012* |
| --- | --- |
| Deadline to complete notice ("Notice Date") to settlement class members by | *July 1, 2012*<br>(No more than 95 days after preliminary |

20

21

---

22

[1]   A copy of the Settlement Agreement entered into between Plaintiffs Chanee Thurston, Tanasha

23

Denmon-Clark, Ross Corriette and James Waldron and defendant CONOPCO, INC. d/b/a

24

UNILEVER d/b/a BREYERS (hereinafter, the "Breyers Settlement Agreement") is attached hereto as Exhibit A.  Supporting exhibits are attached as Exhibits A1-A6.

25

A copy of the Settlement Agreement entered into between Plaintiff Skye Astiana and Ben &

26

Jerry's Homemade, Inc. (hereinafter, the "B&J Settlement Agreement") is attached hereto as Exhibit B.  Supporting exhibits are attached as Exhibits B1-B6.

27

The Breyers Settlement Agreement and the B&J Settlement Agreement are referred to

28

collectively herein as the "Settlement Agreements."

| mail and publication | approval -- Proposed Prelim. App. Orders at ¶ 6) |
|---|---|
| Deadline for filing of motion for final approval of proposed settlement | ***July 18, 2012*** (28 days before Objection date -- Proposed Prelim. App. Orders, p.5 at ¶ 8) |
| Deadline for filing of application by Class Counsel for attorney's fees, reimbursement of litigation costs and expenses, and incentive payment to Class Representative | ***July 25, 2012*** (21 days before Objection Date -- Proposed Prelim. App. Orders, p. 2 at ¶ 7 and p.5 at ¶ 9) |
| Deadline for settlement class members to object to ("Objection Date")  or opt out ("Opt-Out Date") of the proposed settlement | ***August 15, 2012*** (No more than 45 days after the Notice Date -- Proposed Prelim. App. Orders, p.3 at ¶¶ 11-12, p. 6 at ¶ 13(a) |
| Deadline for filing supplemental papers in support of Final Approval and addressing any objections | ***August 29, 2012*** (14 days before Final Approval Hearing --Proposed Prelim. App. Orders, p. 5 at ¶ 10) |
| Deadline for settlement class members to submit claims forms ("Claim Deadline") | ***August 30, 2012*** (60 days after Notice Date -- Proposed Prelim. App. Orders, p. 6 at ¶ 12) |
| Proposed Final Approval Hearing | ***September 12, 2012*** (Proposed Prelim. App. Orders, p.6 at ¶ 13) |

Plaintiffs have calculated the above dates for the schedule in bold italics, using March 28, 2012 as an estimated entry date for the Preliminary Approval Orders.  If preliminary approval is instead entered at a later date for either or both Settlements, Plaintiffs respectfully ask that the proposed dates in the above chart be pushed back accordingly.  A proposed order has been submitted separately for each of the class action settlements.

At the Final Approval Hearing, the Court will have the opportunity to determine whether to grant final approval to the class action settlements, the settlement classes and the requested attorneys' fees and expenses, as well as to evaluate any objections thereto that may have been filed.

2

1   *See* Fed. R. Civ. P. 23(e)(2) (directing that class action settlement that purports to bind absent class

2   members may only be entered after hearing held by the court).

3   **MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL**

4   **SUMMARY OF THE ARGUMENT**

5   After a day-long, in-person mediation session on September 14, 2011, and through more than

6   five weeks of subsequent, extensive negotiations between the parties with the mediator's continued

7   assistance, settlements in principle were reached to resolve the claims asserted in the related cases,

8   *Thurston et al v. Conopco, Inc.*, Case No. 10-04937-PJH (the "*Thurston* Action"), *Corriette, et al. v.*

9   *Unilever*, Case No. 11-1811-PJH (the "*Corriette* Action"), and *Astiana v. Ben & Jerry Homemade*

10  *Inc.*, Case No. 10-4387-PJH (the "*Astiana* Action") (collectively, the "Actions"), against Conopco,

11  Inc. d/b/a Unilever (formerly d/b/a Good Humor-Breyers) d/b/a Breyers ("Unilever"), and its

12  wholly-owned subsidiary, Ben & Jerry's Homemade, Inc. ("B&J") (collectively "Defendants").  The

13  parties' agreement to resolve the claims asserted in the *Thurston* and *Corriette* Actions against

14  Unilever based upon its sales of Breyers Ice Cream Products is set forth in the Breyers Settlement

15  Agreement attached hereto as Exhibit A.[2]  The parties' agreement to resolve the claims asserted in

16  the *Astiana* Action against Defendant B&J based upon its sales of B&J Ice Cream Products is set

17  forth in the B&J Settlement Agreement attached hereto as Exhibit B.  As detailed below, preliminary

18  approval of both Settlements should be granted.

19  The Settlements reached are unquestionably fair – they provide class members with

20  meaningful monetary relief to compensate them for the claims that were pled in the Actions and call

21  for Defendants to cease the offending practices.  The gravamen of the allegations in each of the three

22  Actions is that Defendants' Ice Cream Products were falsely and misleadingly labeled as "All

23  Natural" when in fact those Ice Cream Products contained cocoa alkalized with potassium carbonate,

24  a man-made, synthetic substance.  *Thurston*, Doc. 21 at ¶¶ 1-2; *Corriette*, Doc. 1 at ¶¶ 2, 6; *Astiana*,

25  Doc. 20 at ¶¶ 1-2.  The Settlement Agreements redress these allegations by providing that B&J and

26

27  [2] "The Ice Cream Products" at issue include B&J and Breyers ice cream flavors containing alkalized cocoa, as identified in footnote 3, *infra*; Exhibit A (Breyers Settlement Agreement) at Section II, ¶

28  20; and in Exhibit B (B&J Settlement Agreement) at Section II, ¶ 20.

1  Unilever will discontinue use of the term "All Natural" on their Ice Cream Products, and reimburse

2  each B&J and Breyers Settlement Class Member who certifies that he or she purchased B&J or

3  Breyer Ice Cream Products, $2.00 per package for each Ice Cream Product purchased, for up to ten

4  packages.  No proof of purchase is required for the first three packages claimed.  If Breyers Class

5  Members' claims are less than $2,500,000.00 in total, then the difference between the amount paid

6  to Breyers Class Members and $2,500,000 will be donated to not-for-profit charities and/or causes of

7  Unilever's choice related to food or nutrition in the United States through *cy pres*.  Similarly, for

8  B&J, which had approximately double the sales volume of Ice Cream Products as did Unilever, a

9  $5,000,000.00 restitution fund has been created.  If B&J Class Members' claims are less than

10 $5,000,000.00 in total, then the difference between the amount paid to B&J Class Members and

11 $5,000,000 will be donated to not-for-profit charities and/or causes of B&J's choice related to

12 food or nutrition in the United States through *cy pres*.  Defendants have also agreed not to use the

13 disputed "All Natural" claims on all other ice creams, yogurts, and sorbets containing alkalized

14 cocoa in the future, thereby providing meaningful injunctive relief to Breyers and B&J Settlement

15 Class Members.  In addition, the Settlement Agreements require B&J and Unilever to bear the cost

16 of the settlement logistics, including the costs of notice, claims administration, and awarded

17 attorneys' fees and expenses.  By any objective standard, the Settlements warrant preliminary

18 approval.

