Michael D. Braun (167416)
**BRAUN LAW GROUP, P.C.**
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90064
Tel: (310) 836-6000
Fax: (310) 836-6010

Joseph N. Kravec, Jr.(admitted *pro hac vice*)
**STEMBER FEINSTEIN DOYLE
   PAYNE & KRAVEC, LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA  15219
Tel:  (412) 281-8400
Fax:  (412) 281-1007

Janet Lindner Spielberg (221926)
**LAW OFFICES OF JANET LINDNER
   SPIELBERG**
12400 Wilshire Boulevard, Suite 400
Los Angeles, California  90025
Tel:  (310) 392-8801
Fax:  (310) 278-5938

*Attorneys for Plaintiffs Thurston,
Denmon-Clark and Astiana*

James S. Notis (admitted *pro hac vice*)
Jennifer Sarnelli (242510)
Kelly A. Noto (admitted *pro hac vice*)
**GARDY & NOTIS, LLP**
560 Sylvan Avenue
Englewood Cliffs, NJ 07632
Tel: (201) 567-7377
Fax: (201) 567-7337

*Attorneys for Plaintiffs
Corriette and Waldron*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CHANEE THURSTON and TANASHA DENMON-CLARK  on behalf of themselves and all others  similarly situated,<br><br>          Plaintiffs<br><br>        v.<br><br>CONOPCO, INC. d/b/a UNILEVER (formerly d/b/a GOOD HUMOR-BREYERS) d/b/a BREYERS,<br><br>          Defendant | CASE NO.:  10-cv-04937-PJH<br><br><u>CLASS ACTION</u><br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFF INCENTIVE AWARDS**<br><br>Hearing Date: September 12, 2012<br>Time:        9:00 a.m.<br>Courtroom:  3 (Oakland Courthouse) |

| | |
|---|---|
| 1 | |
| 2 | ROSS CORRIETTE and JAMES WALDRON on behalf of themselves and all others similarly situated, |
| | **RELATED CASE** |
| 3 | Case No. 11-cv-01811-PJH |
| 4 | |
| | Plaintiffs |
| 5 | |
| 6 | v. |
| 7 | UNILEVER d/b/a BREYERS, |
| 8 | |
| 9 | Defendant. |

| | |
|---|---|
| 10 | |
| 11 | SKYE ASTIANA on behalf of herself and all others similarly situated, |
| | **RELATED CASE** |
| 12 | Case No. 10-cv-04387-PJH |
| 13 | Plaintiff, |
| 14 | v. |
| 15 | |
| 16 | BEN & JERRY'S HOMEMADE, INC., |
| 17 | |
| 18 | Defendant. |

19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION & SUMMARY OF ARGUMENT ................................................. 2

II.   PROCEDURAL FACTS AND BACKGROUND ......................................... 2

III.  PLAINTIFFS' COUNSEL'S INVESTMENT OF TIME & MONEY IN THE PROSECUTION OF THESE ACTIONS ........................................................ 3

    A.    Legal Standard .................................................................................... 6

    B.    The Common Fund Analysis Supports Plaintiffs' Counsel's Fee Request ................. 7

        1.    The Results Achieved Were Very Favorable to the Settlement Class ............ 9

        2.    There Are Substantial Risks Associated With Continued Litigation ........... 10

        3.    Benefits Beyond the Cash in the Settlement Fund .......................................... 10

        4.    Counsel's Fee and Expenses Are Contingent ................................................. 11

        5.    Objections to the Settlement .......................................................................... 11

        6.    Skill & Efficiency of the Attorneys Involved .................................................. 12

        7.    Awards Made in Similar Cases are Consistent with the Counsel's Request 12

    C.    A Lodestar-Multiplier Cross-Check Confirms the Reasonableness of the Fee Request ................................................................................................. 13

    D.    Class Counsel's Request for Reimbursement of Expenses are Reasonable ............ 16

    E.    Plaintiff Incentive Awards are Reasonable and Should be Approved ..................... 17

IV.   CONCLUSION ......................................................................................... 18

**TABLE OF AUTHORITIES**

<u>CASES</u>

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ................................................................ 8

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ........................................................... 7, 8

*Brazil v. Dell Inc.*, 2012 U.S. Dist. LEXIS 47986 (N.D. Cal. 2012) ............................ 9, 11

*Caudle* v. *Bristow Optical Co., Inc.,* 224 F.3d 1014 (9th Cir. 2000) ............................... 13

*Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.)*
     19 F.3d. 1291 (9th Cir. Ariz. 1994). .......................................................................... 15

*Chu v. Wells Fargo Investments, LLC*, 2011 U.S. Dist. LEXIS 15821 (N.D. Cal. 2011) ...................... 17

*Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................ 15

*Ferland v. Conrad Credit Corp.*, 244 F.3d 1145 (9th Cir. 2001) ................................... 13

*Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997 (9th Cir. Cal. 2002) ............. 15

*Fractional Villas, Inc.* v *Rodgers*, 2009 WL 1226982 (S.D. Cal. 2009) .............................. 14

*Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. 2007) ............................ 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. Cal. 1998) .......................................... 6

*Harris* v. *Marhoefer*, 24 F.3d 16 (9th Cir. 1994) .......................................................... 16

*Hearn v. Barnhart*, 262 F. Supp. 2d 1033 (N.D. Cal. 2003) ............................................. 14

*Heritage Bond, 2005 WL 1594403 (C.D.Cal. 2005)* ..................................................... 12

*Hopson v. Hanesbrands Inc.*, 2009 WL 928133 (N.D. Cal. 2009) ............................... 14, 17

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ...................................... 7

*In re Agent Orange Product Liability Litigation*, 818 F.2d 226 (2d Cir. 1987) ...................... 10

*In re Bluetooth Headset Prod. Litig.*, 654 F.3d 935 (9TH Cir. 2011) .................................. 7

*In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424 (N.D. Cal. 2011) ...................... 15

*In re Consumer Privacy Cases*, 175 Cal. App. 4th 545 (Cal. App. 1st Dist. 2009) .................. 6

*In re Lifelock, Inc. Mktg. and Sales Practices Litig.*, 2010 U.S. Dist. LEXIS 102612
     (D. Ariz. 2010)............................................................................................................ 6

*In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362 (N.D. Cal. 1996) ........................... 16

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)................................... 9, 17