19        The notices of the proposed Settlements also fully comply with Fed. R. Civ. P. 23 and due

20 process, as they fully advise Settlement Class Members of their rights under the Settlements and are

21 tailored to provide the best notice practicable under the circumstances.  *See* Exhibits A3, A4, B3, and

22 B4 (proposed Short-form and Long-form notices).  Further, the proposed Settlement Classes should

23 be conditionally certified for settlement purposes since, as detailed below, all of the prerequisites for

24 certification under Federal Rule of Civil Procedure 23 are satisfied.  Thus, certification of both

25 Settlement Classes is proper.

26        At bottom, the terms of the proposed Settlements are fair, reasonable, and not the subject of

27 any collusion or unfair dealing.  Indeed, under the proposed Settlements, Settlement Class Members

28 have the opportunity to recover a substantial portion of the retail price for the B&J and/or Breyers

1  Ice Cream Products they purchased, and the allegedly unlawful and misleading product labeling has

2  been discontinued.   At this *preliminary* stage, approval should be granted.   Doing so will allow

3  notice of the proposed Settlements to be sent to the Settlement Classes and, in turn, will allow the

4  Court to gauge the reaction of the Settlement Class Members to the proposed Settlements.

5  <u>ARGUMENT</u>

6  **I.      FACTUAL BACKGROUND**

7  **A.      <u>Nature Of The Actions</u>**

8           On September 29, 2010, Plaintiff Skye Astiana filed a Complaint for Damages, Equitable,

9  Declaratory and Injunctive Relief against Defendant B&J in the Northern District of California.  *See*

10 *Astiana*, Doc. 1 at 1. The *Astiana* Action asserted claims for common law fraud, consumer fraud

11 (*i.e.*, violation of the UCL and FAL), and unjust enrichment on behalf of a nationwide class and a

12 California sub-class of consumers who purchased B&J's "All Natural" ice creams, yogurts, and

13 sorbets containing alkalized cocoa, and alleged that B&J had falsely and misleadingly packaged,

14 marketed and sold its B&J "All Natural" premium ice creams, yogurts, and sorbets as being "All

15 Natural" despite the fact that they contained alkalized cocoa processed with a non-natural, man-

16 made, synthetic ingredient – potassium carbonate.  *Id.* at ¶¶ 1-2 and n.1.

17          Thereafter, on November 1, 2010, Plaintiffs Thurston and Denmon-Clark filed a Complaint

18 for Damages, Equitable, Declaratory and Injunctive Relief against Defendant Unilever in the

19 Northern District of California.  *See Thurston*, Doc. 1 at 1.  The *Thurston* Action asserted claims for

20 common law fraud, consumer fraud (i.e., violation of UCL/FAL), and unjust enrichment on behalf of

21 a nationwide class and a California sub-class of consumers who purchased Breyers "All Natural"

22 original ice creams, yogurts and sorbets or Breyers Smooth & Dreamy ½ Fat "All Natural" ice

23 creams, yogurts and sorbets which contained alkalized cocoa, and alleged that Unilever had falsely

24 and misleadingly packaged, marketed and sold its Breyers brand Original and Smooth & Dreamy ½

25 Fat ice creams, yogurts, and sorbets as "All Natural" despite the fact that they contained alkalized

26 cocoa processed with a non-natural, man-made, synthetic ingredient – potassium carbonate.  *Id.* at ¶¶

27 1-2 and n.1.

28

5

On November 4, 2010, Plaintiffs Corriette and Waldron (along with a third Plaintiff who has since withdrawn), filed a Class Action Complaint against Defendant Unilever in the District of New Jersey. *See Corriette*, Doc. 1.  The *Corriette* Action asserted claims for consumer fraud, breach of express and implied warranties, and unjust enrichment on behalf of a nationwide class and a New Jersey sub-class of consumers who purchased Breyers All Natural Original Ice Cream and Breyers Smooth & Dreamy ½ Fat All Natural Ice Cream containing alkalized cocoa, and alleged that these Ice Cream Products were not all natural because they contained alkalized cocoa.  *Id.* at ¶¶1-2, 6.

The *Thurston* Action was initially assigned to Judge Richard Seeborg, but, given the common issues of law and fact, as well as the overlapping corporate ownership of B&J and Unilever, on January 19, 2011 this Court entered an order relating the *Astiana* and *Thurston* Actions. *See Astiana*, Doc. 34.  After Judge William H. Walls ordered the *Corriette* action to be transferred from the District of New Jersey to the Northern District of California on March 28, 2011, the parties to the Actions filed a stipulation advising this Court that the *Corriette* Action should be related to the *Astiana* and *Thurston* Actions as it arose from similar events, involved related defendants, and called for a determination of substantially similar questions of law and fact.  *See Astiana*, Doc. 55 at 2.  By Order entered May 3, 2011, the Actions were related.  *See Astiana*, Doc. 58.

### B. Litigation And Discovery

Subsequent to the filing of the *Astiana* and *Thurston* Actions, the parties to these two actions participated in a joint 26(f) conference.  Defendants advised that they intended to file motions to dismiss and strike, and on November 24, 2010 and December 6, 2010, filed those motions in the *Astiana* and *Thurston* Actions, respectively.  *See Astiana*, Doc. 16; *Thurston*, Doc. 17.  Defendants' briefs included an exhaustive array of arguments and defenses, including federal preemption, abstention, and a Fed.R.Civ.P. 9(b) challenge.

In response to Defendants' motions, Plaintiffs Astiana, Thurston, and Denmon-Clark filed Amended Complaints.  *See Astiana*, Doc. 20; *Thurston*, Doc. 21.  Thereafter, on December 20, 2010, Defendants renewed their motions to dismiss and strike, once again vigorously contesting Plaintiffs' claims.  Plaintiffs responded with lengthy, rigorously-argued briefing on the panoply of arguments set forth by Defendants.  *See Astiana*, Docs. 38, 39; *Thurston*, Docs. 34, 35.

1   During this time, Defendant also filed a motion to dismiss the *Corriette* Action, which was

2   pending in the District of New Jersey.  *See Corriette,* Doc. 13.  The *Corriette* Plaintiffs opposed

3   Defendant's motion to dismiss on January 24, 2011, *see id.*, Doc.15, and on March 28, 2011, Judge

4   William H. Walls denied Defendant's motion to dismiss and ruled that the *Corriette* Plaintiffs'

5   claims were to be transferred to the Northern District of California, where the *Astiana* and *Thurston*

6   actions were pending.  *Id.,* Doc. 19.  Judge Walls further ruled that if the motion to dismiss that was

7   pending in the *Astiana* and *Thurston* actions was granted for certain, specified reasons, the *Corriette*

8   Plaintiffs could return to the District of New Jersey to litigate their claims.  *Id.*, Doc. 18 at 11.

9    After extensive briefing submitted by the parties, as well as a zealously argued hearing

10   before the Court on the *Astiana* and *Thurston* motions to dismiss, on May 26, 2011 the Court entered

11   a 22-page order denying Defendants' motions to dismiss and strike in their entirety.  *See Astiana*,

12   Doc. 62.  Subsequent to the Court's May 26, 2011 order, Plaintiffs engaged in discovery, serving

13   document requests and interrogatories.  The parties also agreed to engage in settlement discussions.