CASE NOS.:  10-cv-04937-PJH,                       ii          MEM. ISO MOTION FOR AWARD OF ATTORNEYS' FEES;
11-cv-01811-PJH, 10-cv-04387-PJH                              REIMBURSEMENT OF EXPENSES AND PLAINTIFF INCENTIVE
                                                                                                          AWARD

*In re Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010) ........................................... 6

*In re Omnivision Techs, Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................... 7, 13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998)). ........ 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575003 (N.D. Cal. 2011) ............................. 14

*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986). ........................................................... 7

*Laputka* v. *Barnhart,* 2009 WL 1295954 (E.D. Cal. May 8, 2009) ........................................ 14

*Linney* v. *Cellular Alaska P'ship, No. 96-3008,* 1997 WL 450064 (N.D. Cal. 1997) ........................... 16

*Loring v. Scottsdale*, 721 F.2d 274 (9th Cir. Ariz. 1983) ............................................... 11

*Martin v. FedEx Ground Package Sys., Inc.*, 2008 WL 5478576 (N.D. Cal. 2008) .......................... 14

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. Cal. 2012).......................................... 10

*McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841 (S.D. Cal. 2009);........................... 16

*Mills v. Electric Auto—Lite Co.*, 396 U.S. 375 (1970) ...................................................... 16

*Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ................................................... 6, 8

*Schiller v. David's Bridal, Inc.,* 2012 U.S. Dist. LEXIS 80776 (E.D. Cal. 2012) ..................................... 6

*Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416 (S.D. Cal. 2010).......................... 12

*Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990).............................. 7

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939) ........................................................ 8

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003). ................................................... 4, 16

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993).......................................... 7, 11

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010).................................... 12

*Vizcaino v. Microsoft Corp.*, 290 F .3d 1043 (9th Cir. 2002).................................................. *passim*

CASE NOS.:  10-cv-04937-PJH,
11-cv-01811-PJH, 10-cv-04387-PJH

iii

MEM. ISO MOTION FOR AWARD OF ATTORNEYS' FEES;
REIMBURSEMENT OF EXPENSES AND PLAINTIFF INCENTIVE
AWARD

1

2

## OTHER AUTHORITIES

3
Charles Silver, *Due Process and the Lodestar Method: You Can't Get There from Here*,
   74 Tul. L. Rev. 1809 (2000) ................................................................................................ 7

4
Denise N. Martin, Vinita M. Juneja, Todd S. Foster & Frederick C. Dunbar, *Recent Trends IV: What*
5
   *Explains Filings and Settlements in Shareholder Class Actions?*
   Stan. 28 J.L. Bus. & Fin. (1996) ....................................................................................... 8

6
*Manual for Complex Litigation* (Fourth) § 14.121 (2004) ..................................................... 7-9

7
Third Circuit Task Force Report, *Selection of Class Counsel*, 208 F.R.D. 340 (2002) ........................ 13

8
Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four*
9
   *Federal District Courts: Final Report to the Advisory Committee on Civil Rules*
   (Fed. Judicial Ctr. 1996) ..................................................................................................... 8

10

11

## RULES

12
Fed. R. Civ. P. 23(h) ........................................................................................................... 6

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NOS.: 10-cv-04937-PJH,                     iv          MEM. ISO MOTION FOR AWARD OF ATTORNEYS' FEES;
11-cv-01811-PJH, 10-cv-04387-PJH                            REIMBURSEMENT OF EXPENSES AND PLAINTIFF INCENTIVE
                                                                                                       AWARD

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Orders entered on March 30, 2012 (*Astiana* Doc. No. 81; *Thurston* Doc. No. 47; *Corriette* Doc. No. 51), on September 12, 2012 at 9:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Judge Phyllis J. Hamilton, United States District Court Judge for the Northern District of California, 1301 Clay Street, Courtroom 3, Oakland, CA 94612, Plaintiffs Chanee Thurston, Tanasha Denmon-Clark, Ross Corriette and James Waldron (the "Thurston/Corriette Plaintiffs") and Plaintiff Skye Astiana (collectively "Plaintiffs") will and hereby do move this Court pursuant to Fed. R. Civ. P. 23 for entry of Order(s): (1) Awarding attorneys' fees and reimbursement of expenses; and (2) Awarding incentive awards to the named Plaintiffs in these actions.

This Motion is based on the accompanying Memorandum, the Declaration of Michael D. Braun In Support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Plaintiff Incentive Awards ("Braun Decl."), the executed Settlement Agreements (*Astiana* Doc. No. 75, Ex. B; *Thurston* Doc. No. 38 Ex. A; *Corriette* Doc. No. 46 Ex. A), the papers and pleadings filed in this matter; and any argument made by counsel at the Final Approval Hearing.[1] Concurrently submitted with this Motion are [Proposed] Final Orders and Judgments in the form agreed to by the parties.

---

[1] Docket references will be referred to as "Doc. No.__." Docket references to Case No. 10-cv-04387-PJH references will be preceded by "*Astiana*", references to Case No. 10-cv-04937-PJH will be preceded by "*Thurston*," and references to 11-cv-01811-PJH will be preceded by "*Corriette*". All "¶" or "§" symbols will refer to the Settlement Agreements reached in these cases and will be preceded by "*Astiana*", "*Thurston*", or *Corriette* when referring to a particular agreement, or by no name if referring to all of them.

| CASE NOS.: 10-cv-04937-PJH, 11-cv-01811-PJH, 10-cv-04387-PJH | 1 | MEM. ISO MOTION FOR AWARD OF ATTORNEYS' FEES; REIMBURSEMENT OF EXPENSES AND PLAINTIFF INCENTIVE AWARD |

Plaintiffs on behalf of themselves and the Settlement Classes, respectfully submit this Memorandum in support of their Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Awards to Plaintiffs. [2]

## I.      INTRODUCTION & SUMMARY OF ARGUMENT

Plaintiffs in these three related cases seek a total award of fees and reimbursement of expenses in the amount of $1,875,000, an amount agreed to by the parties as part of the mediation that yielded the settlements in each case.  The requested fee award is an amalgam of the fees requested and agreed to in all three cases.  Specifically, in *Astiana*, the fee request is $1,250,000.  In *Thurston/Corriette* the fee request is $625,000.   Plaintiffs also seek an incentive award for each named Plaintiff in the amount of $1,500 per plaintiff, which would come out of the award of fees and reimbursement of expenses. The amounts requested were negotiated after the parties reached an agreement on the terms of the Settlements for the Classes.  Importantly, the award of attorneys' fees, reimbursement of expenses, and plaintiffs' incentive awards are *non-dilutive* of the restitutionary settlement fund established for the Class (i.e. $7,500,000).  Co-Lead Counsel respectfully submit that the requested fees are reasonable under the circumstances of this case and are well-within the range of fee awards approved by Courts in the Ninth Circuit both under the common fund doctrine and the lodestar approach and therefore should be approved.  Similarly, the expenses for which reimbursement is sought and the proposed Plaintiff incentive awards are reasonable; typical of those awarded in similar cases; and should also be awarded.