14   *See infra*.  Even after the parties agreed in principle to settle this matter, the Plaintiffs continued to

15   engage in confirmatory discovery regarding Defendants' profits and sales, merits issues, and class

16   certification issues, including thorough Fed.R.Civ.P. 30(b)(6) depositions of Unilever and B&J on

17   February 23, 2012 and February 24, 2012, respectively.

18   **C.   Settlement Discussions**

19   After a series of preliminary discussions, the parties agreed to mediate on September 14,

20   2011 before David A. Rotman, Esq., of Gregorio, Haldeman, Piazza & Rotman.   During that

21   mediation, including break-out sessions for the separate cases, and with the assistance of the

22   mediator, the parties were able to reach agreement on certain key terms of the Settlements, and

23   agreed to continue negotiating remaining terms thereafter.   After approximately five weeks of

24   continued negotiations involving the mediator, the parties reached agreements in principle to settle

25   the three Actions, which are reflected in the Settlements presently before the Court.

26   The parties have diligently worked on the Settlements, which are the product of months of

27   hard fought, arms-length negotiation.  Plaintiffs believe the terms of the Settlements are incredibly

28   favorable to the Settlement Classes, providing substantial remuneration (*i.e.*, $2.00 per package of

B&J or Breyers Ice Cream Products).  Settlement Class Members may claim up to three packages of Ice Cream Products with a sworn attestation of purchase and claim up to 10 packages with the submission of adequate proofs of purchase.  If the claims by the Breyers Settlement Class are less than $2,500,000 of purchases, the difference between what has been claimed and $2,500,000 will be donated to not-for-profit charities and/or causes of Unilever's choice related to food or nutrition in the United States as *cy pres*.  Likewise, if the claims by the B&J Settlement Class are less than $5,000,000.00 of purchases, the difference between what has been claimed and $5,000,000.00 will be donated to not-for-profit charities and/or causes of B&J's choice related to food or nutrition in the United States as *cy pres*.  In addition to the monetary compensation, the Settlements also provide for injunctive relief to the Settlement Classes as B&J and Unilever agree in the future not to use the "All Natural" claims on products containing alkalized cocoa.  This injunctive relief not only provides a future benefit to the Classes, but also represents a substantial cost to Defendants, since it will cost $7,500 per flavor to change Defendants' Ice Cream Products labels.  The cost of this change for the 23 flavors of B&J Ice Cream Products and 35 flavors of Breyers Ice Cream Products will be upwards of $435,000.  Defendants must also bear the costs of the settlement logistics, including the costs of notice, claims administration, and awarded attorneys' fees and expenses.

As demonstrated below, the Notice Plans contemplated by the terms of the Settlement Agreements provide for both publication notice and direct mail notice where possible, and constitute the best notice practicable under the circumstances, comporting both with Fed.R.Civ.P. 23 and due process.

## II.   THE SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED

### A.   <u>The Settlement Classes Should Be Conditionally Certified</u>

The Actions are class actions and, as such, the proposed Settlement Agreements call for certification of classes for settlement purposes only.  *See* Exhibit A (Breyers Settlement Agreement) at Section III(A)(2) and III(B)(1); Exhibit B (B&J Settlement Agreement) at Section III(A)(2) and III(B)(1).  The use of such settlement classes is common and proper in the resolution of class action litigation.  *See, e.g.*, *Gribble v. Cool Transports, Inc.*, 2008 WL 5281665, at * 3 (C.D. Cal. Dec. 15, 2008) (approving settlement class as part of final approval of class action settlement); *In re*

8

1   *Connecticut General Life Ins. Co.*, 1997 WL 910387, at *1 ¶ 2 (C.D. Cal. Feb. 13, 1997) (certifying

2   "for purposes of settlement, the Settlement Class defined in Section II and Exhibit E of the

3   Settlement Agreement"); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust*

4   *Litig.*, 1993 WL 39306, at *2 ¶2 (C.D. Cal. Jan. 12, 1993) (granting preliminary approval and

5   certifying "for purposes of this settlement only, Temporary Settlement Classes as defined in the

6   Settlement Agreement.").

7        Here, the Breyers Settlement Class is defined as:

8        all persons in the United States who purchased Breyers' Unilever Ice Cream Products
         from November 4, 2004 through the date of Preliminary Approval of Settlement.
9        Excluded from the Settlement Class are: (i) Unilever and its employees, principals,
         affiliated entities, legal representatives, successors and assigns; (ii) any person who
10       files a valid, timely Request for Exclusion; and (iii) the Judges to whom these Actions
         are assigned and any members of their immediate families.
11

12   Exhibit A (Breyers Settlement Agreement) at Section III.A.2.  Similarly, the B&J Settlement Class is

13   defined as:

14       all persons in the United States who purchased Ben &Jerry's Unilever Ice Cream
         Products from September 28, 2006 through the date of Preliminary Approval of the
15       Settlement.  Excluded from the Settlement Class are: (i) Unilever and its employees,
         principals, affiliated entities, legal representatives, successors and assigns; (ii) any
16       person who files a valid, timely Request for Exclusion; and (iii) the Judges to whom
         this Action is assigned and any members of their immediate families.
17

18   Exhibit B (B&J Settlement Agreement) at Section III.A.2.[3]

19        Each of the two Settlement Class definitions sets forth an identifiable class, and each tracks

20   the putative class definitions pled by Plaintiffs.  *See Astiana*, Doc. 20 at ¶¶ 25, 27 (alleging class

21   definition); *Thurston*, Doc. 21 at ¶¶ 25, 27 (same); *Corriette*, Doc. 1 at ¶¶ 1, 15 (same).  Because, as

22

23

24   [3] Although both class definitions refer to "Unilever Ice Cream Products," this term is defined
     differently for the B&J Settlement Class and Unilever Settlement Class.  Under the B&J Settlement
25   Agreement, "Unilever Ice Cream Products" is defined to mean "Ben & Jerry's All Natural premium
     ice creams, yogurts, and sorbets containing alkalized cocoa," (Exhibit B at Section II, ¶ 20), while
26   under the Unilever Settlement Agreement, "Unilever Ice Cream Products" is defined to mean
     "Breyers All Natural Original Ice Cream containing alkalized cocoa or Breyers Smooth & Dreamy
27   ½ Fat All Natural Ice Cream containing alkalized cocoa," (Exhibit A at Section II, ¶ 20).

28

9

1    shown below, the Settlement Classes meet all the requirements of Rule 23, each should be certified

2    for settlement purposes.