## II.      PROCEDURAL FACTS AND BACKGROUND

A full description of the procedural facts and background have been presented to the Court in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlements (*Astiana* Doc. No. 75; *Thurston* Doc. No. 68;  *Corriette* Doc. No. 46) and Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlements (*Astiana* Doc. No. 75; *Thurston* Doc. No. 76; *Corriette* Doc. No. 53) which are incorporated herein by reference.

---

[2] All capitalized terms not defined herein shall have the same meaning as ascribed to them in the Settlement Agreements (*Astiana* Doc. No. 75, Ex. B; *Thurston* Doc. No. 38 Ex. A; *Corriette* Doc. No. 46 Ex. A). The provisions of the Settlement Agreements, including all definitions and defined terms, are incorporated by reference herein.

### III.   PLAINTIFFS' COUNSEL'S INVESTMENT OF TIME & MONEY IN THE PROSECUTION OF THESE ACTIONS

On or about February 24, 2012, the parties to these litigations reached Settlements which provide that Unilever will establish and fully fund a Restitution Fund of seven million five hundred thousand dollars ($7,500,000) from which Class Members will be remunerated. §III.C.1.a.[3] Each Class Member will be able to claim $2.00 for each Ice Cream Product claimed to have been purchased. §III.C.1.b.   Class Members may claim reimbursement for up to three units each of Ben & Jerry's and Breyers Ice Cream Products (a total of six Ice Cream Products) without proof of purchase, and may claim up to ten units each (a total of 20 Ice Cream Products), with appropriate proof of purchase. *Id.* Defendant has further agreed to pay all eligible Class Members, even if the number should exceed the Restitution Fund. Any Residual Restitution will not revert to Defendant but instead be deemed *cy pres* and donated to not-for-profit charities and/or causes consistent with nature of the Complaints and governing law. §III.C.1.a; §III.B.2. Finally, in addition to the monetary compensation, the Settlements also provide for important equitable relief to the Settlement Classes. By the terms of the Settlements, Defendants agreed to remove and refrain from using "All Natural" claims on products containing alkalized cocoa. §III.C.2.a. This injunctive relief not only provides a future benefit to the Classes, addressing the heart of Plaintiffs' claims, but also represents a substantial cost to Defendants of $7,500 per flavor to change Defendants' Ice Cream Products' labels. The cost of this change for the 23 flavors of B&J Ice Cream Products, and 35 flavors of Breyers Ice Cream Products, will be upwards of $435,000. *Id.*

Only after reaching an agreement on the principal terms of the Settlement, did the parties engage in further good faith and arms-length negotiations regarding the award of attorneys' fees, reimbursement of expenses, and incentive awards for the named plaintiffs. With the assistance of

---

[3] The Settlements at issue resolved the claims asserted in *Thurston et al v. Conopco, Inc.*, Case No. 10-04937-PJH (the "Thurston Action"), *Corriette, et al. v. Unilever*, Case No. 11-1811-PJH (the "Corriette Action"), and *Astiana v. Ben & Jerry Homemade Inc.*, Case No. 10-4387-PJH (the "Astiana Action") (collectively, the "Actions"), against Conopco, Inc. d/b/a Unilever (formerly d/b/a Good Humor-Breyers) d/b/a Breyers ("Unilever"), and its wholly-owned subsidiary, Ben & Jerry's Homemade, Inc. ("B&J") (collectively "Defendants").

1    mediator David Rotman the parties agreed to the following:

2    "Co-Lead Counsel agree to make, and Unilever agrees not to oppose, an application for
      an award of Attorneys' Fees and Expenses in these Actions in the amount of $625,000,
3    in addition to reasonable expenses, to be paid by Unilever in addition to the Unilever
      Restitution Fund." *Thurston, Corriette* §VIII.1.
4

5    "Co-Lead Counsel agree to make, and Unilever agrees not to oppose, an application for
      an award of Attorneys' Fees and Expenses in this Action in the amount of $1,250,000,
6    in addition to reasonable expenses, to be paid by Unilever in addition to the Unilever
      Restitution Fund." *Astiana* §VIII.1. "Co-Lead Counsel agree to make, and Unilever
      agrees not to oppose, an application by Co-Lead Counsel for an incentive award of up
7    to $1,500 for the Representative Plaintiff[s] to be paid from the Attorneys' Fees and
      Expenses awarded to Co-Lead Counsel in this Action." *Astiana* §VIII.2.
8

9        In accordance with the law of this Circuit, the agreed-upon fee award, reimbursement of

10   expenses, and plaintiff incentive awards were separately negotiated at arms-length by the parties only

11   after the benefits to class members were agreed upon. *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir.

12   2003).

13       Consistent with the bench mark in this Circuit, Co-Lead Counsel are petitioning for an award of

14   attorneys' fees, reimbursement of expenses and plaintiff incentive awards in an amount equivalent to

15   25% of the Restitution Fund created for the benefit of the Classes. Crucially, however, the attorneys'

16   fees, reimbursement of expenses and incentive awards are *non-dilutive* of the Restitution Fund

17   established for the Classes. In other words, the fees, expenses and incentive awards represent an

18   amount *in addition* to the monetary settlement benefits conferred to Class Members. Moreover, the

19   benefits obtained for the Class Members are independent from, and do not stand or fall on, the approval

20   or amount of the fee award.

21       Co-Lead Counsel expended a substantial amount of time and money on a contingent basis to

22   prosecute these cases through settlement. As of July 25, 2012, Co-Lead Counsel have already devoted

23   more than 2,228.65 professional hours, representing a lodestar of $1,166,163.75. Braun Decl. ¶ 21.