3            **1.   The Settlement Classes Satisfy The Numerosity Requirement.**

4            Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is

5    impracticable."  Fed. R. Civ. P. 23(a)(1).  It is undisputed that the Actions meet the numerosity

6    requirement.  Further, B&J and Unilever are among the largest ice cream manufacturers in the

7    United States, and Plaintiffs have alleged, and discovery has confirmed, that hundreds of thousands

8    of packages of the Ice Cream Products were sold nationwide by both B&J and Unilever during the

9    approximately four-year class periods for the B&J and Breyers Settlement Classes.  Unquestionably,

10   although Plaintiffs do not know the precise numbers of Settlement Class Members in each of the two

11   Settlement Classes, the overall number in each Settlement Class satisfies the numerosity requirement

12   for class certification.  *See, e.g.*, *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal.

13   1998) (indicating 40 or more members generally sufficient).  *See also In re Badger Mountain Irr.*

14   *Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 7 1992) (indicating a plaintiff may satisfy Rule

15   23(a)(1)'s numerosity requirement by providing "[a] reasonable estimate of the limited number of

16   purported class members'")).

17           **2.   The Settlement Classes Satisfy The Commonality Requirement.**

18           Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." Fed. R.

19   Civ. P. 23(a)(2).  "To establish commonality, '[t]he existence of shared legal issues with divergent

20   factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal

21   remedies.'" *Parra v. Bashas, Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (quoting *Hanlon v. Chrysler*

22   *Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).  This requirement is easily satisfied.

23           Here, the commonality requirement is met for each of the Settlement Classes because the

24   claims of all absent Settlement Class Members in each Settlement Class arise from the same

25   allegations, namely, that B&J and Unilever misleadingly labeled their Ice Cream Products as "All

26   Natural" even though they contained a synthetic, man-made substance.  Thus, common questions for

27   both the Breyers Settlement Class and the B&J Settlement Class include: (1) whether the Ice Cream

28   Products labeled as "All Natural" were in fact "All Natural"; and (2) whether Defendants uniformly

1  misrepresented through materially identical labels that their Ice Cream Products containing alkalized

2  cocoa with potassium carbonate were "All Natural."

3      Each of the Settlement Classes shares the commonality requirement in that all Settlement

4  Class Members in each Settlement Class have claims which depend upon the answers to this set of

5  common questions.  Additionally, the Settlement Classes share the commonality requirement in that

6  all Settlement Class Members who purchased any of the "All Natural" Breyers Ice Cream Products

7  as defined in the Settlement Agreements during the class periods are entitled to claim under the

8  terms of the Settlements.

9          **3.   The Settlement Classes Satisfy The Typicality Requirement.**

10      Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of

11  the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  This requirement is also met here.

12      Courts consistently find that the typicality requirement is satisfied if the claims arise from a

13  common course of conduct.  As stated by Professor Newberg:

14      Typicality determines whether a sufficient relationship exists between the injury to
    the named plaintiff and the conduct affecting the class, so that the court may properly
15      attribute a collective nature to the challenged conduct.  In other words, when such a
    relationship is shown, a plaintiff's injury arises from or is directly related to a wrong
16      to a class, and that wrong includes the wrong to the plaintiff.  Thus, a plaintiff's
    claims is typical if it arises from the same event or practice or course of conduct that
17      gives rise to the claims of other class members, and if his or her claims are based on
    the same legal theory
18

19  1 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 3-13, at 3-76 (3d ed. 1992).

20  Typicality does not require the claims to be substantially identical.  *Hanlon*, 150 F.3d at 1020.

21  Rather, the Ninth Circuit has found typicality if the requisite claims "'share a common issue of law

22  or fact' ... and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for

23  relief.'" *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990)

24  (citations omitted), amended, 937 F.2d 465 (9th Cir. 1991).

25      Plaintiffs Thurston, Denmon-Clark, Corriette and Waldron, like other absent Breyers

26  Settlement Class Members, purchased Unilever's "All Natural" Breyers ice creams based upon

27  identical written representations prominently displayed on the packages that the ice creams were

28  "All Natural".  Similarly, Plaintiff Astiana, like other absent B&J Settlement Class Members,

11

1    purchased B&J Ice Cream Products based upon identical written representations prominently

2    displayed on the packages that the ice creams were "All Natural."  Because Plaintiffs are members

3    of the proposed Settlement Classes, and assert claims for common law fraud, consumer fraud, and

4    unjust enrichment on behalf of themselves and all absent Settlement Class Members based upon

5    Defendants' respective uniform courses of conduct and series of identical misrepresentations, their

6    claims are typical of Settlement Class Members' claims.

7            **4.   The Settlement Class Satisfies The Adequacy Requirement.**

8            Rule 24(a)(4) requires that "the representative parties will fairly and adequately protect the

9    interests of the class." Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal

10   adequacy:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other

11   class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on

12   behalf of the class?"  *Hanlon*, 150 F.3d at 1020.  There are no conflicts of interest alleged or that

13   could possibly exist here.  Plaintiffs seek the exact same remedy as all class members: namely, relief

14   to address the claims that Defendants misrepresented and misbranded their Ice Cream Products in

15   order to entice individuals to purchase these products when in fact the Ice Cream Products had

16   synthetic, man-made substances that rendered them non-natural.  Plaintiffs' interests, therefore, are

17   perfectly aligned with the interests of the Settlement Classes.

18           The adequacy of Plaintiffs and their counsel is evidenced by the Settlements negotiated with

19   Defendants, which yield meaningful relief to the Settlement Classes.  Further, counsel for Plaintiffs

20   are highly experienced in class action litigation, and have been involved in many class action

21   settlements and actions.  *See* Declaration of Joseph N. Kravec, Jr. ("Kravec Decl.") filed herewith at

22   Exs. 1-4 (attaching resumes of class counsels' law firms).

23           **5.   The Settlement Class Satisfies The Necessary Criteria Of Rule 23(b).**

24           In addition to meeting all the class certification requirements enumerated in Rule 23(a), a

25   movant must also satisfy at least one of the requirements of Rule 23(b).  Fed. R. Civ. P. 23(b).  Here,

26   the Settlement Classes' claims may be appropriately certified under Rule 23(b)(3), which provides

27   that class certification is appropriate if the criteria of Rule 23(a) are met, and if:

28

1
2
3

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

4
5

Fed. R. Civ. P. 23(b)(3).  These so-called "predominance" and "superiority" requirements of Rule 23(b)(3) are readily met in this case.

6

### a.  Common Questions of Law and Fact Predominate.

7
8
9
10
11
12
13
14
15
16
17
18

"To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical.  Rather, the predominance inquiry focuses on whether the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'"  *Friedman v. 24 Hour Fitness USA Inc.*, 2009 WL 2711956, at *6 (C.D. Cal. Aug. 6, 2009) (quoting *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)).  Here, for each of the two Settlement Classes, this cohesiveness assuredly exists because the overarching inquiry and interest of all putative class members is whether the members of the Settlement Classes are entitled to relief for their purchases of Defendants' misbranded and misleadingly-labeled Ice Cream Products.  This evidence, and proof as to the existence of a legally cognizable claim to obtain such relief, therefore, would predominate over any individual issues in adjudicating this case.