24   Counsel have also incurred $27,695.54 in unreimbursed expenses. *Id.* at ¶ 22.

25       Prior to filing their complaints, Co-Lead Counsel conducted a thorough and diligent pre-

26   litigation investigation of the underlying factual and legal claims asserted by Plaintiffs in these

27   litigations. The pre-suit investigation included, but was not limited to, a detailed inquiry into the

28

CASE NOS.: 10-cv-04937-PJH,                    4          MEM. ISO MOTION FOR AWARD OF ATTORNEYS' FEES;
11-cv-01811-PJH, 10-cv-04387-PJH                          REIMBURSEMENT OF EXPENSES AND PLAINTIFF INCENTIVE
                                                                                                     AWARD

1    meaning of "cocoa processed with alkali"; the nature and source of all possible alkalizing agents used

2    in ice-cream products;  the federal, state and administrative regulations regarding use of the terms

3    'natural' and 'synthetic' associated with food products; and discussions with cocoa suppliers and

4    companies that sourced cocoa nibs.  Braun Decl. ¶ 3.  Co-Lead Counsel  also analyzed the potential

5    legal claims that could be asserted in these actions and their likelihood of success (e.g. withstand

6    preemption arguments and general attack under Fed.R.Civ.P. 12(b)).  Braun Decl. ¶ 4.  Co-Lead

7    Counsel amended the complaints in the *Astiana* and *Thurston* Actions [*Astiana* Doc. No. 20; *Thurston*

8    Doc. No. 21], then counsel for all cases briefed, argued and subsequently defeated Defendants' motions

9    to dismiss and motion to strike.  *Astiana* Doc Nos. 20, 24, 62; *Corriette*, Doc. Nos. 15, 18, 19.  Braun

10    Decl. ¶¶ 5-6.

11        After surviving the motion to dismiss, the parties met and conferred pursuant to Fed.R.Civ.P. 26

12    and exchanged their initial disclosures. Subsequently, Plaintiffs propounded discovery consisting of

13    document requests and interrogatories.  Plaintiffs requested 66 categories of documents including those

14    related to:  labeling, marketing strategy, alkalizing agents used in the ice cream products, class

15    members, damages, and consumer complaints among others.  Plaintiffs propounded 15 interrogatories

16    pertaining to the same.  In addition, Plaintiffs took the depositions of Brian Critz and Michael Graning

17    in their capacity as corporate designees for Defendants Unilever and Ben & Jerry's Homemade, Inc.,

18    respectively.   Braun Decl. ¶ 6.

19        In addition to the mediation, Co-Lead Counsel spent an additional five weeks negotiating the

20    final terms of the Settlements and thereafter drafted the agreements and presented the Settlements to the

21    Court for Preliminary and Final Approval.

22        Work on this case has not ended.  Co-Lead Counsel will continue to incur additional attorney

23    hours in connection with final approval of the Settlement, including drafting supplemental memoranda

24    in support of final approval, and preparing for and appearing at the Fairness Hearing.  Co-Lead Counsel

25    also anticipate spending additional time continuing to oversee the administration of the Settlements.

26    Braun Decl. ¶ 24.  Co-Lead Counsel will not apply later for additional fees for the hours worked after

27    final Court approval of the Settlements.

28    CASE NOS.:  10-cv-04937-PJH,          5       MEM. ISO MOTION FOR AWARD OF ATTORNEYS' FEES;
      11-cv-01811-PJH, 10-cv-04387-PJH                   REIMBURSEMENT OF EXPENSES AND PLAINTIFF INCENTIVE
                                                           AWARD

1

2    Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may

3 award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties'

4 agreement." Fed. R. Civ. P. 23(h); *Schiller v. David's Bridal, Inc.,* 2012 U.S. Dist. LEXIS 80776, at

5 *39-43 (E.D. Cal. June 11, 2012).  Plaintiffs' Co-Lead Counsel respectfully submit that the requested

6 fees are more than reasonable under the circumstances of this case and are well-within the range of fee

7 awards approved by Courts in this District and the Ninth Circuit.  Here, Co-Lead Counsel initiated a

8 difficult and risky case and succeeded in securing meaningful Settlements for the Classes.  The fee and

9 award request is *non-dilutive* of the Restitution Fund negotiated for the Classes and is squarely within

10 with the parameters of similar awards made pursuant to both the common fund doctrine and lodestar

11 approach and therefore should be approved.

12    **A.    Legal Standard**

13    "In class action litigation, awards of attorneys' fees serve the dual purpose of encouraging

14 persons to seek redress for damages caused to an entire class of persons and discouraging future

15 misconduct." *In re Lifelock, Inc. Mktg. and Sales Practices Litig.*, 2010 U.S. Dist. LEXIS 102612 *8

16 (D. Ariz. 2010).  As demonstrated above, both these objectives have been realized here.

17    The Ninth Circuit has affirmed the use of two separate methods for determining an appropriate

18 amount of attorneys' fees in the context of class actions.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

19 1029 (9th Cir. Cal. 1998).  As is the case here, where a settlement produces "a common fund for the

20 benefit of the entire class, courts have discretion to employ either the lodestar method or the

21 percentage-of-recovery method." *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010).

22 Regardless of which method is employed, "the main inquiry is whether the end result is reasonable."

23 *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).[4]

24

25

_____

26 [4] "Empirical studies show that, regardless whether the percentage method or the lodestar method is
   used, fee awards in class actions average around one-third of the recovery." *In re Consumer Privacy*
27 *Cases*, 175 Cal. App. 4th 545, 558, n.13 (Cal. App. 1st Dist. 2009).

28

**B.     The Common Fund Analysis Supports Plaintiffs' Counsel's Fee Request**

The percentage of the recovery or common fund doctrine rests on the understanding that attorneys should normally be paid by their clients.  *See, Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole.").  Courts generally prefer a percentage-of-the-fund model over a lodestar-multiplier approach in cases where it is possible to ascertain the value of the settlement through a common fund.  *In re Bluetooth Headset Prod. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *In re Omnivision Techs, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("[U]se of the percentage method in common fund cases appears to be dominant.").