19

Professor Newberg summarized the issue by stating that:

20
21
22
23

> A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions ….  In finding that common questions predominate over individual ones in particular cases, courts have pointed to such issues that possess the common nucleus of fact for all related questions, have spoken of a common issue as the central, or overriding question, or have used similar articulations.

24
25
26
27
28

1 Newberg & Conte, supra, § 4.25 at 4-85 to 4-86 (internal citations omitted).  Similarly, the Court of Appeals for the Ninth Circuit has explained that the requirement of predominance may be satisfied by showing that the litigation is dominated by a "common nucleus of facts and potential legal remedies."  *Hanlon*, 150 F.3d at 1022; *see also Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)(citation omitted) ("Common issues of fact and law predominate if they 'ha[ve] a

13

direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'").   "[O]ne methodology is to determine whether the addition or subtraction of any class member would have "a substantial effect on the substance or quantity of the evidence offered."  *Id.* at 1255 (quoting *Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 322 (5th Cir. 1978)).  If manipulation of the proposed class members does not affect "the quantum of evidence introduced by the plaintiffs as a whole," then "common issues are likely to predominate." *Id.*  Plaintiffs can satisfy Rule 23(b)(3) predominance by showing that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, … predominate over those issues that are subject only to individualized proof." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000).

In cases such as the *Astiana*, *Thurston* and *Corriette* Actions, where claims are based on a single defendant's (either Unilever in the case of the *Thurston* and *Corriette* Actions, or B&J in the case of the *Astiana* Action) common course of standardized misconduct, predominance of common questions is easily satisfied.  *See, e.g., Hanrahan v. Britt*, 174 F.R.D. 356, 365 (E.D.Pa. 1997) (finding predominance in allegations that "defendants' systematic course of conduct misled class members and concealed material information from putative class").

Here, Plaintiffs maintain, and discovery has confirmed, that labels bearing identical material "All Natural" claims were made on Ice Cream Products sold nationwide by B&J and Unilever. Plaintiffs' common law fraud, consumer fraud, and unjust enrichment claims are all based on the language of the labels themselves, which are identical with respect to the alleged misrepresentation that the Ice Cream Products were "All Natural."  Every package of Ice Cream Products purchased by Plaintiffs and the Settlement Classes included an identical alleged misrepresentation that the Ice Cream Products were "All Natural" when they in fact contained a synthetic, man-made substance, namely alkalized cocoa processed with potassium carbonate.  This was a material misstatement with respect to each label.  Whether B&J misrepresented that its Ice Cream Products were "All Natural" is the core predominant issue in every B&J Settlement Class Member's claim, and, whether Unilever misrepresented its Ice Cream Products as "All Natural" is the core predominant issue in every Breyers Settlement Class Member's claim.  For both Settlement Classes, all Class Members' claims

14

1    are dependent upon the same factual and legal issues.  None of the Settlement Class Members'

2    claims will require case-specific inquiries into the facts surrounding each alleged class member's

3    purchases of the Ice Cream Products to establish liability on behalf of either B&J or Unilever.  It is

4    not necessary for the Court to parse through individual fact scenarios to determine whether B&J and

5    Unilever misrepresented the nature of the products they were offering for sale to consumers.  The

6    answer would be the same for all Settlement Class Members.  As such, common issues clearly

7    predominate and it is fair to say that these related cases are designed precisely for class action

8    treatment.

9                    **b.  Differences in State Law Do Not Defeat Predominance.**

10           Consistent with the above, differences in state laws do not predominate in this case.  Each of

11   the claims asserted on behalf of the Settlement Classes is routinely certified on behalf of national

12   classes, and the elements of these claims are sufficiently similar across the country that they do not

13   present an obstacle to certification.

14           Specifically, numerous courts have certified claims for common law fraud claims on behalf

15   of national classes where those fraud claims are based upon identical, material written

16   misrepresentations.  *See, e.g., Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376-380

17   (N.D. Cal. 2010) (certifying common law fraud claims on behalf of national class); *Plascencia v.*

18   *Lending 1st Mortgage*, 259 F.R.D. 437 (N.D. Cal. 2009); *Carder Buick-Olds Co., Inc. v. Reynolds &*

19   *Reynolds, Inc.*, 148 Ohio App.3d 635, 775 N.E.2d 531 (Ohio App. 2 Dist., 2002) (certifying

20   common law fraud claim on behalf of national class; stating "when courts are faced with common-

21   law state claims such as fraud … they have expressed doubts that differences in state laws are so

22   great as to preclude class treatment ... We also doubt that the elements of a common-law fraud claim

23   could vary greatly from state to state.").  *See also, Collins v. Gamestop Corp.*, 2010 WL 3077671,

24   *3-4 (N.D. Cal. Aug. 6, 2010) (refusing to strike allegations of national common law fraud class).

25           Moreover, while defendants opposing class certification have frequently argued that the

26   element of reliance introduces individual issues that require individualized proof, numerous courts

27   have explained that, while reliance is a requirement of common law fraud, "[i]n claims of fraud

28   based upon written representations, the reliance element may sometimes be presumed."  *Liberty*

15

*Lending Serv. v. Canada*, 293 Ga.App. 731, 741 (Ga. Ct. App. 2008) (concluding class-wide reliance could be inferred based upon "fact that similar written representations were common to all the security agreements at issue"; certifying class claims for common law fraud).  *See also Vasquez v. Superior Court of San Joaquin County*, 94 Cal.Rptr. 796, 484 P.2d 964, 973 (1971) citing Williston on Contracts § 1515 (3d ed. 1970) ("where action is taken in response to material representations, "in the absence of evidence showing the contrary, it will be presumed that the representations were relied on"); *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 666 (N.D.Ill. 1996) ("Even for the common law fraud claim, which requires proof of reliance, it is well established that individual issues of reliance do not thwart class actions.") (citations omitted); *Gruber v. Price Waterhouse*, 117 F.R.D. 75, 81 (E.D.Pa.1987) ("[T]he existence of individual questions of reliance does not defeat class certification ....").

For instance, in *Chavez* – a similar case dealing with misrepresentations on beverage labels – Chief Judge Walker recently explicitly rejected arguments that individual issues of reliance would predominate and prevent certification of a common law fraud claim on behalf of a national class of "consumers who purchased a Blue Sky beverage bearing the allegedly misleading labels in violation of state [labeling] laws."  268 F.R.D. at 377.  As Chief Judge Walker explained in certifying a national litigation class, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material [that is] if 'a reasonable man would attach importance to its existence or nonexistence.'"  *Id.*, citing *In re Tobacco II Cases*, 46 Cal.4th at 327, 93 Cal.Rptr.3d 559, 207 P.3d 20 (Cal. 2009).

Here, as in *Chavez*, the alleged misrepresentations on the labels violated applicable product labeling laws – which is strong evidence of materiality and, *ipso facto*, of reliance.  Thus, common issues clearly predominate with respect to Plaintiffs' common law fraud claims.