The Ninth Circuit has frequently expressed its approval of the use of the percentage method in common fund cases.  *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990).  The rationale for employing the percentage-of-the-fund method is three-fold.  First, the percentage method is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated with a percentage of the recovery.  Second, the percentage method directly aligns the interests of the class and its counsel to prosecute and resolve all claims quickly and efficiently.  *See, e.g., Kirchoff v. Flynn*, 786 F.2d 320, 326 (7th Cir. 1986).  It provides class counsel with a strong incentive to effectuate the maximum possible recovery in the shortest amount of time, which is a tangible benefit to class members and the judicial system.  *See* Charles Silver, *Due Process and the Lodestar Method: You Can't Get There from Here*, 74 Tul. L. Rev. 1809 (2000) ( the percentage method of awarding fees is the only method of fee awards that is consistent with class members' due process rights.).  Third, use of the percentage method decreases the burden imposed on the court by eliminating a comprehensive and time-consuming "lodestar" analysis while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement.  *See, In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989); *Manual for Complex*

*Litigation* (Fourth) § 14.121 (2004) (noting that courts increasingly recognize that "the lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation" to reach a predetermined result).

Furthermore, the Supreme Court has consistently endorsed awarding attorneys' fees using the percentage-of-the-fund method. *See, e.g., Blum v. Stenson, 465 U.S. 886, 900 n.16 (1984)*; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-67 (1939). Accordingly, the Ninth Circuit has upheld common fund fee awards based on the percentage-of-the-fund method that have been "cross-checked" by the lodestar for reasonableness. *See, e.g., Vizcaino*, 290 F.3d at 1050.

The Ninth Circuit benchmark for recoveries in common fund cases is 25%, the percentage negotiated in this case. *Vizcaino v. Microsoft Corp.*, 290 F .3d 1043, 1047 (9th Cir. 2002) (in common fund cases, the "benchmark" award is 25% of the recovery obtained, with 20-30% as the usual range); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)( The typical range of acceptable attorneys' fees under this approach in the Ninth Circuit is 20 percent to 33 and 1/3 percent of the total settlement value, with 25 percent considered a benchmark percentage).

Here, Co-Lead Counsel seeks a combined fee award, for all three cases, of $1,875,000, which represents 25% of the $7,500,000 fund established in this case and falls exactly at the Ninth Circuit benchmark for an acceptable award under the common fund doctrine.[5] Again, it is important to note that any award of fees is *non*-dilutive of the fund to the Classes. It is also significant that the $7,500,000 fund was a minimum commitment by Defendants who agreed to pay all eligible claimants if the number of claims exceeded the fund. Finally, the $7,500,000 figure does not take into account the value of the equitable relief that is an additional and significant benefit obtained for the Classes and for

---

[5] A Federal Judiciary Center study of all class action attorneys' fees in four federal district courts with a high number of class actions found that "median rates ranged from 27% to 30%." Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, at 69 (Fed. Judicial Ctr. 1996). A separate study conducted by National Economic Research Associates similarly concluded that "[regardless of case size, fees average approximately 32 percent of the settlement." Denise N. Martin, Vinita M. Juneja, Todd S. Foster & Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* Stan. 28 J.L. Bus. & Fin. (1996).

1   which the Ninth Circuit enhances the value of settlements for purposes of fee analyses.  *See, e.g.,*

2   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) (prospective practice changes are the

3   sort of "nonmonetary benefits conferred by the litigation" that support a requested fee).

4          The Ninth Circuit has identified a number of factors that may considered in determining if the

5   contemplated award is reasonable:  (1) the results achieved; (2) the risks of litigation; (3) benefits

6   beyond the cash settlement fund; and (4) the contingent nature of the fee.  *Vizcaino v. Microsoft Corp.*,

7   290 F.3d 1043, 1048-50 (9th Cir. 2002).  The Manual for Complex Litigation recommends

8   consideration of three additional factors:  (1) any objections by class members; (2) the skill and

9   efficiency of the attorneys involved; and (3) attorneys' fee awards in other cases.  Manual for Complex

10  Litigation (Fourth) § 14.121 (2004).  As demonstrated below, each of these seven factors strongly

11  supports the requested fee.

12          **1.      The Results Achieved Were Very Favorable to the Settlement Class**

13          Settlement Class members were purchasers of Ben & Jerry's and Breyers Ice Cream Products

14  that were labeled "All Natural" despite containing alkalized cocoa that was processed with potassium

15  carbonate -- a non-natural, man-made, synthetic ingredient.  The Settlements provide that Defendants

16  will stop using the term "All Natural" in advertising and labeling these Ice Cream Products.  §III.C.2.a.

17  In addition, Defendants will remunerate Class Members of each Class $2.00 per Ice Cream Product

18  purchased up to three units without proof of purchase.

19          The $2.00 per unit amount represents approximately 60% of the average retail price of the Ice

20  Cream Products.  Braun Decl. ¶ 9.  This is an exceptional result when compared to what the Class may

21  have realistically sought and achieved at trial.  In addition to proving liability, Plaintiffs would have to

22  overcome serious obstacles to pleading and proving damages.  In light of the range of potential losses—

23  and the more likely provable losses, in particular—the results achieved in this case are outstanding.  *In*

24  *re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement that comprised

25  one sixth of the plaintiffs' potential recovery); *Brazil v. Dell Inc.*, 2012 U.S. Dist. LEXIS 47986, 3-4

26  (N.D. Cal. Apr. 4, 2012)( A $50-per claimant monetary award (remuneration for allegedly false

27  discounts on lap top computers).  With no class-wide cap or ceiling on recovery, the Settlements

28  | CASE NOS.:  10-cv-04937-PJH, | 9 | MEM. ISO MOTION FOR AWARD OF ATTORNEYS' FEES; |
    | 11-cv-01811-PJH, 10-cv-04387-PJH | | REIMBURSEMENT OF EXPENSES AND PLAINTIFF INCENTIVE AWARD |

1  represent a significant benefit for Class Members given the harm alleged and the potential risks of

2  further litigation.[6]

### 2.    There Are Substantial Risks Associated With Continued Litigation

4  In the absence of a settlement, Plaintiffs would face a number of dispositive motions such as

5  class certification and summary judgment that could derail their cases and result in nothing for the

6  Classes.  Moreover, as discussed in the Motions for Preliminary and Final Approval, in January 2012,

7  the Ninth Circuit rendered a decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. Cal.

8  2012) which put into question the viability of certifying a nationwide class under California's consumer

9  protection and unjust enrichment laws.  While the *Mazza* decision does not affect the *Settlement* Classes

10  proposed here, if parties were to continue to litigate, Defendant would undoubtedly raise *Mazza* in an

11  effort to limit the size and scope of the Classes.  Indeed, if *Mazza* were applied by this Court, it could

12  drastically reduce the size of the Classes and negatively impact the economics of these litigations.