In addition, settlement certification of Plaintiffs' consumer fraud and unjust enrichment claims is also appropriate.  Plaintiffs recognize that the Ninth Circuit Court of Appeals recently held in *Mazza v. American Honda Motor Co., Inc.* ("*Mazza*"), --- F.3d ---, 2012 WL 89176 (9th Cir. Jan 12, 2012), that certification of a nationwide class of consumers for the purpose of **litigation** under California's consumer protection and unjust enrichment laws was inappropriate where the plaintiffs

16

1    alleged non-uniform misrepresentations and omissions of material facts about an automobile

2    manufacturer's breaking system.  *Mazza*, 2012 WL at * 12.  However, it is undersigned counsel's

3    understanding that the plaintiffs in *Mazza* is seeking *en banc* review of the ruling.  Moreover, to the

4    extent *Mazza* evades or survives *en banc* review, it should not impact grant of a ***settlement-only***

5    class certification here.

6         Specifically, *Mazza* holds that in the context of certifying a *litigation* class under Rule 23,

7    predominance is not met when the court must look to the consumer protection and unjust enrichment

8    laws of each state.  *Id*. at *12.  This ruling is inapplicable here as Plaintiffs seek nationwide class

9    certification for the purpose of *settlement*, not litigation.

10        Where a settlement class was concerned, the Supreme Court recognized in *Amchem Prods.*

11   *Inc. v. Windsor* ("*Amchem*"), 521 U.S. 591, 625 (1997), that "predominance is a test readily met in

12   certain cases alleging consumer or securities fraud…"   The Supreme Court explained that

13   predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

14   representation."  *Id*. at 623.  Accordingly when "[c]onfronted with a request for settlement-only class

15   certification, a district court need not inquire whether the case, if tried, would present intractable

16   management problems."  *Id*. at 620.

17        Relying heavily on *Amchem*, an *en banc* panel of the Third Circuit Court of Appeals,

18   reviewing a nationwide class certification of consumer fraud and unjust enrichment claims in the

19   settlement context, recently held that Rule 23's predominance requirement does not preclude

20   nationwide *settlement-only* class certification of claims brought under the consumer protection and

21   unjust enrichment laws of all 50 states.  *See Sullivan v. DB Investments, Inc*., --- F.3d ---, 2011 WL

22   6367740 (3d Cir. Dec. 20, 2011).

23        In *Sullivan*, the parties entered into an agreement to settle claims for antitrust violations on

24   behalf of a class of indirect purchasers nationwide for claims brought under state antitrust, consumer

25   protection, and unjust enrichment laws of all 50 states.  *Id*. at *4.  In response to the settlement,

26   objectors attacked predominance arguing settlement class certification was inappropriate due to

27   differences among various states' consumer protection and unjust enrichment laws, specifically

28   because many states prohibited indirect purchasers from recovering damages for antitrust injuries.

17

*Id.* at 5.   The Third Circuit disagreed.   Relying on the Supreme Court's decision in *Amchem*, the Third Circuit held that ***"in the settlement context, variations in state antitrust, consumer protection and unjust enrichment laws did not present the types of insuperable obstacles that could render class litigation unmanageable."***   *Id.* at *16 (emphasis added, internal quotation and citation omitted).

Moreover, the Third Circuit found that for the purposes of certifying a nationwide class for settlement purposes, the Court need not find that each absent class member has a valid claim as this would inappropriately introduce the requirements of Rule 12(b)(6) into Rule 23.   *Id.* at *17-18 ("a court may inquire whether the elements of asserted claims are capable of proof through common evidence, but lacks authority to adjudge the legal validity or soundness of the substantive elements of asserted claims").   The requirements of Rule 23 are to "assess[]whether a class action 'would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.'"   *Id.*at *11 (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment).

It is under these same guiding principles that the Ninth Circuit has upheld ***settlement-only*** class certification in nationwide settlements.   *See, e.g., Hanlon*, 150 F.3d at 1022 (finding predominance met for the purpose of certifying a nationwide settlement class alleging individual states' breach of express and implied warranties and "lemon laws").   Similarly, in reliance on *Sullivan*, Judge Jeffrey S. White of this District also granted preliminary approval of settlement post-*American Honda* to a national class of walnut purchasers asserting claims under the UCL, FAL and for unjust enrichment.   *See Zeisel v. Diamond Foods, Inc.*, Case No. 3:10-cv-01192 (N.D.Cal.), at Docs. 210 (granting preliminary approval of nationwide settlement) and 212 (granting plaintiff leave to file supplemental brief on *American Honda* and *Sullivan*), attached as Kravec Decl. Exs. 5 and 6.

In sum, Plaintiffs have met their burden at this preliminary stage of demonstrating that the Settlement Classes' claims are based on substantially uniform principles of law, and that common issues of law and fact remain the predominant focus of the Actions.

18

### c.  A Class Action Is Superior To Other Methods Of Adjudication.

The "superiority" requirement of Rule 23(b)(3) is also easily met in this case.  Rule 23(b)(3) identifies four factors relevant to a superiority inquiry:  (1) the class members' interests in individually prosecuting separate actions; (2) whether any litigation concerning the controversy has already been brought by class members; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  *See* Fed. R. Civ. P. 23(b)(3)(a)-(d).  "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy."  *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citing 7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 at 174 (3d ed.2005).

Here, each of the Rule 23(b)(3) "superiority" factors clearly militates in favor of class certification.  First, there is no interest by Settlement Class Members to individually litigate.  Where damages suffered by each putative class member are small compared to the cost of litigating, this factor weighs in favor of certifying a class action.  *See Wolin*, 617 F.3d at 1175.  Although the damage resulting from Defendants' alleged misrepresentations to the Settlement Classes are real and significant, the cost of individually litigating such a case against Unilever or B&J would easily exceed the value of any relief that could be obtained by any one purchaser.  This, alone, warrants a finding that a class action is a superior method of adjudication.  *See Tchoboian v. Parking Concepts, Inc.*, 2009 WL 2169883, at *7 (C.D. Cal. Jul. 16, 2009) (granting motion for class certification and noting that "[t]his superiority inquiry requires a comparative evaluation of alternative mechanisms of dispute resolution."); *Baghdasarian v. Amazon.com, Inc.*, 2009 WL 2263581, at *7 (C.D. Cal., Jul. 7, 2009) (granting motion for class certification and noting that the superiority inquiry is geared to address "the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").  A class action is the superior method to adjudicate class claims when it will protect the rights of class members who may lack the financial resources to bring the alleged wrongdoers into court.  *Amchem Prods., Inc.*, 521 U.S. at 617.  A class action is the superior method for managing litigation if no realistic alternative exists. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 -1235 (9th Cir. 1996).

19

1   The other factors also each weigh in favor of certification.  Regarding the second factor,

2   there is no evidence of any other litigation involving the claims asserted in the present case.  The

3   third factor also favors certification because efficiency makes it desirable to litigate similar, related

4   claims in one forum.  The fourth factor points to the superiority of a class approach because there is

5   nothing before the Court to suggest difficulty in managing this case as a settlement class action.  On

6   the contrary, litigating all claims together avoids the risk of inconsistent results for Defendants and

7   for all Settlement Class Members.  In short, a class action here promotes judicial efficiency, avoids

8   inconsistency, and provides a single forum to resolve numerous common claims.