13  Assuming Plaintiffs would survive these procedural hurdles, they would still face a great deal of

14  uncertainty at trial.  *See e.g.* Defendants' affirmative defenses.  *Astiana* Doc. No. 63, *Thurston* Doc. No.

15  57, *Correitte* Doc. No. 8.  Finally, any judgment could be appealed to the Ninth Circuit, which would

16  likely take significant time and additional resources.  These efforts would continue to be costly and

17  provide absolutely no guarantee that Plaintiffs or the Classes would achieve any recovery, let alone a

18  recovery greater than the proposed Settlements.  Braun Decl. ¶¶ 8-9, 12.  *In re Agent Orange Product*

19  *Liability Litigation*, 818 F.2d 226, 236 (2d Cir. 1987) ("We have labeled the risk-of-success factor as

20  perhaps the foremost factor to be considered under the second prong of the lodestar analysis.") (internal

21  citation omitted).

### 3.    Benefits Beyond the Cash in the Settlement Fund

23  In addition to the remuneration contemplated by the $7,5000,000 Restitution Fund, the

25  [6] Richard M. Phillips & Gilbert C. Miller, *The Private Securities Litigation Reform Act of 1995:*
*Rebalancing Litigation Risks and Rewards for Class Action Plaintiffs, Defendants and Lawyers*, 51
26  Bus. Law. 1009, 1029 & n.131 (1996) (finding that typical recoveries are within range of 7-11% of
claimed losses).

Settlements provide complete equitable relief addressing the gravamen of the Complaints – that Defendants were mislabeling Ice Cream Products as being "all natural" when they were not. The Settlements provide that Defendants will re-label their products eliminating the terms "all natural" thereby providing full injunctive relief to the Classes. Unilever has represented that the cost of that equitable relief amounts to approximately $7,500 per SKU (i.e., per flavor) just for direct costs of redesigning and implementing the label changes. This does not include the substantial costs incurred by Unilever employees and third party vendors in overseeing and implementing the label change, advertising, and rolling out the label change nationwide. §III.C.2.a; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) (prospective practice changes are the sort of "nonmonetary benefits conferred by the litigation" that support a requested fee); *Brazil v. Dell Inc.*, 2012 U.S. Dist. LEXIS 47986 (N.D. Cal. Apr. 4, 2012) (structural changes to marketing practices resulting from litigation, particularly defendant's elimination of allegedly false representations regarding the pricing of its computers, conferred a benefit on both the class members and the public at large and further justified fee request); *Loring v. Scottsdale*, 721 F.2d 274 (9th Cir. Ariz. 1983) ( finding reversible error for trial court to fail to take into account nonmonetary benefits in determining fees).

### 4.    Counsel's Fee and Expenses Are Contingent

Counsel took these cases entirely on a contingent fee basis and had to forego other financial opportunities to litigate them. Braun Decl. ¶ 19.   All the expenses were paid out of pocket with no guaranteed of remuneration. *Id. Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. Wash. 2002) (risk associated with representation on a contingency basis is a relevant circumstance in determining a reasonable fee amount); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) (affirming award of 25% of fund recognizing that contingent fee rewarded class counsel not only for the hours they had in the case to the date of the settlement, but for carrying the financial burden of the case).

### 5.    Objections to the Settlement

Notice was disseminated by direct mail and e-mail to all known Settlement Class Members and *via* publication in *Entertainment Weekly, Country Living, Rolling Stone*, and *Cooking Light* magazine.

Hodne Decl. ¶ 11.  In addition, the Short-form Notice was also broadcast on the internet *via PR Newswire* service to an array of press outlets throughout the country.  Braun Declaration in Support of Final Settlement. ¶ 13 [ *Astiana* Doc. No. 83].

As a result of the Notice plan, the Settlement Website received 9,252 visits and resulted in the filing and receipt of 1,804 claim forms.[7]  Hodne Decl. ¶¶ 16, 26.  The claims deadline does not run until August 30, 2012, and claims are continuing to be filed. *Id;* Braun Decl.¶ 13.  As of July 25, 2012, no Class member has objected to, or opted out of the Settlements. *Id.*

### 6.   Skill & Efficiency of the Attorneys Involved

Each of the attorneys involved in these cases specialize in the prosecution of class litigation and have extensive experience in consumer class action lawsuits that are similar in size, scope and complexity to the present cases.  The resumes for each firm were submitted in conjunction with Plaintiffs' Motion for Preliminary Approval. *See* Declaration of Joseph N. Kravec, Jr. in Support of Plaintiffs' Notice of Motion, Plaintiffs' Unopposed Motion For Preliminary Approval of Settlements, and Supporting Memorandum.  Doc. No. 76. Exs. 1-4.  This experience was reflected in the skill in which the complaints were drafted, the motions to dismiss were briefed and argued, and the Settlements negotiated.  Respectfully, the results achieved, were in no small part due to the competence of Co-Lead Counsel.  Braun Decl. ¶ 10.

### 7.   Awards Made in Similar Cases are Consistent with the Counsel's Request

The request for attorneys' fees and reimbursement of expenses is consistent with those typically awarded in this Circuit. See, *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark"); *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. Jun. 1, 2010) (33.33% of the common fund "falls within the typical range of 20% to 50% awarded in similar cases"). Indeed, Courts in this Circuit have routinely awarded fees of more than 25% in common fund cases. *See, e.g., Vizcaino*, 290 F.3d at

---

[7] As of July 13, 2012.

1   1050 (affirming 28% fee); *In re Omnivision Techs, Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008)

2   (awarding 28%); *Heritage Bond*, 2005 WL 1594403 *23 (C.D.Cal. 2005) (awarding 33.3%).

### C.   A Lodestar-Multiplier Cross-Check Confirms the Reasonableness of the Fee Request

Co-Lead Counsel's combined request of $1,875,000 in attorneys' fees and reimbursement of expenses is also fully supported under the lodestar analysis. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001) ("Lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate").