9   Because each of the proposed Settlement Classes meets all the applicable requirements for

10   certification under Federal Rule of Civil Procedure 23, the Breyers Settlement Class and the B&J

11   Settlement Class should be conditionally certified from purposes of settlement.  At the Fairness

12   Hearing, the Court will have the further opportunity to revisit this conditional certification in

13   deciding whether to grant Final Approval to the Settlement Agreements.

**B.   The Substantive Terms Of The Settlements Are Fair, And Should Be Granted Preliminary Approval**

**1.   The Proposed Settlements Are Within The Range Of Possible Approval As Fair, Reasonable, And Adequate**

17   Preliminary approval should also be granted to the Settlements because their terms are fair

18   and reasonable.  Ultimately, the decision as to whether to grant preliminary approval to a settlement

19   of a class action is a matter left to the discretion of the trial court.  *See Castro v. Zenith Acquisition

20   Corp.*, 2007 WL 81905, *1 (N.D. Cal.  Jan. 9, 2007).  In exercising that discretion, however, the

21   Court should bear in mind that "there is an overriding public interest in settling and quieting

22   litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529

23   F.2d 943, 950 (9th Cir. 1976).  Recognizing that a settlement represents an exercise of judgment by

24   the negotiating parties, *see Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1375-1376 (9th Cir. 1993),

25   the Ninth Circuit has held that "the court's intrusion upon what is otherwise a private consensual

26   agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to

27   reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or

28

1    collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

2    reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d

3    615, 625 (9th Cir. 1982).

4            The general standard by which courts are guided when deciding whether to grant preliminary

5    approval to a class action settlement is whether the proposed settlement falls within the range of

6    what could be "fair, adequate, and reasonable," so that notice may be given to the proposed class,

7    and a hearing for final approval may be scheduled.  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276

8    (9th Cir. 1992); *see also Gattreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (If the court finds

9    that the proposed settlement is "within the range of possible approval" and that notice should be

10   given, "the next step is the fairness hearing.").

11           The proposed Settlements assuredly satisfy the foregoing criteria.   The terms of the

12   Settlement Agreements provide B&J and Breyers Settlement Class Members with meaningful relief

13   that addresses the precise legal injury that was alleged in the *Astiana*, *Thurston* and *Corriette*

14   Actions.  The recovery offered is real and substantial.  In addition to the injunctive relief secured by

15   the Settlements, each qualifying Settlement Class Member is entitled to receive $2.00 per package of

16   Ice Cream Products purchased.  Exhibit A (Breyers Settlement Agreement) at Section III(C)(1)(b);

17   Exhibit B (B&J Settlement Agreement) at Section III(C)(1)(b).   Class Members may claim up to

18   three packages with a sworn attestation of purchase and claim up to ten packages with submission of

19   adequate proofs of purchase.    *Id.*   The amounts payable to Settlement Class Members under the

20   Settlements reasonably approximate the amounts that could have been recovered at trial on a price

21   premium theory or through restitutionary disgorgement of profits.   Indeed, the $2.00 per package

22   amount is about 60% of the average retail price paid by Settlement Class Members.  Of course,

23   Defendants' wholesale price (*i.e.,* revenue) and ultimate profit per package after deduction of costs is

24   lower than the retail price.  By any measure, the Settlements' terms are fair and reasonable.

25           The Settlements' terms are also fair and reasonable when considered in light of the uncertain

26   prospects and risks faced by Plaintiffs and the putative classes.   Defendants vigorously denied

27   liability (and still do) and voiced their intention to vigorously contest not only the ultimate liability

28   but also the amount of damages.  Although the *Thurston/Corriette* Plaintiffs and Plaintiff Astiana

1  remained confident of the merits of their cases, the results were not predictable with any degree of

2  certainty.  Further, even if judgment were entered against either or both Defendants, they could still

3  appeal.  Such an appeal to the Ninth Circuit would likely take years to resolve, such that, even if

4  successful, ultimate relief to the Settlement Classes would likely be years down the road.

5        **2.**      **The Settlement Was A Product Of Adversarial Arms'-Length Negotiation**

6        The discussions and negotiations leading up to the Settlements were conducted in vigorous,

7  adversarial, and arms-length fashion, which provides added indicia of the fairness of the Settlements.

8        Here, it is undeniable that the settlement negotiations were non-collusive and adversarial in

9  nature.  Before engaging in any settlement talks, the parties vigorously litigated Defendants' motions

10  to dismiss and motions to strike, which raised exhaustive challenges to Plaintiffs' claims.  Further, it

11  was only after Plaintiffs demonstrated the strength of their claims by overcoming Defendants'

12  motions to dismiss and strike that Defendants were willing to consider the possibility of mediation.

13  Thus, it was only in September 2011, after months of litigation and discovery, that the agreements in

14  principle to settle the three Actions were reached.  The settlement negotiations were then presided

15  over by a professional mediator, including a one-day, in person, session followed by five weeks of

16  continued negotiations conducted by the mediator.

17        Moreover, the Settlement Agreements were reached at a time when uncertainties lay ahead

18  for each party.  All parties faced the prospect of a protracted and costly discovery process.  In

19  addition, at the Case Management Conference, Defendants indicated that they intended to file a

20  motion for summary judgment, *see Astiana*, Doc. 66 at 3, the outcome of which, like any other

21  adversarial motion in litigation, was uncertain.  If the motion were granted, then, subject to any

22  appeal, Defendants' exposure would decrease, potentially completely.  On the other hand, even if the

23  motion were denied, Plaintiffs faced the prospect of arduous preparations for a trial on the merits,

24  which could go either way.  Thus, the chronology of the proceedings made it particularly reasonable

25  for the parties to explore a settlement at the time that they did, if doing so could be done on a fair

26  and reasonable basis.

27

28

1

### 3.    The Proposed Settlement Is Recommended By Class Counsel

2   The recommendations of class counsel are entitled to a presumption of reasonableness.  *Boyd*

3   *v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D.Cal. 1979).  Here, class counsel, and with the well-

4   informed support of Plaintiffs Thurston, Denmon-Clark, Corriette, Waldron, and Astiana, believe

5   strongly that the Settlements offer broad and valuable relief to the Breyers Settlement Class and B&J

6   Settlement Class, and are in the best interest of the Settlement Classes.

7

### 4.    Summary

8   The factors to consider in determining the fairness of a proposed settlement must be analyzed

9   in the context of the settlement as a whole.  *Staton v. Boeing*, 327 F.3d 938, 959, 961 (9th Cir. 2003).

10  Here, all pertinent factors indicate that the Breyers and B&J Settlements are "within the range" of

11  being fair, reasonable, and adequate.  *See, e.g., In re Tableware Antitrust Litig.*, 484 F.Supp. 2d

12  1078, 1079-80 (N.D. Cal. 2007); *Ross v. Trex Co., Inc.*, 2009 WL 2365865, *3 (N.D. Cal. July 30,

13  2009).  Because the proposed Settlements amount to a reasonable means of resolving the Actions,

14  and because the risks and expenses inherent in continuing to litigate these matters are significant and

15  uncertain, the proposed Settlements should be preliminarily approved.