Courts in the Ninth Circuit often examine the lodestar calculation as a cross-check on the percentage fee award. *Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."). The cross-check analysis is a two-step process. First, the lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys. *See*, *Caudle* v. *Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000). Second, the court determines the multiplier required to match the lodestar to the percentage-of-the-fund request made by counsel and determines whether the multiplier falls within the accepted range for such a case. *See Vizcaino*, 290 F .3d at 1051. Here, the lodestar cross-check further confirms that the attorney fee request is reasonable.[8]

Plaintiffs' counsel incurred a total of $1,166,163.75 in attorneys' fees, as well as $27,695.54 in out-of-pocket expenses. See Braun Decl. ¶¶ 21-22. These fees and expenses were incurred in the extensive pre-litigation investigation, drafting the Complaints, undertaking the necessary factual and legal research to file the pleadings, oppose motions to dismiss, attending hearings, participating in the mediation efforts, negotiating and drafting the Settlement Agreements, drafting and arguing the motions

---

[8] The cross-check is not designed to be a "full-blown lodestar inquiry," but rather an estimation of the value of counsel's investment in the case. Third Circuit Task Force Report, *Selection of Class Counsel*, 208 F.R.D. 340, 422-23 (2002) (noting that "[t]he lodestar remains difficult and burdensome to apply, and it positively encourages counsel to run up the bill, expending hours that are of no benefit to the class").

1   for preliminary and final approval, in addition to the countless other responsibilities associated with the

2   prosecution of complex litigation. Braun Decl. ¶¶ 3-7, 11, 13-14.

3        The average billable rate of legal services provided by Co-Lead Counsel is approximately

4   $523.00 per hour and the individual hourly billable rates are eminently reasonable when compared with

5   billing rates approved by federal District Courts in California in comparable complex or class actions.

6   *See e.g. Fractional Villas, Inc.* v *Rodgers*, 2009 WL 1226982, at *2 (S.D. Cal. 2009) (approving fee

7   award based on attorney hourly rate of "$625 per hour for attorney work"); *Laputka* v. *Barnhart*, 2009

8   WL 1295954, at *2 (E.D. Cal. May 8, 2009) (approving attorney fee award resulting in a "de facto

9   hourly rate of over $600.00"); *Hearn v. Barnhart*, 262 F. Supp. 2d 1033, 1037 (N.D. Cal. 2003) (noting

10  that courts have generally approved fee awards entailing hourly rates amounting to over $600 per

11  hour).[9]

12       Based on the lodestar incurred to date, Co-Lead Counsel are seeking modest multiplier of 1.6.

13  "Multipliers ranging from one to four are frequently awarded in common fund cases when the lodestar

14  method is applied." *Vizcaino*, 290 F.3d at 1051, n.6 (citing *In re Prudential Ins. Co. Am. Sales

15  Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)). In *Vizcaino*, the Ninth Circuit also

16  noted that a survey of class actions found that 83% of cases had a multiplier of 1.0-4.0, and that 54%

17  were between 1.5-3.0%. *Id.* Indeed, multipliers in the 3-4 range are common for "lengthy and

18  complex" class action litigation. *See, e.g., Vizcaino*, 290 F. 3d at 1051 (affirming 3.65 multiplier).

19       The proposed fee award here was subject to negotiation after the Settlement terms were reached.

20  It is *non-dilutive* of the class fund and reflects only a modest multiplier on the lodestar counsel incurred.

21

22  [9] The lodestar figure is "presumptively reasonable," *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481,
    488 (9th Cir. 1988). However, the court may adjust it upward or downward by an appropriate positive

23  or  negative multiplier reflecting a host of "reasonableness" factors  including the quality of the
    representation, the benefit obtained for the class, the complexity and novelty of the issues presented,

24  and the risk of nonpayment." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. Cal. 1998)
    citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Foremost among these

25  considerations, however, is the benefit obtained for the class. See *Hensley v. Eckerhart*, 461 U.S. 424,
    434-36, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th

26  Cir. 2009) (ultimate reasonableness of the fee "is determined primarily by reference to the level of
    success achieved by the plaintiff"). As demonstrated *supra*, each of these reasonableness factors weigh

27  in favor of granting Co-Lead Counsel's fee request.

28

1  *Hopson v. Hanesbrands Inc.*, 2009 WL 928133, at *13 (N.D. Cal. 2009) (finding a 1.2 multiplier "very

2  modest"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575003, at *1 (N.D. Cal. 2011)

3  (finding a 1.25 multiplier reasonable); *Martin v. FedEx Ground Package Sys., Inc.*, 2008 WL 5478576,

4  at *8 (N.D. Cal. 2008) (finding a multiplier of 1.48 "relatively low"); *In re Charles Schwab Corp. Sec.*

5  *Litig.*, 2011 WL 1481424, at *8 (N.D. Cal. 2011) (finding a 2.68 multiplier acceptable);  *Craft v.*

6  *County of San Bernardino*, 624 F. Supp. 2d 1113, 1125-27 (C.D. Cal. 2008) (5.2 multiplier and

7  collecting similar cases).

8      Even when courts in the Ninth Circuit have relied on the lodestar method alone to award

9  attorneys' fees, these courts "have routinely enhanced the lodestar to reflect the risk of nonpayment in

10  common-fund cases" by using a multiplier. *Chemical Bank v. City of Seattle (In re Washington Pub.*

11  *Power Supply Sys. Sec. Litig.*), 19 F.3d 1291, 1299-1300 (9th Cir. Ariz. 1994).  The rationale for

12  enhancing the lodestar figure derives in part from the established practice in the private legal market of

13  rewarding attorneys who take contingency cases with the risk of non-payment by paying them "a

14  premium over their normal hourly rates" when they win.  *Id.* at 1299.  Moreover, the multiplier

15  incentivizes counsel to resolve litigation as quickly as possible, rather than cause delay merely to

16  generate additional attorneys' fees.  Thus, the Ninth Circuit has found that even though a district court

17  generally has discretion to apply a multiplier to compensate for the risk of nonpayment, "[i]t is an abuse

18  of discretion to fail to apply a risk multiplier . . . when: (1) attorneys take a case with the expectation

19  that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk,

20  and (3) there is evidence that the case was risky." *Fischel v. Equitable Life Assur. Soc'y of the United*

21  *States*, 307 F.3d 997, 1010 (9th Cir. Cal. 2002).  This is precisely the case here.

22      Application of these principles supports awarding the fee sought here. First, the lodestar in this

23  case does not reflect the risk of nonpayment. *See*, Braun Decl. ¶¶ 19-20.  Second, in pursuing this

24  litigation, Co-Lead  Counsel reasonably believed that they would receive additional compensation for

25  the risk of nonpayment in light of Ninth Circuit law requiring a multiplier where there is such a risk.