16

### C.    The Notice Plan Should Be Approved.

17  Rule 23 and due process concerns call for notice to be provided to absent Settlement Class

18  Members in order to inform them of the proposed Settlements, and grant them the opportunity to

19  opt-out or object.  *See* Fed. R. Civ. P. 23(c)(2).  The notice and means of disseminating it must be

20  the "best notice practicable" under the circumstances.  *See Mullane v. Central Hanover Trust*, 339

21  U.S. 306, 314-315, 317 (1950).  That test is clearly satisfied by the parties' proposed notice.

22  Here, the parties propose to disseminate notice of the proposed class action settlements by:

23  (1) U.S. Mail for putative class members whose names and addresses are known; (2) by publication

24  as set forth in the Notice Plans for the remainder of the putative classes whose names and address

25  cannot be determined; (3) Website provided by the class action claims administrator and the posting

26  of notices and other settlement papers on class counsel's websites.  Exhibit A (Breyers Settlement

27  Agreement) at Section V(1) and Exhibit A6 (Decl. of Mark Rapazzini setting forth Breyers Notice

28  Plan); Exhibit B (B&J Settlement Agreement) at Section V(1) and Exhibit B6 (Decl. of Mark

Rapazzini setting forth B&J Notice Plan).  With respect to the publication notice component, the parties propose to disseminate notice of each of the Settlements through the websites and publication in four national circulation periodicals in which Defendants' have historically advertised their Ice Cream Products, namely Cooking Light, Country Living, Entertainment Weekly (print and e-versions), and Rolling Stone (print and e-versions).[4]  Kravec Decl. Ex. 7 (Unilever 30(b)(6) testimony) at 46; Kravec Decl. Ex. 8 (B&J 30(b)(6) testimony) at 6.  These publications have a collective readership of over 45 million people.  *See* Exhibit A6 (Rapazzini Decl. on Breyers Notice Plan) at attachment B thereto; Exhibit B6 (Rapazzini Decl. on B&J Notice Plan) at attachment B thereto.  The proposed Notice Plans are tailored to the demographics of consumers of B&J and Breyers Ice Cream Products, as well as to those magazines in which Defendants have historically published, and are appropriate to reach members of the Classes.  *See Id.* at ¶ 2 and Ex. 1 thereto; Kravec Decl. Ex. 7 (Unilever 30(b)(6) testimony) at 45-46; Kravec Decl. Ex. 8 (B&J 30(b)(6) testimony) at 5-9.  *See also Zeisel v. Diamond*, Case No. 3:10-cv-01192 (N.D.Cal.), Doc. 194 at 2 (approving similar proposed plan of notice in litigation context where notice was tailored to reach consumers), attached as Kravec Decl. Exhibit 9.

The Notice Plans constitute the "best notice practicable" under the circumstances and in similar circumstances has been approved by courts.  *See, e.g., Jenson v. First Trust Corp.*, 2008 U.S. Dist. LEXIS 45078 (C.D. Cal. June 9, 2008) (mail notice to all members who could be identified through reasonable effort and by publication, provided the best notice practicable); *In re Portal Software Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794, 18-19 (N.D. Cal. June 30, 2007) (notice by mail and publication was the "best notice practicable under the circumstances"); *In re Domestic Air Transp Antitrust Litig*, 141 FRD 534, 550-51 (N.D. Ga. 1992) (providing notice by mail to those class members who could be identified and by publication only to those who could not be identified

---

[4] The parties propose to publish the Breyers Short-form Notice in Country Living and Cooking Light magazines, and the B&J Short-form Notice in Rolling Stone and Entertainment Weekly.  *See* Exhibit A6 (Rappazzini Decl. on Breyers Notice Plan) at ¶¶ 2-3; Exhibit B6 (Rappazzini Decl. on B&J Notice Plan at ¶¶ 2-3).  However, the Breyers Short-form Notice and the B&J Short-form Notice both apprise Settlement Class Members of both Settlements.  *See* Exhibit A4 (Breyers Short-form Notice); Exhibit B4 (B&J Short-form Notice).

satisfies due process); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)("because defendants do not have a list of potential class members [] the court agrees with plaintiffs that notice by publication is the only reasonable method of informing class members of the pending class action and []settlement);  Manual for Complex Litigation (4th Ed. 2004) § 21.311 ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort"); *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 114451, 6-7 (S.D. Cal. Sept. 5, 2008) (summary notice in USA Today, with national distribution further directing class members to a dedicated website was the best notice practicable under the circumstances).

In addition, the proposed forms of notice also comply with due process requirements and Rule 23.  The proposed forms of notice are attached as Exhibits 3 and 4 to the Breyers Settlement Agreement, and as Exhibits 3 and 4 to the B&J Settlement Agreement.  *See* Exhibits A3, A4, B3, B4 attached hereto.   The proposed forms follow the guidelines developed by the Federal Judiciary Center, www.fjc.gov, use simple and concise language, and effectively inform absent Settlement Class Members as to the terms of the Settlements, as well as their right to avail themselves of the Settlements, opt-out, or object.  *See* Exhibits A3, A4, B3, and B4.

The forms of notice and plan of dissemination should, therefore, be approved.

## CONCLUSION

For all the foregoing reasons, the Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlements should be GRANTED.

Dated:  February 24, 2012

STEMBER FEINSTEIN DOYLE
  PAYNE & KRAVEC, LLC

By:   s/Joseph N. Kravec, Jr.
         Joseph N. Kravec, Jr.
         (admitted p*ro hac vice*)

Wyatt A. Lison (admitted *pro hac vice*)
429 Forbes Avenue 17th Floor
Pittsburgh, PA  15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007

GARDY & NOTIS, LLP

By:  s/Kelly A. Noto
       Kelly A. Noto (admitted p*ro hac vice*)

James S. Notis (admitted *pro hac vice*)
Jennifer Sarnelli (242510)
560 Sylvan Avenue
Englewood Cliffs, NJ 07632
Telephone: (201) 567-7377
Facsimile: (201) 567-7337

*Attorneys for Plaintiffs
Corriette and Waldron*

25

1    Michael D. Braun  (167416)
     BRAUN LAW GROUP, P.C.
2    10680 West Pico Blvd., Suite 280
     Los Angeles, CA  90064
3    Telephone: (310) 836-6000
     Facsmile: (310) 836-6010
4
     Janet Lindner Spielberg (221926)
5    LAW OFFICES OF JANET
       LINDER SPIELBERG
6    12400 Wilshire Blvd., Suite 400
     Los Angeles, CA  90025
7    Telephone: (310) 392-8801
     Facsimile: (310) 278-5938
8
     ***Attorneys for Plaintiffs***
9    ***Thurston, Denmon-Clark, and Astiana***

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Motion, Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlements, and Supporting
Memorandum; Case Nos.:  10-cv-04937-PJH, 11-cv-01811-PJH and 10-cv-04387-PJH