26  *Id.; Chemical Bank*, 19 F.3d. at 1299-1301.  Thus, basing the award of attorneys' fees in this case on

27  hourly rates alone would contradict controlling Ninth Circuit authority. *See Fischel*, 307 F.3d at 1008

28

1    ("[T]he district court failed fully to analyze the risk factor and thus abused its discretion in determining

2    whether to award a risk multiplier."). Finally, these cases were among the first to allege violations of

3    consumer laws for use of cocoa processed with a synthetic ingredient. As noted above, Co-Lead

4    Counsel undertook these cases at great risk and produced excellent and timely settlements. Braun Decl.

5    ¶ 19. Thus, a multiplier enhancing the lodestar figure to compensate for the risk of non-payment and

6    for the benefit of resolving litigation in a timely and efficient manner is appropriate.

7    **D.     Class Counsel's Request for Reimbursement of Expenses are Reasonable**

8         Class Counsel also request reimbursement for the reasonable and necessary expenses advanced

9    to prosecute these litigations since their inception. These expenses, totaling $27,695.54, are detailed in

10   the Braun Decl. ¶ 22, Exs. B- E.

11        Co-Lead Counsel are entitled to reimbursement of the out-of-pocket costs they reasonably

12   incurred investigating and prosecuting this case. *See In re Media Vision Tech. Sec. Litig.*, 913 F.Supp.

13   1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto—Lite Co.*, 396 U.S. 375, 391-92, 90 S. Ct.

14   616, 24 L. Ed. 2d 593 (1970)); *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003).

15        The appropriate analysis in determining which expenses are properly compensable is whether

16   the particular costs are the type that are typically billed by attorneys to paying clients in the

17   marketplace. *Harris* v. *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (allowing recovery of "out-of-pocket

18   expenses that would normally be charged to a fee paying client").

19        Co-Lead Counsel advanced reasonable and necessary expenses for mediation services, travel,

20   photocopying, legal research, telephone, facsimile, postage, and other costs that pertain to this litigation

21   and which are incurred routinely in any litigation of this size and complexity. *See, e.g.*, *McPhail v.*

22   *First Command Fin. Planning, Inc.*, 2009 WL 839841, at *8 (S.D. Cal. 2009); *Linney* v. *Cellular*

23   *Alaska P'ship*, 1997 WL 450064, at *7 (N.D. Cal. 1997) ("It appears to the Court that the costs

24   requested are reasonable in light of the complexity of the litigation and the number of counsel involved,

25   and [the costs of litigation] are therefore approved by the Court.").

26        The Settlement Agreements expressly provide for payment of Co-Lead Counsel's litigation

27   expenses and the categories of expenses for which Counsel seek reimbursement are the type of

28

1   expenses routinely charged to hourly clients.  For all these reasons, the Court should reimburse

2   Plaintiffs' Counsel for their reasonably incurred expenses.

3       **E.      Plaintiff Incentive Awards are Reasonable and Should be Approved**

4           The Settlement Agreements also provide a modest payment of a $1,500 to each of the named

5   Plaintiffs as an enhancement award to compensate them for their investment of time and effort in

6   litigating these actions on behalf of the Classes.  §VIII.2.  The parties agreed that any such award would

7   be paid from the award of Attorneys' Fees and Expenses and therefore like the fee award, the incentive

8   award does not have a dilutive effect on the Restitution Fund provided to the Class.  *Id.*

9           Each Plaintiff has expended time and effort in prosecuting this litigation including : (a)

10  retaining counsel; (b) providing Co-Lead Counsel with information necessary to draft the complaints

11  including the products they purchased, the location and frequency of such purchases and the reasons for

12  selection of the products; (c) reviewing and commenting on the draft complaints; (d) monitoring the

13  litigation which included regular calls or meetings with their counsel as well as the review of

14  documents and pleadings which were sent them; (e) discussing the settlement terms and ultimately

15  agreeing to and approving such terms; and (f) understanding and agreeing to each of the responsibilities

16  of a named plaintiff and putative class representative.  Braun Decl. ¶¶ 25-26 and Exs. F-J.

17          Courts routinely grant incentive awards in similar cases and in larger amounts than those

18  requested here.[10]  *See, e.g., In re Mego Fin. Corp. Securities Litig.,* 213 F.3d 454,463 (9thCir. 2000)

19  (approving $5,000 incentive awards each to two class representatives); *Hopson* v. *Hanesbrands,* 2009

20  WL 928133, at * 10 (N.D. Cal. 2009) ("In general, courts have found that $5,000 incentive payments

21  are reasonable"); *Chu v. Wells Fargo Investments, LLC,* 2011 U.S. Dist. LEXIS 15821* 5 (N.D. Cal.

22  2011) (awarding $10,000 to two plaintiff representatives involved in case for five years and $4,000 to

23  three representative plaintiffs participating in case for two years, from a $6.9 million settlement fund);

---

24  [10] "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are
25  eligible for reasonable incentive payments." *Staton,* 327 F.3d at 977; *Rodriguez v. West Publishing
    Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases.").
26  Such awards are "intended to compensate class representatives for work done on behalf of the class
    [and] make up for financial or reputational risk undertaken in bringing  [*7] the action." *Id.; see also*
27  *Van Vranken v. Atl. Richfield Co.,* 901 F.Supp. 294, 299 (N.D. Cal. 1995).

28

*Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 *16-17 (N.D. Cal. 2007) (approving $25,000 award to each of four plaintiff representatives of 13, 176-member class from $45 million settlement amount).

Given the efforts undertaken by the named Plaintiffs, and the reasonableness of the amount of the incentive awards sought, as well as such awards being separately negotiated and paid in addition to the relief provided to Class Members, the Court should grant approval of the requested incentive award.

## IV.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court approve Plaintiffs' Counsel's request for attorneys' fees, reimbursement of expenses, and the requested Plaintiff incentive awards.

DATED:  July 25, 2012

Respectfully Submitted,

**BRAUN LAW GROUP, P.C.**

By: _____
Michael D. Braun
10680 W. Pico Boulevard, Suite 280
Los Angeles, CA 90064

Janet Linder Spielberg
**LAW OFFICE OF JANET LINDNER SPIELBERG**
12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025

Joseph N. Kravec, Jr.
**STEMBER FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA 15219

***Attorneys for Plaintiffs Thurston, Denmon-Clark and Astiana***

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James S. Notis
Jennifer Sarnelli
Kelly A. Noto
**GARDY & NOTIS, LLP**
560 Sylvan Avenue
Englewood Cliffs, NJ 07632

***Attorneys for Plaintiffs
Corriette and Waldron***